**EXHIBIT A**





MOUNT SINAI
SCHOOL OF
MEDICINE

September 21, 2011

To:   Leena Varughese, MD

We are writing to you as the Chair and the Director of Educational Activities of the Department of Pathology to inform you of your summary suspension termination from the Pathology Residency Program. We are taking this action because your performance and conduct have been unacceptable and your continued presence in the Program is a risk to the Hospital and its patients.

On December 21, 2010, you were placed on Academic Advisement by Patrick Lento, MD, the Residency Program Director, to address serious deficiencies in your level of professionalism. The Advisement required you to prepare a written self-reflection; to meet with Dr. Lento to assess your progress; and to read a textbook on professionalism.

When Dr. Cordon-Cardo arrived at Mount Sinai as the new Department Chair, he met with you on May 24, 2011, to review your performance under the Advisement. It was evident that you had not satisfied the expectations for your performance during this period. Further, not only was your behavior at this meeting unprofessional, it showed a lack of insight and understanding of your role in the department.

On July 15, Dr. Cordon-Cardo met with you to deliver a final warning, which was a disciplinary action based on your failure to meet professionalism expectations. At that time, you were notified that you would be required to meet biweekly for three months with Dr. Adolfo Firpo, who had recently been appointed as Director of Educational Activities. The purpose of the meetings was to provide you with guidance and to assess your performance using established mechanisms for obtaining feedback from faculty, residents and staff. While Dr. Cordon-Cardo notified you verbally and in writing regarding your right to a hearing, you did not appeal the final warning. On August 1, the Program arranged for you to begin meeting with Dr. Firpo as provided in the final warning letter.

Since the final warning was issued, you have continued to demonstrate unprofessional behavior. Below is a summary of events in this most recent period, including both your actions and the program's response (where applicable).

Leena Varughese, MD
September 21, 2011
Page 2

I.   **Duty and Professionalism Concerns during Tumor Cytogenetics Rotation**

From August 1 to August 12, you were assigned to the Tumor Cytogenetics Rotation under the supervision of Dr. Vesna Najfeld. Dr. Najfeld reported that you did not satisfactorily complete the rotation, noting the following issues:

- Your scheduled clinical case conference presentation on August 9 was inadequately prepared even though you were given ample time to complete it. You responded late to Dr. Najfeld's pages and emails communicating the need for you to improve the presentation. As a result, the presentation had to be postponed until the following week. You failed to notify attendees of the cancellation, even though Dr. Najfeld asked you to do so.

- You were absent from the Cytogenetics laboratory numerous times, often without authorization or explanation. For example, on August 10, 2011, Dr. Najfeld noted that you were 90 minutes late; returned 30 minutes late from lunch; and left 60 minutes early. In addition, you did not fulfill your work responsibilities that day.

- You were unprofessional in your interactions with faculty and staff. For example, you repeatedly used your handheld device while staff members were instructing you, and you continued to use it even after you were asked not to do so. You also told a laboratory supervisor that she was "wasting your time."

The Program made its best efforts to help you succeed on this rotation while ensuring that the service continued to function properly. Dr. Najfeld repeatedly attempted to contact you on August 8, 2011, to schedule time to work with you on your presentation. After your late response, Dr. Najfeld worked with you for two hours to improve the presentation. You were allowed to postpone the presentation by one week. During your absences, your work was reassigned to others. Dr. Najfeld and others role-modeled professional behavior and provided guidance to you in this regard. Finally, Dr. Firpo provided feedback from the rotation to you on August 17.

II.   **Duty Concerns Regarding Coverage**

A.   Frozen Section Coverage on August 5

On August 4, Dr. Adrienne Jordan, Chief Resident, assigned you to cover the frozen section room on the afternoon of August 5 for a resident who was out sick. In making this assignment, the chief resident followed current departmental policy regarding coverage for sick calls. You refused this assignment, stating that you had an injury that prevented you from taking the assignment, even though you reported to work in the Tumor Cytogenetics laboratory on the same day (August 5). The Program was forced to deviate from its policy of arranging alternate coverage after your refusal. You were asked on multiple occasions by one of the chief residents (Dr. Jordan) to provide proof of the stated injury that prevented you from taking the

Leena Varughese, MD
September 21, 2011
Page 3

assignment, yet you failed to comply with—or even to acknowledge—this request. You then changed your rationale for refusing the assignment, stating that you thought it was unfair for the department to pull you from a Clinical Pathology rotation to cover an Anatomic Pathology service. This claim shows a continued lack of insight or an understanding of your role in the department. Your behavior in this instance can only be considered as both dishonest and insubordinate.

B. Surgical Coverage on August 12

On the morning of August 12, Dr. Jordan informed you by email that you would be assigned to cover the Surgical Pathology service that afternoon for a resident who was out sick. Dr. Jordan informed Dr. Najfeld of the need to excuse you for this coverage, but Dr. Najfeld responded that you were significantly late that day (You arrived 75 minutes late, arriving at 10:15am.) You did not respond to Dr. Jordan's email or to a page from Dr. Lento. Ultimately, Dr. Lento was able to reach you by calling Dr. Najfeld and asking her to bring you to the phone so he could speak with you. Dr. Lento confirmed your coverage assignment and instructed you to contact Dr. Jordan, which you failed to do. While you proceeded to provide the required coverage, your behavior in dealing with this incident demonstrates your unresponsiveness and failure to follow instructions.

III. Unprofessional Response to Request for Change of Elective Rotation

On August 2, you asked Dr. Firpo if you could change your elective rotation from your original choice of GI Pathology to Dermatopathology. After careful consideration by the chief residents, Dr. Lento and Dr. Firpo, the request was denied on September 7 because (1) it was not timely, as the annual schedule had been established before the beginning of the academic year; (2) your elective rotation coincided with necessary coverage of the GI Pathology service; and (3) alternate coverage could not be identified. You raised several concerns about your rotations, all of which have been addressed by Dr. Lento and Dr. Firpo, who have confirmed that your schedule meets all training requirements. You also claimed that you were being singled out in denying this request, which is not the case; the Program has denied 8 of 10 residents' requests for schedule changes since July 1.

You refused to accept that your request had been denied and on September 7, you arrived at Dr. Firpo's office and addressed him in an accusatory manner, stating that he had made a commitment to you to change the rotation, which was untrue. You claimed that another resident, Dr. Mabel Ko, had agreed to cover the GI rotation; yet Dr. Ko later informed Dr. Firpo that she had not agreed to cover the rotation. Your email to Dr. Firpo on September 7—in which you requested reconsideration to avoid, in your words, "elevating this issue to some colossal problem"—shows your unwillingness to accept or to respect the Program's decisions regarding your education. As recently as September 20, you complained to Dr. Firpo about the GI assignment even though it was made

Leena Varughese, MD
September 21, 2011
Page 4

clear that the decision was final. Your behavior related to the Program's handling of the
request has been unprofessional and unacceptable.

IV.  **Poor Conference Attendance and Adherence to Departmental Policy**

On August 29, Dr. Morency (Chief Resident) notified you that your attendance at
educational conferences provided by the Program for the preceding block had fallen
below the 80% threshold required by the Department. Consistent with Departmental
policy, you were required to present a lecture on September 14 on a topic of your
choice selected from material missed by your absences. You did not respond to this
email or to two follow-up emails from Dr. Jordan and Dr. Morency. You called out sick
on September 13 and 14, the day prior to and the day of your expected presentation. As
a result, your presentation was rescheduled for September 15. On September 15, you
arrived 15 minutes late to the weekly, 8am Thursday morning conference while one of
your colleagues was giving a presentation and then left after only 15 minutes without
presenting your own talk or addressing anyone at the conference. The program
requested proof of illness for your absences on September 13 and 14, and such proof
was not provided. Your inability to acknowledge or fulfill your obligations reinforces
the Program's concerns about your professionalism.

V.  **Poor Communication Regarding Leave of Absence**

After the above-mentioned conference on September 15, Dr. Firpo met with you to
discuss your early departure from the conference without giving your expected
presentation. At that time, you indicated that you did not make your presentation
because you were unwell and unable to fulfill your duties, and you requested a leave of
absence due to a serious medical condition. Dr. Firpo then consulted the GME Office
and the Human Resources Department for assistance regarding the handling of a leave
of absence. On the afternoon of September 15, Dr. Firpo and Ms. Shema Patel, the
Department Administrator, met with you again to express their concern for your health
and well-being, and to inform you of the procedures for requesting a leave of absence.
Later that day, Ms. Patel provided you with materials related to the Family and Medical
Leave Act (FMLA), including written instructions and a blank certification of health
care provider form. (Ms. Patel provided you with a completed designation notice on
September 19.) Ms. Patel offered her assistance in helping you obtain the earliest
possible doctor's appointment. Dr. Firpo excused you from work until you were able to
obtain a medical assessment. However, at the end of the day on September 15, you
informed Dr. Firpo that you wanted to continue working until you could be assessed.
You informed the program that your doctor's appointment would occur the next day
(Friday, September 16).

On the morning of September 16, Dr. Firpo observed that you were not at the scheduled
core Autopsy conference and that you were not in the residents' room or at work on
your scheduled Hematopathology rotation. He sent a follow-up email to you stating that
you should not return to work until your request for leave could be resolved. The GME

Leena Varughese, MD
September 21, 2011
Page 5

Office asked Dr. Daniel Hughes of the Physician Wellness Committee to contact you to coordinate an assessment.

On September 16 and Monday, September 19, Dr. Hughes, Dr. Firpo and Ms. Patel attempted to contact you by phone and email out of concern for your well-being and to follow-up on your request for leave. You did not respond to any attempts to contact you. At the end of the day on September 19, the Program learned that you had reported to your Hematopathology rotation on September 16 and 19 despite your having been directed not to report to duty until you undergo a physician's assessment.

On the morning of Tuesday, September 20, you approached Ms. Patel at Starbucks (off-campus) to discuss your intention to defer your leave of absence and to continue working in the meantime. When you mentioned that you were on your way to the scheduled morning conference, Ms. Patel asked you not to go to Annenberg and instead to accompany her to her office so she could arrange for Ms. Caryn Tiger-Paillex, Director of Human Resources, to meet with you.

After initially refusing, you met with Ms. Tiger-Paillex and Mr. Paul Johnson, Director of Graduate Medical Education, on September 20. At this meeting, you confirmed that your doctor's appointment had been scheduled for September 16, but that the psychiatrist you saw initially referred to an internist for certification of your need for a leave of absence. Your appointment with the second physician was scheduled for the afternoon of September 20. When asked why you reported back to work for two days without following up with Dr. Firpo or Ms. Patel, you responded that you did not feel the need to respond to emails that "only stated facts," and that you would have responded if they had asked if you were working. You confirmed that Dr. Hughes contacted you, but claimed that you did not want to reply because you found the Physician Wellness Committee to be unhelpful in your previous interactions. Mr. Johnson reminded you that cooperation with the Physician Wellness Committee was mandatory, to which you responded that you might be able to respond to Dr. Hughes "at your convenience." During the meeting, Ms. Tiger-Paillex reached Dr. Hughes by phone and you were able to arrange an appointment for September 22.

You were insubordinate and unprofessional in your refusal to follow Dr. Firpo's instructions—which were given in response to your statements regarding your inability to work due to a medical condition—or to respond to the Program's and Dr. Hughes' attempts to contact you.

VI.   Incident in Ms. Patel's Office

On September 20, after Ms. Patel brought you to her office and contacted Ms. Tiger-Paillex, Ms. Patel stepped out momentarily to assist a visitor. When she returned, she observed that you were looking through the contents of one of her files on her desk (The file was labeled "Pathology"). Ms. Patel explained that her files are confidential and asked you why you opened the Pathology file. At first you provided no reason, but

Leena Varughese, MD
September 21, 2011
Page 6

you ultimately said that you saw the label and wanted to know about Pathology. Ms.
Patel continued to question you, asking how you would feel if someone went through
your workspace and looked at your files. You replied that Ms. Patel "just had it there,"
and asked Ms. Patel, "What's the big deal?" You also told Ms. Patel to "chill out."
Later, when Ms. Tiger-Paillex and Mr. Johnson asked you about looking at the file in
Ms. Patel's office, you initially said, "I don't have anything to say about that." You
then denied looking through the file, saying that your coffee was resting close to some
documents on her desk, resulting in a misperception. Ms. Tiger-Paillex informed you
that Ms. Patel's files were confidential, and you replied that Ms. Patel should not have
left someone alone in her office if there are confidential files there. You not only
exercised extremely poor judgment in accessing Ms. Patel's file but lied several times
when questioned about it. Such behavior is unacceptable and raises serious questions
about your professional character.

You are summarily suspended from the Program pending your termination. Your summary
suspension is not subject to a hearing.

You have a right to appeal your summary suspension and termination by requesting, in writing, a
hearing before the House Staff Affairs Committee of the Medical Board within ten days of
receiving this notice. Requests should be directed to Michael Harris, MD, President of the
Medical Board, in care of the Medical Staff Office at Box 1116. The summary suspension is
without pay and will take effect immediately pending termination. If you do not appeal this
disciplinary action it will become final at the end of the appeal period. For your convenience,
relevant portions of the House Staff Manual are enclosed.

Sincerely,

Carlos Cordon-Cardo, MD, PhD
Chair, Department of Pathology

Adolfo Firpo, MD
Professor and Director of Educational Activities
Department of Pathology