UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LEENA VARUGHESE, M.D.,

                            Plaintiff,                          12 Civ. 8812 (CM)

        -against-

MOUNT SINAI MEDICAL CENTER, PATRICK
LENTO, M.D., CARLOS CORDON-CARDO, M.D.,
ADOLFO FIRPO, M.D., IRA J. BLEIWEISS, M.D.,          ELECTRONICALLY FILED
ABC CORP. 1-10, and JOHN DOES 1-10,                 DOC #: _____
                                                    DATE FILED: 4|3|13
                            Defendants.
-----------------------------------------------------------------x

                            **DECISION AND ORDER**

McMahon, J.:

        This case arises from the termination of Dr. Leena Varughese's ("Plaintiff") residency at

the Mount Sinai Medical Center ("Mount Sinai" or the "Hospital"). Plaintiff's complaint may be

fairly described as a "kitchen sink" pleading; it alleges twenty-one separate causes of action

against the above-captioned Defendants. These claims include twelve counts under federal,

state, and local anti-discrimination laws; one count of interference with business relations; one

count of defamation; one count of breach of contract; one count of breach of the covenant of

good faith and fair dealing; one count of whistleblower retaliation; one count alleging violation

of 42 U.S.C. § 1981; one count of interference with Plaintiff's rights under the Family and

Medical Leave Act; one count of intentional infliction of emotional distress; and one count of

individual liability. Plaintiff seeks damages alone, not reinstatement as a resident.

        Defendants have moved to dismiss Plaintiff's complaint, pursuant to Rule 12(b)(1), on

the grounds that the New York State Public Health Council ("PHC") has "primary jurisdiction"

over Plaintiff's claims. *See* N.Y. Pub. Health § 2801-b; *Johnson v. Nyack Hosp.*, 964 F.2d 116

(2d Cir. 1992).

                                            1

Plaintiff has cross-moved, pursuant to Rule 15(a)(2), for leave to file an amended complaint.

For the reasons set forth herein, Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) is DENIED.  Plaintiff's cross-motion for leave to file an amended complaint is GRANTED.

## BACKGROUND

### I.    The Parties

Plaintiff is a female of Indian descent who resides in Union County, New Jersey.

Defendant Mount Sinai is a hospital and school of medicine located in Manhattan.

At all times relevant to the charge of discrimination, the Individual Defendants served in the following roles at Mount Sinai:  Dr. Patrick Lento - Residency Program Director; Dr. Carlos Cordon-Cardo - Chair of the Department of Pathology; Dr. Adolfo Firpo - Director of Educational Activities for the Department of Pathology; and Dr. Ira J. Bleiweiss - former Chair of the Department of Pathology.

Plaintiff's complaint also names ten ABC Corporations and ten John Does, but does not explain why such placeholder defendants have been included in this action.

### II.   Facts

All facts are taken from the complaint and are assumed to be true.  "It is [also] appropriate for the Court to consider materials outside of the pleadings in assessing" a motion to dismiss pursuant to Rule 12(b)(1). *Bentley v. Wellpoint Companies, Inc.*, No. 11 Civ. 8963, 2012 WL 546991 at *4 (S.D.N.Y. Feb. 17, 2012); *see also Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).

2

Because Defendants' motion to dismiss does not go to the merits of Plaintiff's many claims, the facts of this case will be painted in broad strokes, but with enough detail to address the question of the Court's subject-matter jurisdiction.

Plaintiff began her medical residency in Mount Sinai's Department of Pathology in or around June 2008. In sum and substance, Plaintiff alleges that, starting at some point in 2010, her fellow residents and various supervisory personnel, including the Individual Defendants, began to discriminate against her on the basis of her gender and race/national origin and to retaliate against her because she reported other residents' drinking on the job.

During this period, Plaintiff also began to have her own disciplinary problems. On December 21, 2010, Dr. Lento placed Plaintiff on academic advisement in connection with altercations Plaintiff had had with other residents on December 8 and December 10, 2010. (Academic Advisement, McEvoy Reply Decl., Ex. 1.) On September 21, 2011, Drs. Cordon-Cardo and Firpo summarily suspended Plaintiff from the pathology residency program pending termination on the basis of a number of incidents that had transpired since Plaintiff was placed on academic advisement. (Termination Letter, Wronko Decl., Ex. A.) Plaintiff appealed the termination, but the decision was upheld.

At some point in 2012, after Plaintiff's termination, a potential employer requested that the Hospital forward the record of Plaintiff's employment at Mount Sinai. In response, the Hospital generated a "Summative Evaluation," which deemed Plaintiff's patient care, professionalism, and interpersonal/communication skills "unsatisfactory" and provided a brief summary of Plaintiff's tenure at Mount Sinai. (Summative Evaluation, Wronko Decl., Ex. B.) Plaintiff alleges that the Summative Evaluation has prevented her from finding employment in pathology.

3

Plaintiff alleges that the accusations that led to her termination and have prevented her from finding new employment were baseless, pretextual, and part of a systematic campaign of retaliation against her by the Hospital and the Individual Defendants.

The Academic Advisement, Termination Letter, and Summative Evaluation are described in more detail below.

## III.   Procedural History

After satisfying the federal, state, and local administrative prerequisites associated with commencing a discrimination lawsuit, Plaintiff filed her complaint on December 4, 2012.

Defendants filed their pre-answer motion to dismiss on February 21, 2013.  They also (inexplicably) filed an answer on February 26.

Plaintiff cross-moved to amend her complaint on February 21, before the filing of the answer.

## DISCUSSION

## I.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for lack of subject-matter jurisdiction.  The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction over the complaint. *Bentley*, 2012 WL 546991, at *4.

## II.   New York Public Health Law Section 2801-b

Section 2801-b(1) of the Public Health Law provides that it is an "improper practice" for a hospital to "curtail, terminate or diminish in any way a physician's . . . professional privileges in a hospital, without stating the reasons therefor, or if the reasons stated are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or

4

competency of the applicant." Section 2801-b applies to medical residents. *Indemini v. Beth Israel Med. Ctr.*, 4 N.Y.3d 63, 68 (2005). An aggrieved physician, alleging an improper practice, as defined in Section 2801-b, may file a complaint with the PHC. N.Y. Pub. Health § 2801-b(2).

The PHC, whose powers and duties are set forth at Section 225 of the Public Health Law, is "statutorily authorized to consider any matter relating to the preservation and improvement of public health." *See* N.Y. Dep't of Health PHC Homepage, *available at* http://www.health.ny.gov/facilities/public_health_council/. Among other things, the PHC "considers verified complaints submitted by physicians . . . whose hospital privileges were terminated, suspended or denied." *Id.* Indeed, "A primary function of the PHC is to determine whether there is a medical justification for the withdrawal of [a] doctor's privileges." *Johnson*, 964 F.2d at 121.

## II.   Primary Jurisdiction

"Primary jurisdiction 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *Johnson*, 964 F.2d at 122 (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). "In the primary jurisdiction context . . . . the pertinent questions are whether referral to the agency is necessary to promote uniformity and whether the agency's expertise would assist the court in resolving difficult factual issues." *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 73 (2d Cir. 2002). In short, application of the doctrine is discretionary. *Id.* at 72.

Exercising that discretion, courts in this Circuit have acknowledged two scenarios involving physicians and the PHC in which the primary jurisdiction doctrine does not apply. The

5

first is "where the physician alleges that his or her privileges have been terminated for reasons unrelated to medical care and therefore do not require the particular expertise of the PHC." *Deshpande v. Medisys Health Network, Inc.*, 07 Civ. 375, 2008 WL 2004160, at *2 (E.D.N.Y. May 7, 2008) (citing *Bauman v. Mount Sinai Hosp.*, 452 F.Supp.2d 490, 500 (S.D.N.Y.2006)); *see also Tassy*, 296 F.3d at 73. The question is not "whether an administrative agency is statutorily authorized to hear a particular dispute," but "whether an agency's review of the facts 'will be a material aid' to the court ultimately charged with applying those facts to the law." *Tassy*, 296 F.3d at 73 (quoting *Ricci v. Chi. Mercantile Exch.*, 409 U.S. 289, 305 (1973)).

In *Tassy*, the physician plaintiff's hospital privileges were revoked because he was accused of sexually harassing a number of hospital employees. 296 F.3d at 66. The plaintiff sued, alleging race/national origin discrimination and breach of contract. *Id.* The district court ruled in favor of the hospital and dismissed the plaintiff's complaint with leave to refile pending PHC review, on the grounds that the hospital's purported reasons for suspending the plaintiff were based on his character, which falls within the purview of the PHC. *Id.* at 72. The Second Circuit reversed, noting that "The fact that the New York legislature permits hospitals to revoke privileges based on character flaws . . . does not mean that the PHC has expertise in determining whether a particular physician's character is flawed." *Id.* The critical issue in *Tassy* – namely, whether the plaintiff's termination for sexual harassment was a pretext for race/national origin discrimination – was, rather, "squarely within the traditional realm of judicial competence." *Id.* at 73 (internal quotation marks omitted). So too here.

Here, Plaintiff alleges that she was terminated from the Hospital's pathology residency program for a host of reasons unrelated to her medical care, including her gender, race/national origin, and because she reported other residents' drinking on the job. Defendants' purported

6

reason for terminating Plaintiff – which she contends was a mere pretext – was her "serious

deficiencies in . . . professionalism." (Termination Letter, Wronko Decl., Ex. A at 1.)  In

summing up the various incidents that formed the basis for Plaintiff's termination, Drs. Cordon-

Cardo and Firpo noted, *inter alia*, Plaintiff's "dishonest and insubordinate" behavior,

"unresponsiveness and failure to follow instructions," lying, and general lack of professionalism.

(*See generally id.*)  None of these incidents involved deficiencies in Plaintiff's patient care or

medical skills; they were all interpersonal disputes with faculty, fellow residents, and hospital

staff that reflected poorly on Plaintiff's character.  Under *Tassy*, this is not enough to deprive this

Court of jurisdiction over Plaintiff's complaint.  The PHC's expertise is not required in this case,

because the issues involved are "squarely within the traditional realm of judicial competence."

*Tassy*, 296 F.3d at 73.

        In their brief in support of their motion to dismiss, Defendants base their argument that

this case falls within the unique expertise of the PHC entirely on the fact that the opening

paragraph of the Termination Letter states that Plaintiff's "continued presence in the Program *is

a risk to the Hospital and its patients.*"  (Wronko Decl., Ex. A at 1; *see also* Compl. ¶ 59)

(emphasis added.)  As just discussed, the Termination Letter then goes on to detail various

interpersonal disputes unrelated to Plaintiff's patient care or medical ability.  It is plain that the

phrase upon which Defendants rely is mere boilerplate.  It does nothing to detract from the main

thrust of the Termination Letter:  Plaintiff's purported lack of professionalism – which the Court

is perfectly capable of assessing.

        In their reply brief, Defendants seize on similarly insignificant elements of the record that

could be read to implicate Plaintiff's patient care and medical skills in a vain attempt to drag this

case within striking distance of the PHC's expertise.

7

For instance, Plaintiff's December 21, 2010 Academic Advisement describes a "Patient care related lapse" in connection with Plaintiff's pathology specimen "grossing" responsibilities. (McEvoy Reply Decl., Ex. 1 at 1.) Here, too, however, the emphasis was on Plaintiff's "Failure to demonstrate an appropriate level of professionalism." (*Id.*) According to the Academic Advisement, Plaintiff inappropriately had a "moonlighting" resident gross some of her specimens for her and, when confronted about it, "became loud and verbally abusive to [the chief resident's] authority and advisement as chief." (*Id.*) The Academic Advisement also noted that Plaintiff "got[] into an argument with one of the moonlighting residents . . . and continued to harass her about it on another day." (*Id.*) Among the disciplinary actions taken against Plaintiff were requiring her (1) to draft a "Self-reflection exercise . . . writ[ing] down [her] account of the situation and describ[ing] how [she] could have approached things in a better fashion, including commentary on *physician professionalism* and its role in this circumstance" (emphasis added) and (2) to read a book entitled *Practicing Excellence: A Physician's Manual to Exceptional Healthcare*, which a quick Google search reveals is a tract on professionalism. (*Id*. at 1-2.) While Plaintiff's patient care and medical skills were tangentially involved in this incident, the gravamen of the Academic Advisement was nonetheless that Plaintiff acted unprofessionally, and not in a way that was directly dangerous to patients.  PHC review of this incident would not be of "material aid" to the Court in this case. *Tassy*, 296 F.3d at 73.

Similarly, Defendants home in on one of the incidents mentioned in the Termination Letter where Plaintiff "inadequately prepared" a "clinical case conference presentation" during her "Tumor Cytogenetics Rotation" under Dr. Vesna Najfeld, one of Plaintiff's supervisors. (Wronko Decl., Ex. A at 2.) As above, however, Plaintiff's patient care and medical skills were only tangentially involved in the incident; the real issue was, again, Plaintiff's lack of

8

professionalism. (*See id.*) In the same bullet point describing Plaintiff's inadequate preparation of the presentation, Drs. Cordon-Cardo and Firpo noted Plaintiff's late responses to Dr. Najfeld's pages and emails regarding the presentation; the fact that the presentation had to be postponed; and Plaintiff's failure "to notify attendees of the cancellation, even though Dr. Najfeld asked [her] to do so." (*Id.*) Assuming, as Defendants contend, that these presentations were a critical part of Plaintiff's medical education, it is still clear that the true problem was that Plaintiff purportedly went about that education in an unprofessional manner. The Court does not need the PHC to weigh in to reach this conclusion.

Defendants also point to Plaintiff's March 8, 2012 Summative Evaluation, in which the "unsatisfactory" box is ticked with respect to Plaintiff's patient care (the other options were "superior" and "satisfactory"). (Wronko Decl., Ex. B at 1.) Plaintiff also received an "unsatisfactory" with respect to professionalism and interpersonal/communication skills, and indeed these were the main emphases of the document. (*Id.* at 1-2.) According to the Summative Evaluation, "In some rotations [Plaintiff's] performance was considered *superior* by individual attendings [sic], particularly in the areas of *patient care* (gynecological pathology) and *medical knowledge* (VA hospital rotations)." (*Id.*) (emphasis added.) It was only after Plaintiff's "professionalism continued to be unsatisfactory [that] she was summarily suspended pending termination from the program." (*Id.*) So Defendants are once again barking up the wrong tree.

Finally, Defendants harp on a pair of glancing references to accusations of deficiencies in Plaintiff's patient care, neither of which appears in any of the documentation related to Plaintiff's termination. (*See* Compl. ¶¶ 19, 29.) That Plaintiff may have been accused of poor patient care off the record at some point during the relevant period is not sufficient to take jurisdiction away from this Court in favor of PHC review.

9

The second exception to the primary jurisdiction doctrine is "where the physician seeks damages, but not reinstatement, and where the presence or absence of a proper medical reason for terminating the plaintiff's privileges is not dispositive of the plaintiff's claims." *Deshpande*, 2008 WL 2004160, at *2 (citing *Bauman*, 452 F. Supp. 2d at 500; *Mahmud v. Bon Secours Charity Health Sys.*, 289 F.Supp.2d 466, 473 (S.D.N.Y. 2003)). As noted above, Plaintiff seeks damages only, not reinstatement as a resident at Mount Sinai. I have already determined that Defendants' purported reasons for terminating Plaintiff were essentially non-medical, so a PHC determination of whether there was or was not a proper medical reason for terminating Plaintiff's privileges would be superfluous and in no way dispositive of Plaintiff's claims. The Court also notes with respect to Plaintiff's discrimination and retaliation claims – which are the core of the complaint – that "even if [the] PHC f[ound] that [D]efendants had a legitimate reason for the termination of Plaintiff's . . . privileges, Plaintiff may still prevail in this action if [s]he can prove that the proffered reasons were merely pretext for discrimination." *Hamad v. Nassau County Med. Ctr.*, 191 F. Supp. 2d 286, 298 (E.D.N.Y. 2000); *see also Chandra v. Beth Israel Med. Ctr.*, No. 09 Civ 6619, 2011 WL 180801, at *2 (S.D.N.Y. Jan. 19, 2011).

In sum, nothing in the record suggests that Defendants' purported reasons for terminating Plaintiff had to do with her patient care, medical skills, or anything that falls uniquely within the PHC's expertise. Accordingly, I conclude that the doctrine of primary jurisdiction has no application here. Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied.

### III.   Plaintiff's Motion to Amend

In their opening brief, Defendants argue that "the Complaint does not enumerate the specific statements that make up Plaintiff's defamation claim, violating the requirement that she

plead her defamation claim with specificity." (Defs.' Memo. in Support at 9) (citing *Bobal v. Rensselaer Poly. Inst.*, 916 F.2d 759, 763 (2d Cir. 1990).) Plaintiff interprets this, in effect, as a *de facto* Rule 12(b)(6) motion with respect to her defamation claim, even though Defendants have only moved to dismiss the complaint pursuant to Rule 12(b)(1). Plaintiff now moves, pursuant to Rule 15(a)(2), for leave to amend her complaint to beef up her defamation claim.

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Defendants do not object to Plaintiff's filing an amended complaint. (Defs.' Reply Memo. at 9.) Accordingly, Plaintiff's cross-motion for leave to file a first amended complaint is granted.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) is DENIED. Plaintiff's cross-motion for leave to file an amended complaint is GRANTED.

Plaintiff's deadline to file a first amended complaint is April 17, 2013.

The Clerk of the Court is directed to remove the motions at Docket Nos. 15 and 20 from the Court's list of pending motions.

Dated: April 3, 2013

U.S.D.J.

BY ECF TO ALL COUNSEL

11