# EDWARDS WILDMAN

EDWARDS WILDMAN PALMER LLP
750 LEXINGTON AVENUE
NEW YORK, NY 10022
+1 212 308 4411 main +1 212 308 4844 fax
edwardswildman.com

Rory J. McEvoy
+1 212 912 2787
fax +1 212 308 4844
rmcevoy@edwardswildman.com

RECEIVED SEP 23 2013

September 26, 2013

**VIA FACSIMILE**

Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street, Room 1350
New York, New York 10007

Re: Varughese v. Mount Sinai Medical Center, et al.
Case No.: 12 Civ. 8812 (CM) (JCF)

Dear Judge McMahon:

**MEMO ENDORSED**

[Handwritten annotation: 9/26/2013 — I am rejecting the entire issue — what discovery — what not to allow, what not, how much (if at all), & deadline of MJ, & all answers.]

On behalf of our clients, The Mount Sinai Hospital ("Mount Sinai") and the individual defendants (collectively "Defendants"), I write in response to the letter, dated September 25, 2013, from Plaintiff's counsel, Ronald J. Wronko, requesting a four month extension of the discovery cutoff. In his letter, Mr. Wronko offers four reasons for the lengthy extension: (i) a dispute over Defendants' privilege log; (ii) the need to conduct numerous depositions; (iii) the fact that e-discovery is not complete; and (iv) the need to conduct additional discovery based on a supplemental document production. None of these reasons warrant a four month extension of the discovery cutoff because Mr. Wronko misrepresents the facts underlying each of these issues.

Defendants' Privilege Log

Defendants produced their privilege log to Plaintiff on July 18, 2013. Mr. Wronko raised no objection to that log until more than a month later in a letter to me dated August 22, 2013. In his letter, Mr. Wronko raised a number of objections to the log and asked that I consent to submit the documents to Magistrate Judge Francis for an *in camera* inspection. On August 26, 2013, I sent a letter to Mr. Wronko stating that "if you would like to request that Judge Francis conduct an *in camera* review of all of the documents on the privilege log, you are free to do so." Mr. Wronko did not ask the Magistrate Judge to conduct such a review despite the representation in his August 22 letter to the Court that "[w]hile my application will be pending, I will continue to move this matter forward through fact discovery." In sum, Plaintiff had more than two months to bring any issues regarding the privilege log to Magistrate Francis's attention but failed to do so. This failure cannot now be used to justify a four month extension of the discovery cutoff.

Plaintiff's Depositions

On June 6, 2013, Plaintiff noticed eight depositions. Shortly before the conference with the Magistrate Judge, Mr. Wronko told me he might seek to take a few additional depositions. The

[Stamp: USDC / DOC / DATE 9/26/13]



Hon. Colleen McMahon
September 26, 2013
Page 2

issue of the number of depositions that Plaintiff could conduct was raised at the conference. Contrary to Mr. Wronko's assertion that Magistrate Judge Francis gave him *carte blanche* to conduct an unlimited number of deposition for unlimited amounts of time, Judge Francis stated that he would not limit the number of Plaintiff's depositions to ten but cautioned Plaintiff and her counsel that they should not claim later that the twelfth and thirteenth depositions were of critical witnesses. More importantly, after the conference, Mr. Wronko did not notice any additional depositions until August 22, 2013. In his August 22 letter to me, Mr. Wronko enclosed nine new deposition notices bringing the total number of depositions that Plaintiff seeks to conduct to seventeen – an extraordinary number in a single plaintiff employment discrimination case.

While Defendants object to a number of these depositions, during our telephone conference on September 24, 2013, Mr. Wronko and I agreed to schedule the depositions of the six witnesses that he described as critical. Those depositions can all be taken during the month of October. If Mr. Wronko decides to pursue the remaining depositions, they can be scheduled promptly and any objections can be resolved by Magistrate Judge Francis in a similar time frame. Again, Plaintiff's decision to notice nine additional depositions a month before the current discovery cutoff should not be used as the basis for a lengthy extension of that cutoff.

E-Discovery

The delay in the completion of e-discovery is attributable to the unreasonable nature of Plaintiff's initial requests for Electronically Stored Information ("ESI") and Plaintiff's inability to decide what ESI she wants produced. In her initial requests, Plaintiff asked Mount Sinai to obtain ESI from over 50 custodians and to run 102 search terms against the data collected from those custodians. Mount Sinai objected to the number of custodians and to the search terms because many of them would result in numerous false positives and others were simply unworkable. At the direction of Magistrate Judge Francis, after the July 11 conference, my partner Edwin Larkin (who is handling the ESI discovery) met with Mr. Wronko. As a result of that meeting, Mr. Wronko reduced to seventeen the number of custodians from whom ESI needed to be collected and agreed to confer later regarding the search terms, after a "hit report" was generated. Despite the reduction in the number of custodians, the collection and processing of the data took longer than anticipated. After the data was collected and processed, the vendor was instructed to run all of Mr. Wronko's search terms. Mr. Wronko is incorrect when he says that that the "outside vendor [ran] some but not all of plaintiff's key word searches." Mr Wronko has not advised Mr. Larkin or me that any search terms were not run by the vendor.

On September 10, 2013, Mr. Larkin sent Mr. Wronko the "hit report" generated by the search terms. Mount Sinai's concern about the scope of those terms proved correct because they generated approximately 21,000 documents. In his email, Mr. Larkin sought Mr. Wronko's input on reducing the number of documents by eliminating search terms generating an excessive



Hon. Colleen McMahon
September 26, 2013
Page 3

number of hits. Mr. Wronko did not respond to that e-mail. On September 24, 2013, Mr. Larkin and I spoke to Mr. Wronko about the ESI production. While Mr. Wronko said that he did not want to review 21,000 documents, he had to confer with his client before agreeing to limit the number of documents. Mr. Larkin said that we were ready to begin the review and production of ESI as soon as we knew how Plaintiff wanted to proceed. Mr. Larkin also stated that we would begin our privilege review immediately to avoid any delay in the production. Neither Mr. Larkin nor I told Mr. Wronko that we would "not release the documents" pending the privilege review, in fact, we said just the opposite. There are only 323 potentially privileged documents and the review of those documents can be completed in a few days. If Mr. Wronko wants the remaining 20,000+ documents produced, that can happen in the next week or so. Plaintiff and her counsel should not be permitted to use their own unreasonable ESI discovery requests and their inability to decide how they want to proceed to obtain a four month extension of the discovery cutoff.

Defendants' Supplemental Document Production

In his letter, Mr. Wronko states that Defendants "produced a supplemental document production raising new factual allegations about Dr. Varughese" and that this requires Plaintiff to "take discovery on comparators and their job performance." Presumably, Mr. Wronko is referring to the supplemental document production which was served on August 29, 2013. These documents include (i) letters and emails between Mount Sinai employees and between Plaintiff and Mount Sinai employees regarding Plaintiff's employment, job performance, behavior, meetings with faculty, attendance, schedule, and complaints; (ii) the new innovations data sheet for Plaintiff, which provides personnel information; (iii) faculty evaluations completed for Plaintiff; (iv) a letter from Plaintiff's former attorney to Mount Sinai regarding Plaintiff's employment and complaints against the Hospital; and (v) documents prepared by Drs. Patrick Lento and Melissa Pessin-Minsley during their internal investigations into Plaintiff's complaints. These documents do not raise any "new factual allegations" that have not been raised by Plaintiff or relied upon by Defendants in defense of this litigation. Moreover, Magistrate Judge Francis considered Plaintiff's request to take additional discovery on comparators at the July 11, 2013 conference and directed Defendants to produce specific documents, including (i) performance evaluations by specific faculty members for residents during the period of September 2010 through September 2011; (ii) attendance records for all pathology residents for mandatory morning conferences; (iii) documents that show the failure of any pathology resident to meet the requirement that residents attend 80% of mandatory conferences; (iv) documents that show pathology residents who cancelled the presentation they were required to make as a result of failing to meet the 80% requirement; and (v) the pathology resident coverage list and documents that show the acceptance or refusal by pathology residents of requests for coverage between August and September 2011, all of which have been produced. Accordingly, there is no need for additional discovery on comparators and, in any event, there is no excuse for Plaintiff's failure to serve any supplemental discovery demands in the month since the documents were produced.



Hon. Colleen McMahon
September 26, 2013
Page 4

In conclusion, Defendants have no objection to a reasonable extension of the discovery cutoff and agreed to Mr. Wronko's request, during our September 24 telephone conference, for a sixty day extension. Defendants do object to Plaintiff's attempt to secure a longer extension by misrepresenting the facts to the Court.

Respectfully submitted,

Rory J. McEvoy

cc: Ronald J. Wronko, Esq. (via e-mail)