Ronald J. Wronko •O

**LAW OFFICES OF**
**RONALD J. WRONKO, LLC**
*134 COLUMBIA TURNPIKE*
*FLORHAM PARK, NJ 07932*
(973) 360-1001
FAX (973) 360-1881

315 Madison Avenue,
Suite 901
New York, New York
10165
(212) 886-9057
(212) 957-1912

Member of New Jersey Bar •
Member of New York Bar O

**Reply to New Jersey**

ron@ronwronkolaw.com
www.ronwronkolaw.com

September 29, 2013

**VIA ECF FILING**

Hon. James C. Francis, U.S.M.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    **Leena Varughese, M.D. v. Mount Sinai Medical Center, et al.**
                **Civil Action No. 12 Civ. 8812 (CM)**

Dear Judge Francis:

      I represent Leena Varughese, M.D., in the above-referenced matter. I write to the Court regarding a discovery dispute that has arisen in this matter regarding defendants' privilege log and the status of defendants' electronic discovery.

      **A.**    **Defendants' Privilege Log**

      Defendants produced a privilege log in this litigation covering 132 documents. Annexed hereto as Exhibit A is the most recent version of the log produced on August 29, 2013. By letter dated August 22, 2013, we attempted to meet and confer with defendants about their privilege log. Annexed hereto as Exhibit B is a copy of the meet and confer letter. Defendants never acknowledged or responded to the letter. For the reasons expressed below, we request that the Court conduct an *in camera* review of the documents that have been withheld by defendants.

      By way of background, the Court needs to be aware of certain pivotal dates in conducting an analysis of the issues in dispute relating to the privilege log. Dr. Varughese was a fourth year resident in the Department of Pathology at the time of her termination from

Hon. James C. Francis, U.S.M.J.
September 29, 2013

Mount Sinai Medical Center. In December 2010, Chief Resident Samuel McCash verbally assaulted and physically intimidated Dr. Varughese. Dr. Varughese contends that Dr. McCash singled her out and treated her differently than her similarly-situated male colleagues on account of her gender. Following this incident, Dr. Varughese was placed on Academic Advisement on December 21, 2010 and referred to the Physician Wellness Committee shortly thereafter. It was not until June 10, 2011 that she had an attorney write a letter to Mount Sinai Medical Center and July 1, 2011 that she was placed on Final Written Warning.

According to the log, defendants have withheld documents on the basis of the attorney-client privilege and work product doctrine merely because Mount Sinai's in-house counsel is a recipient of the documents. The privilege log lacks critical detail because it contains only a "*to*" and a "*from*" field without reflecting whether the Mount Sinai in-house legal counsel was merely carbon-copied or "cc'd" on the communications between various members of the administration. Defendants have ignored a request that they revise the privilege log to reflect whether the communications were directed to the in-house counsel or whether counsel was simply copied on the communication.

It is very likely that the in-house counsel was simply copied on communications to improperly cloak them in privilege. Prior to the July 1, 2011 Final Written Warning and the June 10, 2011 letter from Dr. Varughese's legal counsel, the hospital was pursuing a Human Resources function with regard to Dr. Varughese. It is indeed bizarre that the hospital would be seeking legal counsel for actions of the Physician Wellness Committee, which is a committee designed, in theory, to help troubled physicians. Even more troubling is that a psychiatric evaluation of Dr. Varughese by a hospital psychiatrist has been withheld from production on the basis that it was circulated to an in-house counsel. The fact that the defendants have withheld a psychiatric evaluation under some thinly veiled claim of privilege demonstrates the lack of merit in the defendants' privilege analysis.

The majority of communications that post-date Dr. Varughese's counsel's letter relate to human resources functions as well, including a request by Dr. Varughese for a leave of absence. The privilege log is almost barren of communications *from* the in-house counsel, which demonstrates that the counsel was not being requested to provide advice but was only being copied on communications. Again, it remains critical to know whether counsel was a passive observer to the communications between and amongst administrators.

Thus, defendants' privilege log raises three (3) critical questions: (1) whether the majority of communications were, in fact, not directed to counsel for purposes of soliciting legal advice but were simply copied to counsel to create an inappropriate cloak of privilege; (2) whether litigation was contemplated prior to a letter having been received from Dr. Varughese's legal counsel or even after such letter involving human resources issues; and (3) where defendants' motivation to allegedly discriminate or retaliate against plaintiff is directly at issue, whether plaintiff is entitled to pierce the privilege because defendants' intent and

Hon. James C. Francis, U.S.M.J.
September 29, 2013

rationale for taking adverse actions against plaintiff are directly at issue in this case.

The attorney-client privilege protects from disclosure "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007). "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984).

The procedure used in Lolonga-Gedeon v. Child & Family Services, No. 08-cv-00300 (W.D.N.Y. 2012), should be used here. See Ex. C, Copy of Lolonga-Gedeon decision. In that Title VII case, the Court conducted an *in camera* inspection and found that several of the documents withheld were not privileged because the attorney had simply been copied on them and/or the documents were disseminated to individuals who did not have a need to know the information within the organization.

Finally, the defendants raise Quality Assurance Privilege, Peer Review Privilege, and Work Product privilege for documents drafted by a number of individuals including Arthur Figur, M.D., defendant Adolfo Firpo, M.D., etc. It appears that while the privilege can shield expert opinions from disclosure, the investigation the Hospital conducted and notes are not the same and should be made available for discovery. Drs. Figur and Firpo are not attorneys and their fact finding was directly related to Dr. Varughese's complaint of discrimination and harassment. See In re Qwest Communications International, Inc., 450 F. 3d 1179, 1184 (10th Cir. 2006). These documents should be made available accordingly as these are not the work product of in-house or outside legal counsel of defendants.

Plaintiff respectfully submits that defendants should provide a revised privilege log reflecting with precision whether counsel was simply copied on communications. Additionally, plaintiff further requests that the documents that are the subject of the privilege log be produced for *in camera* inspection by the Court to determine whether defendants' invocation of the attorney-client privilege and/or work product doctrine is unsupported and/or should be pierced because intent and motivation of defendants are directly at issue in this case.

**B.     Status of Defendants' Response to ESI Discovery**

Defendants have advised that the initial search results in response to plaintiff's ESI discovery has amounted to over 20,000 documents. We were supplied with a "hit report" of the search terms that were run by defendants' outside vendor. Plaintiff would like all of the documents produced. Defendants now have advised that they have to conduct a privilege review of the ESI documents. Plaintiff requests that the Court set a strict time-table by which such review must be completed and the documents produced electronically.

Hon. James C. Francis, U.S.M.J.
September 29, 2013

### C. Request for Extension of Time to Complete Errata Sheets

Defendant has requested that plaintiff complete Errata Sheets on all five (5) days of her deposition in thirty (30) days. There is 1,085 pages to review. Plaintiff has already completed the first three (3) days within the thirty (30) day time period. When I requested an extension of time for plaintiff to complete the final two days, defendants' counsel initially denied the request entirely. Then, he agreed to only give plaintiff a week to complete it. Normally, a plaintiff would have thirty (30) days to review a single transcript. Plaintiff simply requires an additional ten (10) days to finish the task. We request that the Court grant this reasonable request.

### D. Scheduling of Defense Depositions

At the discovery conference on this case in July as well as in my meet and confer letter, it was discussed that plaintiff should prioritize defense depositions and attempt to take more than one deposition, if possible, on a given deposition day. In compliance with that request, we provided a priority list of depositions in the meet and confer letter. Defendants' counsel only supplied proposed dates for deposition on Friday, September 26, 2013. Rather than propose dates so that two witnesses per day could be booked, he proposed different dates for each witness. He then denied that we had ever discussed the issue of scheduling witnesses on the same date. We request that the Court direct defense counsel to cooperate and provide dates so that two witnesses a day can be taken (or in some cases, three witnesses where possible).

We thank the Court for its consideration of this matter.

Respectfully submitted,

Ronald J. Wronko

cc:   Rory J. McEvoy, Esq. (via ecf)