

EDWARDS WILDMAN PALMER LLP
750 LEXINGTON AVENUE
NEW YORK, NY 10022
+1 212 308 4411 main  +1 212 308 4844 fax
edwardswildman.com

Rory J. McEvoy
Partner
+1 212 912 2787
fax +1 212 308 4844
rmcevoy@edwardswildman.com

October 4, 2013

**VIA ECF**

The Honorable James C. Francis
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    Varughese v. Mount Sinai Medical Center, et al.
             12 Civ. 8812 (CM) (JCF)

Dear Judge Francis:

On behalf of our clients, The Mount Sinai Hospital ("Mount Sinai" or the "Hospital") and the individual defendants (collectively "Defendants"), and at the direction of the Court, I write to supplement my letter of September 30, 2013 that I wrote in response to counsel for Plaintiff's letter to the Court, dated September 29, 2013, regarding a number of outstanding discovery issues. I am aware that there has been substantial correspondence with Judge McMahon and Your Honor regarding these matters so I will only discuss matters not previously raised with the Court.

The real issue that underlies the discovery issues raised by Mr. Wronko is Plaintiff's attempt to secure from the Court a four month extension of the September 27, 2013 discovery cutoff. As the Court is aware, it is Defendants' position that there is no need for this lengthy extension and that the remaining discovery can be completed by the end of November. Defendants believe that Plaintiff and her counsel have misrepresented the history of the discovery disputes in a thinly-veiled effort to justify extending the discovery cutoff to the end of January 2014.

Defendants' Depositions

Leaving aside Mr. Wronko's attempt to evade the fact that he never asked me to schedule more than one witness on a single day (other than his claim that there was a general conversation to that effect during the July 2013 conference), the six witnesses that Mr. Wronko told me were the critical ones have now all been scheduled to be deposed between October 18 and 30, 2013 (including four witnesses on two days), subject to Mr. Wronko being able to rearrange his schedule on one or two of those dates.

**EDWARDS**
**WILDMAN**

The Honorable James C. Francis
October 4, 2013
Page 2

With regard to the remaining eleven depositions noticed by Plaintiff, Mr. Wronko still has not indicated which of those depositions he intends to take. Mr. Wronko told me that he would make that determination after he completed the six scheduled depositions. I told Mr. Wronko that I saw no reason why Plaintiff could not decide now who she wanted to depose and that I intended to object to a number of the depositions, if Plaintiff pursued them. The time has come for Plaintiff to tell the Court whom she will seek to depose so that (i) the Court can rule on any objections; and (ii) they can be scheduled during the first three weeks in November 2013.

Electronic Discovery

In his September 29, 2013 letter to the Court, Mr. Wronko claims that "Defendants have now advised that they have to conduct a privilege review of the ESI documents." In fact, in my September 26, 2013 letter to Judge McMahon, I advised the Court that the privilege review was complete and that there were only 323 potentially privileged documents out of the 21,000 documents that Plaintiff's search terms generated. Thus, when Mr. Wronko wrote his September 29 letter, Plaintiff knew that the privilege review was complete and the limited number of documents that the review had identified as possibly privileged.

More importantly, in his September 29 letter, Mr. Wronko states that Plaintiff "would like all of the documents produced." During Mr. Larkin's and my September 24, 2013 telephone conference with Mr. Wronko, he told us that he did not want to review 21,000 documents but that he had to confer with his client before limiting the number of documents. Whatever the reason for this change of heart, Plaintiff should not be allowed to use her decision to review 21,000 documents, that were generated by her overly broad search terms, and that could and should have been reduced in number, to justify a four month extension of the discovery cutoff.

Defendants' Privilege Log

Contrary to Mr. Wronko's claim, he never offered to meet and confer regarding his objections to Defendants' privilege log. In fact, he rejected my offer to do so. Instead, in his August 22, 2013 letter to me, and other than a complaint about the information contained in the log, Mr. Wronko demanded that I agree to submit the privileged documents to the Court for an *in camera* review. In my recent telephone conference with Mr. Wronko, I offered to review the privilege log in light of his objections to determine whether Mount Sinai would produce documents identified on the log and not assert the privilege. Mr. Wronko declined that offer. The fact that Plaintiff and her counsel have no interest in fulfilling their obligations to meet and confer before seeking the Court's intervention is revealed by the statement in Mr. Wronko's letter to the Court, dated October 1, 2013, that, even before he sees a privilege log regarding the 323 potentially privileged

EDWARDS
WILDMAN

The Honorable James C. Francis
October 4, 2013
Page 3

ESI documents, "[a]ny documents that are withheld pursuant to a privilege log should be handled in the same way as the Court directs when ruling on the Privilege Log."

With regard to the privilege log, Mr. Wronko makes a number of misstatements regarding the legal standards that govern the attorney-client, and quality assurance and peer review privileges. As Mr. Wronko correctly states, the attorney-client privilege applies when there is "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). However, he is incorrect when he suggests that the privilege only attaches at the time Plaintiff's first attorney wrote a letter to Mount Sinai in June 2011 or in July 2011 when Plaintiff was placed on final warning. There is no requirement that there be a pending or threatened litigation for the attorney-client privilege to apply. *See In the Matter of the Estate of John M. Pretino*, 150 Misc. 2d 371, 372 (Sup. Ct. Nasssau County (1991) (*citing* 8 Wigmore, Evidence §§ 2292, 2294 [McNaughton rev 1961]; 5 Weinstein-Korn-Miller, NY Civ Prac para. 4503.04) ("[w]here legal advice is sought from an attorney, the communications relating to that purpose, made in confidence by the client, are permanently protected from disclosure absent a waiver . . . and the privilege applies regardless of whether litigation was pending").

The documents on the privilege log that are protected by the attorney-client privilege begin in December 2010 – the time Plaintiff refused to sign her Academic Advisement. It was this event that caused Mount Sinai officials to seek in-house counsel's advice on how to proceed in the face of that refusal.

The quality assurance privilege protects from disclosure, among other things, "records relating to medical review and quality assurance functions." *Katharine F. v. State of New York*, 94 N.Y.2d 200, 204 (1999) (*citing* N.Y. Educ. Law § 6527(3)). Similarly, the peer review privilege protects documents prepared in connection with the peer review process where health care providers review and critique elements of health care, including other physicians, with the goal of health care improvement. *See* N.Y. Pub. Health Law § 2805-m. The fact that Dr. Figur and Dr. Firpo are not attorneys is irrelevant because there is no requirement that an attorney author documents for them to be privileged under the quality assurance or peer review privilege. Rather, the individuals who can assert the privilege include, but are not limited to, members of review committees, physicians and hospital representatives. *See Katharine F.*, 94 N.Y.2d at 205-06 (finding that an investigation report prepared by a physician and incident reports prepared by staff persons were protected by the quality assurance privilege); *Stalker v. Abraham*, 69 A.D.3d 1172, 1174 (3d Dep't 2010) (finding that information from a hospital representative regarding the staff physician certification process was subject to the quality assurance and peer review privileges); *Schaefer v. Brookdale Univ. Hospital and Med. Center*, 46 A.D.3d 662, 663-64 (2d

EDWARDS
WILDMAN

The Honorable James C. Francis
October 4, 2013
Page 4

Dep't 2007) (finding that communications between a residency program and the ACGME were protected by the quality assurance and peer review privileges).

In an effort to alleviate the burden on the Court that Plaintiff seeks to impose by asking that every privileged document be reviewed *in camera*, I will conduct a review of the privilege log before the conference (which I understand will take place after October 15, 2013) to determine whether any of the documents on the log will be produced voluntarily.

The Errata Sheets

Although Plaintiff had more than adequate time to complete the errata sheets, Defendants have no objection to whatever period of time the Court deems appropriate for their completion, provided that Defendants are permitted to reserve their rights to object to those errata sheets for whatever reason (other than timeliness) in connection with the summary judgment motion that Defendants intend to file.

Respectfully submitted,

Rory J. McEvoy

cc:   Ronald J. Wronko, Esq. (via ECF and facsimile)
      Attorney for Plaintiff