

EDWARDS WILDMAN PALMER LLP
750 LEXINGTON AVENUE
NEW YORK, NY 10022
+1 212 308 4411 main  +1 212 308 4844 fax
edwardswildman.com

Rory J. McEvoy
Partner
+1 212 912 2787
fax +1 212 308 4844
rmcevoy@edwardswildman.com

November 8, 2013

**VIA ECF**

The Honorable James C. Francis
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: Varughese v. Mount Sinai Medical Center, et al.
     Docket No.: 12 Civ. 8812 (CM) (JCF)

Dear Judge Francis:

  The Mount Sinai Hospital ("Mount Sinai" or the "Hospital") and the individual defendants (collectively "Defendants"), move pursuant to FED. R. CIV. P. 45(c)(3) to quash the subpoenas of three non-party witnesses, Dr. Shabnam Jaffer ("Jaffer"), Renato Valentin ("Valentin") and Dr. Robert Guarino ("Guarino"), or in the alternative, for a protective order pursuant to FED. R. CIV. P. 26(b)(2)(C) and 26 (c)(1) limiting the number of total depositions.[1] Defendants also move for a protective order preventing Plaintiff from deposing Dr. Samuel McCash ("McCash"), Dr. Adrienne Jordan ("Jordan"), Dr. Elizabeth Morency ("Morency") and Dr. Paul Azar ("Azar").[2] This letter brief is submitted in support of Defendants' motion.

## I. **RELEVANT FACTS**

  Plaintiff Dr. Leena Varughese ("Plaintiff" or "Varughese"), a former resident in Mount Sinai's Pathology Department Residency Program (the "Program") was terminated from the Program in September 2011 as the result of numerous incidents which demonstrated Varughese's

---

[1] Plaintiff served the subpoenas to take these depositions on counsel for Defendants on October 23, 2013. They are returnable on November 15, 2013.

[2] On June 6, 2013, Plaintiff noticed the depositions of McCash, Jordan and Morency. Although Defendants agreed to produce McCash, Jordan and Morency for deposition, it is now apparent that these depositions are duplicative and unduly burdensome because (i) these individuals have little, if any, testimony to offer regarding any of the issues in the case; and (ii) whatever discoverable information these witnesses possess has been or can be obtained through other discovery. On October 8, 2013, Plaintiff noticed the deposition of Azar. Plaintiff also has stated an intention to depose Dr. Alan Schiller ("Schiller"), but has not decided whether to seek that deposition presumably because Schiller resides in Hawaii.

EDWARDS
WILDMAN

The Honorable James C. Francis
November 8, 2013
Page 2

lack of professionalism. In December 2010, Plaintiff was placed on Academic Advisement and referred to the Physician Wellness Committee ("PWC") because of her behavior after an argument with McCash, the co-chief resident. After Plaintiff failed to satisfy the terms of her Academic Advisement and based on her conduct during two meetings with the new Chair of the Department, Dr. Cardon-Cardo ("Cardon-Cardo"), Plaintiff was placed on Final Warning in July 2011. Despite the Final Warning, Plaintiff continued to behave in an unprofessional manner. As a result, Cardon-Cardo and Dr. Adolfo Firpo ("Firpo"), in consultation with Dr. Scott Barnett ("Barnett"), Mr. Paul Johnson ("Johnson") and Ms. Caryn Tiger-Paillex ("Tiger-Paillex), decided to terminate her from the Program on September 21, 2011.

In her Complaint, Plaintiff's essential claim is that Mount Sinai retaliated against her because she complained about the December 2010 incident with McCash. Secondarily, Plaintiff claims that Mount Sinai discriminated against her because she is a woman of Indian descent.[3] Despite alleging nothing more than run of the mill retaliation and employment discrimination claims, Plaintiff noticed or subpoenaed the extraordinary number of twenty-two individuals for deposition.[4]

Defendants have produced or agreed to produce eleven witnesses for deposition: (i) Dr. Melissa Pessin, the Chair of the Pathology Department at the time of the incident involving McCash and the individual who referred Plaintiff to the PWC; (ii) Dr. Arthur Figur ("Figur"), the Chair of the PWC, who conducted an investigation into the December 2010 incident between Plaintiff and McCash; (iii) Barnett, the Associate Dean of Graduate Medical Education, who was involved in the decisions to put Plaintiff on Academic Advisement, to issue her a Final Warning and to terminate her from the Program; (iv) Johnson, the Director of Graduate Medical Education, who, like Barnett, was involved in the events that led to Plaintiff's termination from the Program; (v) Dr. Patrick Lento, the Program Director of the Program during Plaintiff's third and fourth years of residency and who was involved in the decision to place Plaintiff on Academic Advisement; (vi) Cardon-Cardo, the Chair of the Pathology Department at the time that Plaintiff was placed on Final Warning and at the time that she was terminated from the Program, and who participated in those decisions; (vii) Firpo, the Director of Education in the Department of Pathology at the time that Plaintiff was terminated from the Program and who participated in that decision; (viii) Dr. Vesna Najfeld,[5] who supervised Plaintiff during her

---

[3] Although Plaintiff's kitchen sink, 40-page, 176-paragraph Second Amended Complaint asserts twenty-two causes of action, Plaintiff's counsel admitted to Judge McMahon, at the initial pre-trial conference, that this is essentially a retaliation case.

[4] Nineteen of these individuals are current or former employees of Mount Sinai (including Schiller) and three are employees of Robert Wood Johnson Medical Center where Plaintiff applied for admission to the residency program after her termination from Mount Sinai.

[5] On November 7, 2013, Plaintiff's counsel informed Defendants' counsel that Plaintiff will not depose Dr. Najfeld.

**EDWARDS WILDMAN**

The Honorable James C. Francis
November 8, 2013
Page 3

Tumor Cytogenetics rotation; (ix) Ms. Sheema Patel, the Interim Administrator of the Pathology Department at the time that Plaintiff was terminated from the Program; (x) Dr. Ira Bleiweiss ("Bleiweiss"), one of the individual defendants; and (xi) Tiger-Paillex, the Director of Human Resources for Mount Sinai School of Medicine, who investigated Plaintiff's complaints against McCash and who participated in the decision to terminate Plaintiff from the Program.

These are the individuals who were involved, either directly or indirectly, in all of the decisions regarding Plaintiff's employment at Mount Sinai, including the decision to put her on Final Warning and to terminate her from the Program. To the contrary, the individuals who are the subject of this motion played no role in the decision-making process, and, therefore, can offer little or no testimony regarding the decisions that resulted in any possible adverse action against Varughese.

Even assuming that these individuals could shed any light on Plaintiff's retaliation and discrimination claims, their depositions are unreasonably cumulative or duplicative, and the discovery sought from these individuals has been, or can be, obtained from the other eleven witnesses that Defendants have produced, or will produce, and from the voluminous documents produced in discovery. Furthermore, requiring Defendants to produce an additional seven witnesses (excluding Schiller) for a total of eighteen depositions (plus the three from Robert Wood Johnson Medical Center) would be unduly burdensome and expensive, especially considering that one of the witnesses (Azar) lives in Louisiana, a second (Morency) resides in Illinois and a third (Jordan) in Pennsylvania. Accordingly, the Court should grant Defendants' motion to quash and for a protective order limiting the depositions to the eleven witnesses that Defendants have already agreed to produce.

## II. ARGUMENT

### a. Applicable Legal Standards

In general, a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense...." FED. R. CIV. P. 26(b)(1). However, a court may limit the scope and means of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at

**EDWARDS WILDMAN**

The Honorable James C. Francis
November 8, 2013
Page 4

stake in the action, and the importance of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(2)(C).

Similarly, under FED. R. CIV. P. 26(c), the court can issue an order limiting discovery for good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). FED. R. CIV. P. 45(c) provides additional protection for non-parties subject to a subpoena by requiring a court to "quash or modify a subpoena that ... subjects [the] person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(iv). The trial court has discretion in determining whether the requested discovery constitutes an "undue burden." *See, e.g., In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68–70 (2d Cir. 2003); *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48-49 (S.D.N.Y. 1996).

In analyzing motions to quash and motions for a protective order, "courts weigh the need of the party seeking the discovery against any undue hardships created by permitting it." *In re Fosamax Products Liab. Litig.*, No. 1:06-MD-1789, 2009 WL 2395899, at *2 (S.D.N.Y. Aug. 4, 2009). *See also In re Subpoena Issued to Dennis Friedman*, 350 F.3d at 70 (noting that the court "may prevent the proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship"); *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) (noting that the appropriateness of a protective order "depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought.") (citations omitted).

Lastly, the party seeking a protective order must certify that they have attempted, in good faith, to resolve the discovery dispute with the other party before seeking judicial intervention. FED. R. CIV. P. 26(c).

> **b. The Motion To Quash And For A Protective Order Should Be Granted Because The Discovery Sought In The Seven Depositions That Are The Subject Of This Motion Is Unreasonably Cumulative Or Duplicative, Can Be Obtained From Other Sources That Are More Convenient, Less Burdensome, or Less Expensive**

Permitting Plaintiff to depose McCash, Jordan, Morency, Guarino, Azar and Jaffer, and Valentin who have little, if any discoverable information about the essential elements of Plaintiff's claims, would violate the principles of FED. R. CIV. P. 26(b)(2)(C), 26(c) and 45(c), which all require the court to limit discovery when the discovery sought would be duplicative and constitute an undue burden. For example, an essential element of Varughese's retaliation and discrimination claim is that an adverse employment action was taken against her. To establish a claim for retaliation, Plaintiff must show: (i) she participated in a protected activity; (ii) Mount Sinai was aware of her participation; (iii) she suffered a materially adverse action; and

The Honorable James C. Francis
November 8, 2013
Page 5

(iv) a causal connection between the protected activity and the materially adverse action. *See Klein v. New York Univ.*, 786 F. Supp. 2d 830, 847-848 (S.D.N.Y. 2011). In order to make out a case of national origin or gender discrimination Plaintiff must show: (i) membership in the protected class; (ii) qualification for the position; and (iii) an adverse employment action; (iv) occurring under circumstances that raise an inference of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). None of the individuals whose depositions Defendants' challenge in this motion participated in, or possess any knowledge of, the decision-making process that resulted in any possible adverse employment action.[6] At best, they have little to no knowledge of the core issues in this case. *See, e.g., Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc.*, No. 05 Civ. 5741, 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005) (limiting Plaintiff's request to depose twenty current and former employees, noting that "[a]lthough a witness might have discoverable information, a party is not always entitled to depose that individual" and instead, the party seeking the deposition must "show[] why it is necessary").

While Plaintiff's motive in seeking to depose these seven witnesses is by no means clear, it appears, based on communications from Plaintiff's counsel that Varughese wants to take these depositions because some of these individuals either participated in (McCash), or were present during (Jordan, Azar, Jaffer and Valentin), the December 2010 incident between Plaintiff and McCash. (*See* Exhibit 1, an e-mail from Plaintiff's counsel to Defendants counsel, dated October 11, 2013). However, the testimony of these witnesses is unnecessary because there is no dispute that there was an argument between McCash and Varughese in December 2010. Plaintiff's claims are not based on the fact that this argument took place, but on her allegation that after she complained about McCash's conduct during the argument Mount Sinai unlawfully retaliated against her. Thus, Plaintiff's version (which does not contain any allegations that Dr. McCash made reference to her gender or national origin during the incident), McCash's version or anyone else's version of what occurred during the incident has nothing whatsoever to do with whether Varughese was retaliated against for making a complaint. Thus, these proposed witnesses would simply reiterate (no doubt with some variation based on the foibles of memory regarding this now nearly three year old event) Plaintiff's testimony which would be unreasonable cumulative or duplicative under FED. R. CIV. P. 26(b)(2)(C)(i). *See Sigala v. Spikouris*, No. 00 CV 0983, 2002 WL 721078, at *4 (E.D.N.Y. Mar. 7, 2002) (affirming an order limiting depositions where plaintiff "failed to come forward with any evidence beyond pure speculation that the additional persons he sought to depose would provide any evidence that was not cumulative of that he could obtain (or had obtained) from persons he was permitted to depose").

---

[6] Defendants do not concede that any of the decisions made by Mount Sinai regarding Varughese, with the exception of the decision to terminate her from the Program, constitute adverse employment actions.

The Honorable James C. Francis
November 8, 2013
Page 6

Plaintiff's other stated reason for pursuing these depositions is that some of the witnesses (Guarino, Azar and presumably McCash and Jordan) are similarly situated to Plaintiff and were held to a different standard than Varughese. (*See* Exhibit 1). Put simply, Plaintiff presumably wants to show that these individuals engaged in conduct that was similar to, or worse than, hers but they were not treated in the same manner by Mount Sinai because they are not women of Indian descent. Assuming that there is any merit to this claim (which there is not), none of these witnesses can testify to a comparison between the treatment they received and the treatment of Varughese by Mount Sinai. At most, they could testify that they were or were not reprimanded, placed on Academic Advisement or disciplined as the result of some incident or another. However, they cannot testify about the reason the Hospital decided to take, or not take, some action against them. Similarly, none of these witnesses can testify why actions were taken, or not taken, against Plaintiff, and the reasons for those decisions. That information can only come from the eleven witnesses that Mount Sinai has agreed to produce and/or from the thousands of pages of documents that have been produced in this action.[7]

For example, with respect to Guarino, Plaintiff presumably claims that his testimony is needed because he was scheduled to give a presentation at a morning conference on September 15, 2011 (the same day that Varughese was scheduled, but failed, to make a presentation) but he cancelled his presentation. At her deposition, Plaintiff testified that Guarino was not disciplined, referred to the PWC, or reprimanded by Bleiweiss. Defendants have agreed to produce Bleiweiss and Figur, the Chair of the PWC. Plaintiff will have the opportunity to question Bleiweiss about what action, if any, was taken against Guarino for canceling the conference and the reasons for such action. Plaintiff can also question Figur about whether or not Guarino should have been referred to the PWC. It is hard to imagine a better example of the type of cumulative, duplicative and burdensome deposition condemned by the Federal Rules.

### III. DEFENDANTS MADE A GOOD FAITH EFFORT TO MEET AND CONFER WITH PLAINTIFF BEFORE SEEKING JUDICIAL INTERVENTION

Before making this motion, Defendants' counsel attempted in good faith to resolve the issues raised in the motion with Plaintiff's counsel.[8] Defendants objected to producing Jaffer, Valentin, Schiller, Guarino and Azar on the basis that these depositions were unreasonably cumulative or duplicative, and the discovery sought from these individuals could be obtained by

---

[7] Plaintiff has never articulated a reason for taking Morency's deposition other than the fact that she was the co-chief resident, along with Jordan, during Varughese's fourth year of residency.

[8] During a telephone conversation October 17, 2013, Michael Bacchus, Esq, the Court's Law Clerk, informed Defendants' counsel that they did not need to file a separate good faith certification under FED. R. CIV. P. 26(c) in addition to this letter brief. Should the Court require such certification, Defendants will file one promptly.

less burdensome means, that is, from the other eleven witnesses and from the documents produced in discovery. (*See* Exhibit 2). In response, Plaintiff took the position that the testimony was "essential" and "not duplicative of depositions for members of the Hospital hierarchy/Litigation Control Group, who are all parties aligned with the hospital against plaintiff." (*See* Exhibit 1). While counsel failed to elaborate on the basis for his allegation that the testimony of these witnesses was somehow tainted by their affiliation with the Hospital, he indicated that he intended to file a motion to compel if Defendants would not reconsider their position on production. Plaintiff served Defendants with three subpoenas to testify for Jaffer, Valentin, and Guarino on October 23, 2013. Defendants also communicated to Plaintiff their decision not to voluntarily produce McCash, Jordan and Morency because they too were unreasonably cumulative or duplicative and the discovery sought could be obtained by less burdensome means. Defendants requested that Plaintiff withdraw her notices of deposition for these individuals. (*See* Exhibit 3, an e-mail from Defendants' counsel to Plaintiff's counsel, dated November 7, 2013). I asked Plaintiff's counsel to respond to my request by this morning but I have not heard from him and, because of the upcoming discovery cutoff, I did not want to wait any longer to file the motion.

### IV. CONCLUSION

For all the foregoing reasons, Defendants' motion to quash the three subpoenas pursuant to FED. R. CIV. P. 45(c)(3) and for a protective order limiting the number of depositions pursuant to FED. R. CIV. P. 26(b)(2)(C) and 26(c) should be granted.

Respectfully submitted,

Rory J. McEvoy

cc:   Ronald J. Wronko, Esq. (via ECF and facsimile)
      Attorney for Plaintiff

# Exhibit 1

**From:** ronald j. wronko [mailto:ron@ronwronkolaw.com]
**Sent:** Friday, October 11, 2013 12:26 PM
**To:** McEvoy, Rory
**Subject:** Varughese; Privilege Log and Deposition Issues

Mr. McEvoy,

I have reviewed your proposed Stipulation. From your letter, it appears that you are prepared to produce materials appearing on the privilege log but do not want that production to constitute a waiver as to the assertion of privilege for the remaining items on the log. I do not have a problem with that concept.

However, the Stipulation gives defendants the opportunity to reassert privilege and to call for produced documents to be returned and to be marked as privileged again. This is problematic because if I use documents that are produced from the privilege log at depositions, it would then raise an issue of whether such testimony is valid if there is a battle over a reassertion of privilege. If the defendants produce documents from the log, they have to remain produced for the entirety of the litigation without retraction.

Please advise whether the Stipulation, which appears to be a form Stip., can be modified to accomplish what I believe the intent is here.

An urgent issue is whether you are going to be able to slot anyone else into deposition for next Friday. I need to know that ASAP, so that I can properly prepare for any other witness who would be produced.

As for the witnesses for whom you are objecting, Dr. Jaffer, Mr. Valentin, and Dr. Azar were present for the incident between Dr. McCash and plaintiff. They were the subject of interviews during investigations of the incident. The interview notes are hearsay, and I obtaining direct testimony from these witnesses is essential to have admissible testimony on what they witnessed. Their testimony is not duplicative of depositions of members of the Hospital hierarchy/Litigation Control Group and of Dr. McCash, who are all parties aligned with the hospital against plaintiff. Defendants' objection to production of these individuals amounts to cherry-picking of witnesses who are favorable to the Hospital versus witnesses who may provide adverse testimony.

Likewise, Dr. Guarino and Dr. Azar are similarly-situated co-workers of plaintiff. Plaintiff has identified Dr. Guarino as being held to a different standard than she was. There is no duplication in the testimony that would be obtained from these co-workers versus the testimony of Hospital hierarchy/Litigation Control Group witnesses.

As to these witnesses, if defendants are unwilling to reconsider their position of non-production, plaintiff will file an appropriate motion to compel.

You have not advised whether you will produce Dr. Jordan.

1

Finally, plaintiff will abide the testimony of other witnesses before pressing the issue of Dr. Schiller.

I will communicate with plaintiff's experts to determine their availability and will advise accordingly.

Plaintiff was served authorizations when her IIED claim was pending. This claim has been withdrawn. When it was withdrawn, Judge Francis explicitly stated that she would not have to appear for an IME or produce medical records. Please provide what the basis is for your continuing request that such records be obtained. As I previously advised, I submitted the authorizations to the providers who have not complied with the authorizations. I have served the only medical records I received, which were from Mt. Sinai.

Ronald J. Wronko, Esq.
Ronald J. Wronko, LLC
134 Columbia Turnpike
Florham Park, NJ 07932
(973) 360-1001
(973) 360-1881 (facsimile)
ron@ronwronkolaw.com

# Exhibit 2

**EDWARDS WILDMAN**

EDWARDS WILDMAN PALMER LLP
750 LEXINGTON AVENUE
NEW YORK, NY 10022
+1 212 308 4411 main  +1 212 308 4844 fax
edwardswildman.com

Rory J. McEvoy
+1 212 912 2787
fax +1 888 325 9505
rmcevoy@edwardswildman.com

October 10, 2013

**VIA EMAIL**

Ronald J. Wronko, Esq.
Law Offices of Ronald J. Wronko, LLC
134 Columbia Turnpike
Florham Park, NJ 07932

Re:   Varughese v. Mount Sinai Medical Center, et al.
      12 Civ. 8812 (CM) (JCF)

Dear Mr. Wronko:

I write in response to your letter, dated October 8, 2013, in which you raise various issues regarding: (i) Defendants' depositions; (ii) the privilege log; and (iii) e-discovery. I also write regarding Plaintiff's failure to produce her medical records and to ask that you provide me with dates for the depositions of Plaintiff's experts.

Defendants' Depositions

Defendants will produce Dr. Figur, Dr. Barnett, Mr. Johnson, Dr. Najfeld, Dr. Bleiweiss and Ms. Patel for deposition, in addition to the depositions that have already been scheduled. I will obtain dates on which these individuals are available and will, to the extent possible, try to schedule two witnesses per day.

I object to producing Dr. Jaffer, Mr. Valentin, Dr. Schiller, Dr. Guarino and Dr. Azar because their depositions are unreasonably cumulative or duplicative, and the discovery sought from these individuals either has already been obtained, or can be obtained, by less burdensome and more convenient means. In addition, Plaintiff has had more than ample opportunity to obtain the information by other discovery methods. Finally, the burden and expense of conducting these five depositions, in addition to the other fourteen, outweighs any likely benefit considering, among other factors, the needs of the case and the importance of the discovery to the issues in the case. You should also be aware that Dr. Schiller currently lives in Hawaii, Dr. Azar resides in Louisiana and Dr. Guarino is no longer employed by Mount Sinai.

The Privilege Log

Your assertion that Defendants' Fourth, Fifth and Sixth Affirmative Defense waives the attorney/client privilege for documents that fall within these Affirmative Defenses is an incorrect statement of the law. I see no point in debating the issue because none of the documents on the log concern the investigation into Plaintiff's complaint of employment discrimination or any


**EDWARDS WILDMAN**

Ronald J. Wronko, Esq.
October 10, 2013
Page 2

assertion by Defendants that they conducted an adequate investigation. Similarly, you misstate the facts and the law regarding the good faith defense to an FMLA claim. Again, there is no need to debate the issue because none of the documents on the log concern the question of whether Defendants believed in good faith that they were complying with the FMLA.

Nevertheless, we have reviewed the documents that you identified in your October 8 letter and Mount Sinai will not to assert a claim of privilege and will produce a number of those documents, including the summaries of the findings of the Physician Wellness Committee, Dr. Fersh's report regarding her examination of Plaintiff, and Mr. Johnson's summary of incidents with Dr. Varughese as well as a number of other documents on the log.

Despite the assertions in your letter that the documents that you identified are not, or may not be, privileged for a variety of ill-conceived reasons, it is Defendants' position that they are privileged and that their production shall not be interpreted as a waiver of any privilege. Accordingly, I have attached a Stipulation regarding the non-waiver of attorney/client privilege, work product protection and quality assurance/peer review privilege. If you sign and return the stipulation to me promptly, the documents on the privilege log that Mount Sinai is willing to produce can be sent to you on Monday or Tuesday. In the meantime, I will provide you with a detailed response regarding each of the documents that you identified in your letter.

Electronic Discovery

Ed Larkin is out of town. He will be in tomorrow and will call you regarding the production of electronically stored information.

Plaintiff's Medical Records

You were given authorizations for the release of Plaintiff's medical records on June 6, 2013. More than four months later, those records have still not been produced. Unless I receive them by October 24, 2013, I will make a motion to compel their production.

Depositions of Plaintiff's Experts

Please provide me with dates for the depositions of Plaintiff's experts by October 17, 2013.

Very truly yours,

Rory J. McEvoy

Attachment

EDWARDS WILDMAN PALMER LLP
Rory J. McEvoy
Julie L. Sauer
Attorneys for Defendants
750 Lexington Avenue
New York, New York 10022
212.308.4411
rmcevoy@edwardswildman.com
jsauer@edwardswildman.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------- X
LEENA VARUGHESE, M.D.,                    :

        Plaintiff,                       :

v.                                        :   12 Civ. 8812 (CM) (JCF)

MOUNT SINAI MEDICAL CENTER, PATRICK       :
LENTO, M.D., CARLOS CORDON-CARDO,
M.D., ADOLFO FIRPO, M.D., IRA J. BLEIWESS,:   **STIPULATION**
M.D., and ABC Corp. 1-10, and JOHN DOES 1-10,

        Defendants.                      :
----------------------------------------- X

### STIPULATION CONCERNING NON-WAIVER OF ATTORNEY CLIENT PRIVILEGE, WORK PRODUCT PROTECTION, AND QUALITY ASSURANCE/PEER REVIEW PRIVILEGE

Plaintiff Leena Varughese, M.D. ("Plaintiff") and Defendants The Mount Sinai Medical Center ("Mount Sinai"), Patrick Lento, M.D., Carlos Cordon-Cardo, M.D., and Ira J. Bleiwess, M.D. (the "Defendants") (collectively "the parties"), stipulate and agree as follows:

### Non-Waiver of Attorney-Client Privilege, Work Product Protection, and Quality Assurance/Peer Review Privilege

Pursuant to F.R.E. 502(d) and (e), Public Health Law § 2805-m and Education Law § 6527(3), no party to this litigation shall be deemed to have waived the attorney-client privilege, the work product protection, or the quality assurance/peer review privilege, as a result of any

disclosure connected with this proceeding, or any other federal or state proceeding, irrespective of the degree of care taken by the Producing Party (as defined *infra*) in: (i) preventing disclosure, it being expressly recognized that the Producing Party is not obligated to engage in any pre-production review to identify information protected by the attorney-client privilege, the work product protection, and/or the quality assurance/peer review privilege, though it may elect to do so; or (ii) rectifying disclosure, except that the Producing Party must comply with the provisions herein in seeking to claw-back any information protected by the attorney-client privilege, the work-product protection, and/or the quality assurance/peer review privilege. As to the attorney-client privilege and the work product protection, the provision of F.R.E. 502(b) shall not apply.

A party producing information in response to any request for production pursuant to F.R.C.P. 34, or a third-party producing information in response to a subpoena pursuant to F.R.C.P. 45 (each a "Producing Party"), shall have no obligation to engage in a post-production review to determine whether it has produced any information protected from disclosure by either the attorney-client privilege, the work product protection, and/or the quality assurance/peer review privilege (collectively, "Protected Information"). If a party discovers through any means that a Producing Party has produced Protected Information, then:

(1) where the Producing Party first discovers that it has produced Protected Information, the Producing Party shall promptly provide written notice to the party receiving information in response to any request for production pursuant to F.R.C.P. 34 or F.R.C.P. 45 (the "Receiving Party"), which notice shall include a statement of the basis for the Producing Party's contention that the information is privileged or protected; and

(2) where the Receiving Party first discovers information that, in good faith, the Receiving Party believes the Producing Party may deem to be Protected Information, the

Receiving Party shall promptly provide written notice to the Producing Party advising that the Producing Party may have produced Protected Information, which notice must expressly state that it is being given pursuant to this Stipulation to be valid; and within thirty (30) days thereafter, the Producing Party shall provide written notice to the Receiving Party consistent in substance with the requirements of subparagraph (1) immediately above.

Upon receiving written notice in accordance with these provisions, the Receiving Party shall promptly return or destroy the subject Protected Information and any copies that it has except and only insofar as may be necessary to enable the Receiving Party to present an application to the Court for a ruling concerning the claimed privilege. If the Receiving Party disclosed the subject Protected Information to any third party before receiving the requisite written notice from the Producing Party, the Receiving Party must (i) take reasonable steps to retrieve any such Protected Information, and (ii) immediately advise the Producing Party of any instances in which the receiving Party is unable to retrieve such Protected Information so that the Producing Party may take whatever steps it deems necessary to protect and/or retrieve its Protected Information.

Within thirty (30) days of receiving written notice as described *supra*, the Receiving Party may make an application to the Court, under seal, for a ruling concerning whether the subject Protected Information is protected from disclosure by the attorney-client privilege, the work product protection and/or the quality assurance/peer review privilege. Consistent with the provisions herein, any application contesting whether such Protected Information is protected from disclosure by the attorney-client privilege, the work product protection, and/or the quality assurance/peer review privilege shall not be based on either (i) whether the disclosure of such information was inadvertent, or (ii) the degree of care taken by the Producing Party to protect

against or rectify the disclosure of such information. The Receiving Party shall not otherwise use or disclose any such Protected Information unless and until the Producing Party agrees or it is adjudicated that such Protected Information is not protected by the attorney-client privilege and/or the work product protection. If the Court rules that the subject Protected Information is protected from disclosure, the Receiving Party shall promptly return or destroy all copies of the Protected Information. Absent a timely application by the Receiving Party contesting whether Protected Information is privileged and/or protected, the Protected Information shall be treated as privileged and/or protected, as the case may be, as if it had never been produced. The Producing Party must preserve the Protected Information until all disputes regarding the discoverability of the information have been resolved.

The Parties through their undersigned counsel agree to the form and content of this Stipulation:

**RONALD J. WRONKO, LLC**

By:_____
    Ronald J. Wronko, Esq.
Attorneys for Plaintiff
134 Columbia Turnpike
Florham Park, New Jersey 07932
973.360.1001

**EDWARDS WILDMAN PALMER LLP**

By:_____
    Rory J. McEvoy
    Julie L. Sauer
Attorneys for Defendants
750 Lexington Avenue
New York, New York 10022
212.308.4411

Exhibit 3

# McEvoy, Rory

**From:** McEvoy, Rory
**Sent:** Thursday, November 07, 2013 11:44 AM
**To:** ronald j. wronko (ron@ronwronkolaw.com)
**Subject:** Deposition Schedule

Ron:

Mount Sinai has reconsidered its position and will not voluntarily produce Dr. McCash, Dr. Jordan and Dr. Morency for deposition. The reason for this decision is that it is now apparent, based on the depositions to date, those remaining to be scheduled and the documents produced, that these individuals have little, if any, discoverable information regarding any of the core issues in the case. For example, their version of the December 2010 incident with Dr. McCash is beside the point because (i) there is no dispute that an incident took place and (ii) Varughese's essential claim is that she was retaliated against for complaining about Dr. McCash's behavior. None of these individuals were decision-makers in any of the alleged adverse actions that Varughese claims were retaliatory. To the extent that Plaintiff seeks to depose these individuals (especially McCash and Jordan) to show that they engaged in conduct similar to, or worse than, hers but were not disciplined, they have no discoverable information regarding the reason why action was or was not taken against them or, for that matter, the reason why action was or was not taken against Varughese. That information can only be discovered in the depositions on the eleven witnesses that Mount Sinai has agreed to produce or in the thousands of pages of documents that have been produced. Please let me know by tomorrow morning whether Plaintiff will voluntarily withdraw her notices of deposition for these individuals.

Rory J. McEvoy
Partner
Edwards Wildman Palmer LLP
750 Lexington Avenue
New York, New York 10022

Direct: 212.912.2787
Fax: 212.308.4844
E-Mail: rmcevoy@edwardswildman.com

1