Ronald J. Wronko •O

**LAW OFFICES OF**
**RONALD J. WRONKO, LLC**
*134 COLUMBIA TURNPIKE*
*FLORHAM PARK, NJ 07932*
(973) 360-1001
FAX (973) 360-1881

305 Madison Avenue,
Suite 449
New York, New York
10165
(212) 886-9057
(212) 957-1912

Member of New Jersey Bar •
Member of New York Bar O

**Reply to New Jersey**

ron@ronwronkolaw.com
www.ronwronkolaw.com

November 14, 2013

**VIA ECF AND OVERNIGHT MAIL**

Hon. James C. Francis, U.S.M.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    **Leena Varughese, M.D. v. Mount Sinai Medical Center, et al.**
              **Civil Action No. 12 Civ. 8812 (CM)**

Dear Judge Francis:

I represent Leena Varughese, M.D., in the above-referenced matter. Please accept this letter as a letter motion for a discovery conference and for a forty-five (45) day extension of the fact discovery end date.

Plaintiff Leena Varughese, M.D., has brought this matter alleging various causes of action arising from her termination from Mount Sinai's Pathology Residency Program during her fourth year of the four year residency. Plaintiff has alleged that she is the victim of discrimination on account of being an Indian woman, Hostile Work Environment, and retaliation for reports of discrimination and violations of public policy.

Discovery issues have arising regarding the following issues: (1) Defendants' ESI production; (2) Documents relating to a similarly-situated co-worker of plaintiff who was placed on Academic Advisement; (3) Documents relating to similarly-situated co-workers of plaintiff disciplined under the morning conference attendance policy; (4) Summative Evaluations of two similarly-situated co-workers of plaintiff who had performance and professionalism issues; (5) Records of ACGME citations to the Mount Sinai Pathology program; and (6) Missing Documentation from Defendants' production.

Hon. James C. Francis, U.S.M.J.
November 14, 2013

### A. Defendants have failed to fully produce ESI materials and a Privilege Log

By letter dated September 26, 2013 to Hon. Colleen McMahon, U.S.D.J., Rory McEvoy, Esq., counsel for defendants, wrote: "There are only 323 potentially privileged documents and the review of those documents can be completed in a few days. If Mr. Wronko wants the remaining 20,000+ documents produced, that can happen in the next week or so." Mr. McEvoy went on to argue that the ESI should not be a basis to grant a longer extension of fact discovery than sixty (60) days. Mr. McEvoy repeated these representations to the Court by letter dated October 4, 2013. Mr. McEvoy did not mention in his September 26, 2013 letter or in his October 4, 2013 letter that defendants were planning to undertake a time consuming "confidentiality" review of all 20,000 that would delay their production.

The first two defense witnesses, Carlos-Cordon Cardo, M.D., and Paul Johnson, were scheduled for deposition on Friday, October 18, 2013. By e-mail dated October 11, 2013, two weeks after the letter in which Mr. McEvoy represented that the ESI materials would be produced "in the next week or so," defense attorney Edwin Larkin, Esq., wrote by e-mail that all 20,000 documents were being reviewed for confidentiality, which was delaying the production. See Ex. A, October 11, 2013 E-mail. He represented that additional lawyers were being added to the review team to conduct the review. Defendants apparently did not disclose this "confidentiality review" to gain an unfair advantage in arguing for a shorter discovery extension.

On October 15, 2013, at 5:30 p.m., Mr. Larkin finally advised that the hard drive containing 19,000 documents was ready to be produced. See Ex. B, October 15, 2013 e-mail. The hard drive was received by overnight mail on October 16, 2013, with the depositions of the Chair of the Department of Pathology and the Graduate Medical Education (GME) official scheduled to be deposed on October 18. Mr. McEvoy then wrote that the depositions on the 18th and two additional depositions on October 21 should be adjourned if I felt I needed more time to review the 20,000 documents that defendants reviewed through use of a team of attorneys. See Ex. C, October 16, 2013 e-mail.

Recognizing the very short discovery extension, I kept Dr. Cordon-Cardo scheduled for October 18 but adjourned Mr. Johnson. Likewise, I kept the former Interim Chair of the Department of Pathology, Melissa Pessin-Minsley scheduled for October 21 but adjourned Human Resources Manager Caryn Tiger-Paillex. As a result of the eleventh hour production of the initial ESI materials, I sacrificed long hours and late nights to conduct a rapid review, which revealed previously undisclosed comparator documents involving other Residents who had disciplinary issues as well as very relevant internal documents relating to the plaintiff.

2

Hon. James C. Francis, U.S.M.J.
November 14, 2013

Unfortunately, the ESI issue is still not fully resolved. Defendants have withheld 5,000 documents from production on the grounds that they contain "confidential" information. In an effort to test defendants' representation, I requested that supplemental search terms be run on the withheld documents. Defendants advised that the search terms produced 225 documents. Without reviewing or producing the documents, defendants then demanded that plaintiff relinquish all claim on the withheld documents by letter dated November 1, 2013. See Ex. D, November 1, 2013 letter. Since then, defendants have failed to review the documents in a timely fashion to advise whether they are responsive.

Additionally, defendants have not produced a privilege log on the documents allegedly withheld based on privilege. A privilege log is long overdue.

We request that the Court set expedited deadlines for the above-referenced reviews to be completed. Moreover, it is important to note that had defendants been candid with the Court from the beginning about the more involved confidentiality review, the Court may have appreciated the need for a slightly longer extension of discovery. Defendants' lack of candor with the Court and adverse counsel is disturbing.

**B.   Defendants should be compelled to produce all documents relating to another Resident who, like plaintiff, was the subject of Academic Advisement**

Plaintiff was placed on "Academic Advisement" after Chief Resident Samuel McCash verbally assailed her in December 2010. She has contended that her placement on and the handling of the Academic Advisement were discriminatory and/or retaliatory. She further contends that it is disparate treatment for Dr. McCash to not have also received Academic Advisement for his role in the altercation.

In Interrogatory No. 11, plaintiff specifically asked for identification of any other Pathology Resident through 2011, who was placed on Academic Advisement. Defendants responded: "Defendants state no Pathology Resident, other than Plaintiff, was placed on Academic Advisement between 2008 and 2011." All named defendants certified defendants' Answers to Interrogatories. See Ex. E, Answer to Interrogatory No. 11. At deposition, former Program Director, Patrick Lento, M.D., claimed that he was unaware of any other resident having been placed on Academic Advisement. See Ex. F, T34:19 to T35:6, Deposition of Patrick Lento, M.D. Chairman of the Pathology Department, Carlos Cordon-Cardo, M.D., testified that as long as he has been Chair, he never placed any Resident on Academic Advisement. See Ex. G, T71:10-13, Deposition of Carlos Cordon-Cardo, M.D.

However, during the deposition of current Program Director Adolfo Firpo, M.D., Dr. Firpo admitted that he and Dr. Lento were involved with placing one of plaintiff's fellow

3

Hon. James C. Francis, U.S.M.J.
November 14, 2013

Residents, [name redacted]1, on Academic Advisement in or around December 2011. See Ex. H, T77:2-6; 78:13-16, 92:5-7, Deposition of Adolfo Firpo. As was alleged about plaintiff, [name redacted] was alleged to have acted unprofessionally and to have lost his temper with a member of the staff. See id. at T79:1-4. Also like plaintiff, there was a referral of [name redacted] to the Graduate Medical Education ("GME") Office. See id. at T78:14-19. Apparently, [name redacted] also received a written warning. See id. at T88:2-4. Dr. Firpo did not know whether he was required to read a book about professionalism as plaintiff was required. See id. at T81:18-20. Unlike plaintiff, he was given three (3) opportunities to correct a self-reflection/letter of apology. See id. at T79:24-25.

[name redacted]'s Academic Advisement is critically important for two reasons. First, it provides a comparison of how Academic Advisement was administered to a similarly-situated colleague of plaintiff. Second, it raises questions as to why Dr. Samuel McCash was not placed on Academic Advisement for his role in the altercation with Dr. Varughese, when his behavior is compared to [name redacted]behavior.

It is indeed troubling that defendants did not disclose the [name redacted] Academic Advisement until the Firpo deposition on October 30, 2013. Defendants had an obligation to disclose it in Answers to Interrogatories or, at the latest, at the deposition of Dr. Cordon-Cardo, who was Chair when [name redacted]was placed on Academic Advisement.

Regardless of the stonewalling tactics of defense counsel and false testimony of defense witnesses Lento and Cordon-Cardo, plaintiff made a request on the record at the Firpo deposition for all documents relating to the [name redacted] Academic Advisement to be produced. The request was followed-up with a letter. See Ex. I. In response, defendants are continuing to stonewall and claim that they have thirty (30) days to respond, even though the fact discovery cut-off is less than thirty (30) days away. See Ex. J.

In all likelihood, defendants will wait the full thirty (30) days and will then object to producing any documents. There is no time for this type of gamesmanship. Defendants should be made to immediately produce all documents relating to the [name redacted] Academic Advisement and Written Warning, including all documents reflecting the complaint made by employee [name redacted], all investigative documents, all disciplinary and Advisement documents, all self-reflections/letters of apology, and all documents reflecting the involvement of Human Resources and the GME office.

---

1 Redactions are incorporated to preserve confidentiality on ECF. An unredacted version has been submitted to Chambers.

4

Hon. James C. Francis, U.S.M.J.
November 14, 2013

### C. Defendants Should Be Compelled To Immediately Produce Documents Relating to Other Residents Who Were Required to Give Conference Presentations Pursuant to the Morning Conference Attendance Policy

One of the reasons plaintiff was allegedly terminated was that she fell below the 80 percent attendance for mandatory morning conference attendance. As a penalty, she was required to give a make-up morning conference. When plaintiff advised Chief Resident Adrienne Jordan, M.D., of her topic for presentation, Jordan rejected the topic. Despite having her topic rejected and being told she would have to pick a new topic, plaintiff was scheduled in place of fellow Robert Guarino, M.D., with only two days notice. Dr. Guarino was long-scheduled to present a conference before cancelling at the last minute. Dr. Varughese was subsequently terminated. Dr. Guarino suffered no discipline but simply had his presentation rescheduled.

Pursuant to the Court's Order dated July 11, 2013, defendants produced attendance records for morning conferences through plaintiff's date of termination in or around September 21, 2013. However, defendants did not produce records reflecting disciplinary action taken against two (2) residents, [name redacted] and [name redacted], for failing to present their respective make-up conferences.

At Dr. Firpo's deposition, he disclosed for the first time that at least two other residents, Drs. [name redacted] and [name redacted], were given minor discipline for failing to present after they both fell below the 80 percent threshold. See Ex. H, T72:15 to T73:14, T95:10-20. Dr. Firpo was not sure if there were others who also were forced to give a presentation for falling below the 80 percent threshold. See id. at T99:20-25. Dr. Firpo testified that typically residents are given 2 to 3 weeks to present a conference. See id. at T97:23-25. He did not know what the topics were for the eventual presentations given by Dr. [name redacted] and Dr. [name redacted] and whether the Chief Resident had given either of them a problem as she had given to the plaintiff about topic selection. See id. at T99:10-14.

The issue of whether the morning conference attendance policy was routinely broken by similarly-situated residents to Plaintiff with far less drastic consequences than termination is directly at issue in this case. It is now very clear that discovery on enforcement of this policy as to plaintiff's colleagues for the remainder of the class year, rather than just up to the date of plaintiff's termination, is essential for the comparative analysis. Defendants should be made to produce responsive documents on the [name redacted] and [name redacted] incidents as well as records relating to any other resident through the date of graduation of plaintiff's PGY-4 classmates. Such documents should be produced on an expedited basis.

5

### D. Defendants Should Be Compelled to Produce the Summative Evaluations of Drs. [name redacted] and [name redacted]

After plaintiff was terminated, defendants prepared a "Summative Evaluation" evaluating her performance as a Resident. She was marked as unsatisfactory for patient care and for professionalism, effectively preventing her from transferring to another Residency program.

In the ESI discovery, documents relating to performance issues with two (2) similarly-situated Pathology Residents to plaintiff were buried amongst the 20,000 documents. It was discovered that Pathology Resident [name redacted] was accused of unprofessional behavior. See Ex. K. As Dr. Firpo also admitted, Dr. [name redacted] also was disciplined for failing to give a make-up conference because of bad attendance at morning conferences. Likewise, Pathology Resident [name redacted] was accused of unprofessional behavior, failure to properly perform during a rotation, and actions that, according to the Chief Resident, jeopardized patient care. See Ex. L.

Despite the various and sordid issues of these two (2) Residents, it is suspected that neither of them received unsatisfactory scores in any category on their Summative Evaluations, because they both have since graduated from the Program. However, defendants need to produce these Summative Evaluations to confirm such facts. As with all of plaintiff's follow-up requests, defendants are dragging their feet because they appreciate that such materials are ultimately damaging to their defense. The Court should compel defendants to produce these materials expeditiously.

Additionally, plaintiff has asked for any evaluation prepared by Attending Dr. Beasley for Dr. Chepovetsky at the time she was experiencing issues on her rotation. This also should be produced.

### E. ACGME Citations of the Pathology Residency Program

Throughout his deposition testimony, Dr. Firpo drew a repeated, inexplicable connection between his actions taken as to plaintiff and his role to address citations issued to the Pathology Residency Program by the ACGME. See e.g., Ex. H, T163:8-20, T228:23-T229:12; T230:25-T232:25, Firpo Dep. Dr. Firpo has placed the ACGME citations to the Pathology Program directly at issue through his repeated references to them as a basis for his actions with regard to Dr. Varughese. Accordingly, plaintiff has requested that a copy of such citations be produced. Once again, defendants have not indicated whether they will voluntarily produce such documents or not. The Court, again, should compel defendants to make an expedited document production.

Hon. James C. Francis, U.S.M.J.
November 14, 2013

### F. The Court Should Compel Defendants to Produce Missing Documentation

In defendants' document production, critical pieces of e-mail chains have been omitted and a key, critical attachment has also been omitted.

Defendants allegedly terminated plaintiff because of her communications about her request to change an elective. In a critical e-mail chain on the subject, one of the attendings' e-mail to the Program Director is omitted. See Ex. M. It is suspected that the attending indicates willingness to permit Dr. Varughese to change the elective.

With regard to the McCash incident, Dr. McCash forwarded a "Leena List" to Interim Department Chair Pessin-Minsely of the various issues he allegedly was having just with plaintiff. See Ex. N. This attachment has been requested but not yet produced.

Defendants were previously ordered to produce the list of residents created for purposes of providing coverage under the new attendance policy in July/August 2011. To date, this has not been produced. It should be produced immediately.

### G. The End-Date for Fact Discovery Should Be Extended By Forty-Five Days

I have already taken four (4) depositions in this case. There are an additional five (5) depositions scheduled to take place over the next two weeks. I have avoided delays defendants apparently hoped to create by defendants' late production of the initial ESI materials.

Unfortunately, as this letter reflects, there are numerous areas of follow-up discovery that need to take place. Defendants were not candid with the Court about the ESI production and have withheld vital comparator documents that damage their case. Defendants' stonewalling efforts have now extended to initiating motion practice to limit depositions. If the motion is denied, the depositions that are the subject of the motion will need to be rescheduled. Accordingly, there is more than sufficient good cause for a further extension of the fact discovery cut-off by forty-five days. Plaintiff requests that such extension be granted.

Mr. McEvoy will only consent to an extension of discovery to "finish" pending discovery. He will not consent to extend discovery if plaintiff seeks any further depositions, requests any further documents at depositions, etc. In light of the disclosures made thus far at depositions, it is unreasonable for Mr. McEvoy to place such conditions on consent to a discovery extension. Any request on his part for the placement of conditions should be

7

Hon. James C. Francis, U.S.M.J.
November 14, 2013

rejected.

    We thank the Court for its consideration of this matter.

                                              Respectfully submitted,

                                              Ronald J. Wronko

cc:    Rory J. McEvoy, Esq.