Ronald J. Wronko •O

**LAW OFFICES OF**
**RONALD J. WRONKO, LLC**
*134 COLUMBIA TURNPIKE*
*FLORHAM PARK, NJ 07932*
(973) 360-1001
FAX (973) 360-1881

315 Madison Avenue,
Suite 901
New York, New York
10165
(212) 886-9057
(212) 957-1912

Member of New Jersey Bar •
Member of New York Bar O

**Reply to New Jersey**

ron@ronwronkolaw.com
www.ronwronkolaw.com

November 25, 2013

**VIA ECF AND OVERNIGHT MAIL**

Hon. James C. Francis, U.S.M.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    **Leena Varughese, M.D. v. Mount Sinai Medical Center, et al.**
               **Civil Action No. 12 Civ. 8812 (CM)**

Dear Judge Francis:

      I represent Leena Varughese, M.D., in the above-referenced matter. Please accept this letter as a reply in further support of plaintiff's letter motion for a discovery conference and for a forty-five (45) day extension of the fact discovery end date. As is discussed herein, defendants have failed to provide any basis to deny the relief requested by plaintiff.

      A.    **Documents Relating to Morning Conference Attendance**

      By way of background, at the time of the July 11, 2013 Discovery Conference with Your Honor, defendants had not yet produced a copy of the Morning Conference Attendance Policy. This policy provided that if a resident fell below an 80 percent threshold of morning conference attendance, then the resident would have to give a make-up presentation. See Ex. A. This policy was implemented on July 27, 2011. Plaintiff was terminated less than two (2) months later on September 21, 2011.

      One of the reasons that plaintiff was allegedly terminated was that she failed to give a make-up conference after falling below the 80 percent attendance threshold. Plaintiff was initially scheduled to give a make-up conference but her chosen topic was rejected by Chief

Hon. James C. Francis, U.S.M.J.
November 25, 2013

Resident Adrienne Jordan only two (2) days before the conference. Nevertheless, plaintiff was expected to choose a new topic and prepare a new presentation on two (2) days notice. When she failed to do so, defendants used it as a basis for her termination.

At the time of the July 11, 2013 Discovery Conference with the Court, plaintiff was only aware of the fact that fellow residents had failed to attend morning conferences, not that any residents had been disciplined under the policy. Plaintiff initially sought all attendance records of residents in the residency program. However, Your Honor clarified that the records should be limited to attendance at morning conferences. The reason for this is that plaintiff was terminated not because of general attendance but for failing to meet the 80 percent attendance threshold and failing to give a make-up conference.

The Court's July 11, 2013 Order required defendants to produce "b. (i) all attendance records for mandatory morning conferences; (ii) all documents relating to the failure of any resident to meet the requirement of attending 80 % of the mandatory conferences; and (iii) all documents relating to any resident who canceled a presentation that was required as a consequence of failing to meet the 80 % requirement." See Ex. B. The Court's Order contains no time limitation on these requirements. This means that defendants were required to produce such records from implementation of the policy through the present.

Defendants have violated the Court's Order and now attempt to re-write the Court's Order to impose the time limitation in 2(c) of the Order on 2(b). The Court should enforce its Order as written.

Defendants provided morning conference attendance records only through plaintiff's date of termination, not through the present. These records supported plaintiff's recollection of wide-spread absences from morning conferences. However, the records did not reflect whether any residents had been disciplined for absences or at what time.

At the deposition of Director of Educational Activities, Adolfo Firpo, M.D., it was disclosed that two (2) of plaintiff's colleagues were the subject of discipline because of absences and failing to give make-up conferences. The two residents were Paul Azar, M.D., and Jacqueline Hechtman, M.D. Dr. Firpo was the same decision-maker for plaintiff's termination as well as for the decisions to give substantially lighter discipline to Dr. Azar and Dr. Hechtman. Dr. Adrienne Jordan and Elizabeth Morency were the same Chief Residents who supervised morning conference attendance for plaintiff and these two other residents and who approved topics for the conferences. Dr. Azar and Dr. Hechtman were both colleagues of plaintiff while plaintiff was in the residency program. There is no dispute that Dr. Azar and Dr. Hechtman were similarly-situated to plaintiff.

In defiance of the Court's July 11, 2013 Order, defendants' object to producing

2

Hon. James C. Francis, U.S.M.J.
November 25, 2013

records reflecting Dr. Azar and Dr. Hechtman's discipline under the policy, scheduling of their make-up conferences, and selection and approval of their topics is that it occurred after the plaintiff's date of termination, even though their poor attendance at morning conferences occurred while plaintiff was still a resident. Most recently, it was disclosed at last week's depositions that Dr. Azar was placed on final written warning.

The above-referenced documents should be immediately produced because: (a) these doctors are similarly-situated to plaintiff; (b) all of the decision-makers were identical for plaintiff as for these two (2) doctors; and (c) the chain of events of bad attendance for these two (2) residents began while plaintiff was still employed. The mere fact that the discipline for the poor attendance occurred shortly after plaintiff was terminated does not, in any way, render the comparative analysis irrelevant. Instead, the fact that all of the same parties were involved and the same policy was implicated render the documents intensely relevant to determine whether the policy was implemented in uniform fashion.

In further defiance of the Court's Order, defendants further object to producing attendance records for morning conferences beyond the date of plaintiff's termination. As noted above, The Court's July 11, 2013 Order contains no time limitation for the morning conference attendance records. Additionally, plaintiff was operating in the dark at the July 11, 2013 conference. Now that it is known that at least two of plaintiff's colleagues were disciplined under the policy and that the decision-makers were the same through the date of graduation for plaintiff's class year, defendants should be compelled to produce attendance for morning conference attendance for residents through the present as well as records reflecting any discipline under said policy.

Additionally, the Court should impose a deadline on defendants for the production of these documents. Even though defendants indicate that they will produce some documents, they are in no obvious hurry to do so. The reason for this is clear. They do not want any further witnesses produced for deposition to be confronted with them. The Court's assistance is needed in this regard.

### Dr. Yao's Academic Advisement

Defendants now concede that they will produce "Yao's Academic Advisement." However, for a true comparison to be conducted between the issuance of and implementation of Academic Advisement between Dr. Yao and plaintiff, defendants must be compelled to produce more than just the Notice of Academic Advisement for Dr. Yao.

At issue in this case is not just the issuance of Academic Advisement, but the issues of: (a) the process by which plaintiff was placed on Academic Advisement; and (b) how the Advisement was administered to plaintiff. Prior to plaintiff being placed on Academic

3

Advisement, the Pathology Department conducted an investigation of the December 8, 2010 incident. A referral was made to the Graduate Medical Education ("GME") office, which then conducted its own investigation. Plaintiff was required to write a self-reflection. When her first self-reflection was rejected by the Pathology Department leadership, she was made to write a second self-reflection. After Academic Advisement, defendants placed plaintiff on final written warning.

The documents reflecting any investigation into the Yao incident prior to his placement on Academic Advisement should be produced, including any documents reflecting the complaint of the support staff member, Ida White. Dr. Firpo disclosed that Dr. Yao was not required to write a self-reflection but was required to write a letter of apology to support staff member Ida White after Ms. White made a complaint. Dr. Firpo testified that the letter of apology served the same purpose as the self-reflection. Dr. Yao needed three (3) drafts to receive approval from the Department Leadership. All three (3) drafts should be produced as well as documents reflecting the rationale for why Dr. Yao was released from Academic Advisement. Dr. Firpo testified that the same decision-makers were involved (i.e., Dr. Lento and Dr. Cordon-Cardo) who had made decisions on plaintiff's Academic Advisement.

Plaintiff sought this information from the very beginning of discovery. In plaintiff's interrogatories, plaintiff sought identification of any other resident placed on Academic Advisement through December 2011. Plaintiff is stuck in a game of having to precisely hit the bulls-eye to obtain full and fair discovery. Plaintiff's interrogatory was allegedly off by *one month*. This still does not explain why witnesses deposed before Dr. Firpo failed to disclose the Yao Academic Advisement.

The Court should ensure that any ruling encompasses the full reasonable scope of documents. Otherwise, defendants will likely produce just the Notice of Academic Advisement, which will provide an incomplete picture of the full facts and circumstances. In light of the fact that defendants do not want deposition discovery to continue, they cannot be heard to complain about producing full documentation so that supplemental depositions on the topic can be avoided.

Additionally, the Court should apply a deadline for production of such documents.

**E-Discovery**

Defendants purport to provide a history of e-discovery in this case but, instead, resort to outright distortion and fabrication. Defendants initially suggest that plaintiff refused to compromise on the number of custodians or search terms. In reality, defendants ignored the request for e-discovery until the July 11, 2013 discovery conference and, only then, raised their issues at the table with Your Honor. Plaintiff promptly addressed their concerns.

Hon. James C. Francis, U.S.M.J.
November 25, 2013

Defendants never indicated it would pose an undue burden to produce the 25,000 documents. Instead, Mr. Larkin simply indicated that the documents would be produced on a hard drive. In opposition to a discovery extension, Mr. McEvoy wrote to the Court that the documents would be produced "in a week or so" and never indicated that a "confidentiality" review needed to be undertaken. Defendants now use their silence as a sword to suggest that plaintiff and the Court should have been aware of their review.

Only after the Court then agreed to grant a short discovery extension based on defendants argument that they would be promptly producing the e-discovery, then defendants exposed that they needed to conduct a "confidentiality" review that necessitated a delay in the production. Defendants then dumped the 25,000 documents on plaintiff two days before the first defense deposition because of this review and suggested that their witnesses' depositions be delayed in favor of a two week extension of discovery. Incredibly, defendants now accuse plaintiff of having done something to prompt these less-than-candid behaviors by the defense.

Finally, defendants resort to an outright fabrication. Defendants never threatened plaintiff with a motion to bear the costs of review of the 5,000 documents because the 5,000 documents *had already been reviewed*. Mr. Larkin advised me that the 5,000 documents had been culled out pursuant to their confidentiality review team's protocols to ensure that confidential material, such as phone bills, HIPAA material, and the like, did not get produced. Mr. Larkin indicated that he would file a motion, not to shift the costs of a review to plaintiff, but to bar disclosure of the 5,000 documents as non-responsive and confidential. Mr. Larkin **never** advised that the 5,000 documents needed to be reviewed again or that he would seek to impose costs on plaintiff for the review. Mr. McEvoy's statements to the contrary, including that plaintiff somehow "backtracked" are outright fabrications.

In an effort to avoid motion practice on the issue and because I did not want or need 5,000 pages of non-responsive materials, I agreed with Mr. Larkin that I would provide search terms that I had used on my own and found effective in reviewing the material on the hard drive. The purpose of the new terms was to ensure that the defense's confidentiality review protocols were not overly inclusive. The report back was that the terms I supplied produced about 200 documents.

I have still not received these 200 documents or heard back from defendants as to what they contain. The 200 documents should be reviewed, which should not be a costly or time-consuming task. Defendants should report back and/or produce those documents. Once such review is completed, plaintiff will have a better idea whether the "confidentiality" review was over-inclusive or not. The Court should set a deadline because defendants have been sitting on the 200 documents for over a month with no report back.

Hon. James C. Francis, U.S.M.J.
November 25, 2013

### Summative Evaluations and ACGME Citations

Defendants concede that these documents will be produced. Plaintiff simply asks the Court to schedule a reasonable deadline for such production.

### The Alleged Missing Documents

It is disturbing for defendants to report that a critical piece of an e-mail chain relating to plaintiff's request to change her elective rotation (one of the reasons for her termination) suddenly cannot be found. The initiating e-mail of the chain likely reflects that the attending physician had no problem with plaintiff's request. Defendants have produced thousands of documents from their e-mail servers. Such production reflects that e-mails from plaintiff's employment have been maintained on defendants' servers. The only likely reason for such an e-mail to go "missing" is that it was destroyed. Defendants' submission raises a serious, potential spoliation issue.

Likewise, Dr. McCash forwarded an e-mail attachment, entitled "Leena List" to Interim Department Chair Pessin-Minsely listing all of the alleged problems he had with Dr. Varughese. There is a high likelihood that this "list" contained very frank statements by Dr. McCash about plaintiff. There is no reason this should also not remain on defendants' servers unless it was scrubbed. Again, this raises a potential issue of spoliation.

Defendants argue that the Court cannot compel them to produce the documents that they cannot "locate." The Court can certainly set a deadline for defendants to have their IT department search their servers and determine what happened to these electronic documents. Their IT department should be able to determine if such documents were scrubbed from the servers. If such items were deleted, plaintiff would be within her right to amend her pleading to potentially bring a spoliation claim. Accordingly, we request that the Court set such deadline.

### Discovery Extension of 45 Days

Defendants complain that this case is nearly one (1) year old. Defendants neglect to advise the court that: (1) defendants obtained a thirty (30) day extension to file a motion to dismiss; (2) defendants unsuccessfully engaged in motion practice in lieu of filing an Answer; (3) the parties engaged in mediation and obtained Court approval to stay discovery while doing so; (4) plaintiff's deposition was stretched over five (5) days while Mr. McEvoy took the deposition at a plodding pace under the argument that he now abandons that this is a complex case; (6) I filed a motion to be relieved as counsel, which was ultimately denied, but caused a delay in commencement of defense depositions. Plaintiff has already taken eight (8)

6

Hon. James C. Francis, U.S.M.J.
November 25, 2013

depositions in only approximately one (1) month. For defendants to suggest that plaintiff has had the benefit of a full discovery period is wholly inaccurate. Likewise, defendants' argument that plaintiff has somehow "abused" the discovery process because she is taking the depositions of all of the supposed decision-makers identified by defendants plus a few additional fact witnesses is a flagrant distortion.

Defendants next suggest that any discovery extension should come with conditions. Defendants strongly desire such conditions because information that they hoped would never see the light of day was exposed by Dr. Firpo at deposition. Dr. Firpo let slip that Dr. Yao was placed on Academic Advisement and that Drs. Hechtman and Azar were subject of discipline under the morning conference attendance policy. Defendants now grumble incessantly about plaintiff's requests for documents relating to the treatment of these similarly-situated co-workers of plaintiff, even though they were already explicitly ordered to produce the Hechtman and Azar documents. At Mr. Johnson's deposition, it was further disclosed that another resident, Sarah Blowe, M.D., was placed on final written warning for issues of professionalism. Plaintiff has requested that a copy of that final written warning be produced. This is the type of follow-up request from which defendants unjustly ask to be insulated.

Defendants want to cut off legitimate follow-up discovery arising from deposition testimony and to bar any follow-up depositions. Defendants complain about having to respond to request for admissions, where such admissions were based on a supplemental document production provided by defendants attempting to portray plaintiff in a negative light prior to the December 8, 2010 incident. Incidentally, defendants' response violates the Federal Rules as most answers are neither admissions nor denials. This is yet another issue that will need to be addressed after a standard meet and confer. Defendants are aware that plaintiff does not wish to take 22 depositions and has whittled the number down but nevertheless cling to that preliminary number. Ultimately, if plaintiff decides that she needs to depose Drs. Yao or Blowe, which is not her present intent, it is not something that the Court should permit or bar at this juncture.

Defendants now complain that they produced 19,000 documents on a hard-drive in e-discovery and use that to suggest that plaintiff has obtained excessive discovery. The reality is that plaintiff had to resort to e-discovery to have any chance of obtaining documents reflecting the performance issues of similarly-situated residents that defense witnesses now label as "minor." As defendants have already repeatedly shown, if plaintiff does not hit the bulls-eye in making a discovery request, then defendants deny they have any responsive materials. Plaintiff is left with the unenviable task of either getting lucky and hitting a bulls-eye, hoping that a defense witness slips up and is actually helpful, or requesting the contents of e-mail servers on a hard drive. Plaintiff agrees that discovery should be more direct than this but that would require the willingness of both sides to be candid, which defendants have

7

Hon. James C. Francis, U.S.M.J.
November 25, 2013

proven themselves not to be.

    Plaintiff, as an unemployed individual with limited financial means facing an adversary with unlimited resources, has no desire to take more depositions than is absolutely necessary in this case. Defendants have barred her from moving on with her career as a Pathologist. Plaintiff wants to move this case forward but not at the expense of having complete discovery on the above-referenced matters. We request that the Court grant plaintiff's request for a discovery extension without the conditions argued by the defense.

    We thank the Court for its consideration of this matter.

                                             Respectfully submitted,

                                             Ronald J. Wronko

cc:    Rory J. McEvoy, Esq. (via overnight mail and ecf)