Ronald J. Wronko •○

**LAW OFFICES OF**
**RONALD J. WRONKO, LLC**
*134 COLUMBIA TURNPIKE*
*FLORHAM PARK, NJ 07932*
(973) 360-1001
FAX (973) 360-1881

315 Madison Avenue,
Suite 901
New York, New York
10165
(212) 886-9057
(212) 957-1912

Member of New Jersey Bar •
Member of New York Bar ○

**Reply to New Jersey**

ron@ronwronkolaw.com
www.ronwronkolaw.com

November 25, 2013

**VIA ECF AND OVERNIGHT MAIL**

Hon. James C. Francis, U.S.M.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    **Leena Varughese, M.D. v. Mount Sinai Medical Center, et al.**
              **Civil Action No. 12 Civ. 8812 (CM)**

Dear Judge Francis:

    I represent Leena Varughese, M.D., in the above-referenced matter. Please accept this letter as a supplement to the reply in further support of plaintiff's letter motion for a discovery conference and for a forty-five (45) day extension of the fact discovery end date.

    I received today approximately 275 pages of ESI documents. These ESI documents were part of the 5,000 documents that have been withheld on the grounds that they were non-responsive pursuant to an extensive "confidentiality" review. I also received 35 pages of e-mails that were withheld based on privilege and that have now been produced largely in almost fully redacted form. As discussed below, the Court should Order the production of all 5,000 ESI documents on hard drive that defendants have withheld based on "confidentiality."

    The original hard-drive containing 19,000 documents was filled with largely non-responsive material. When I ran my own searches of the text files, the various search terms I used never achieved anywhere near 100 percent responsiveness. My best searches would generate a few very pertinent e-mails in and amongst volumes of non-responsive materials.

Hon. James C. Francis, U.S.M.J.
November 25, 2013

Defendants would now have me believe that the additional search terms that I gave them to run against the 5,000 "confidential" materials generated 100 percent responsive results, including some of the most damaging materials to defendants' case. Virtually every e-mail produced by defendants in the 275 pages is not only responsive but, in some cases, more probative than anything produced by the defense to date.

For instance, in today's document production, an e-mail bates stamped as **_26,142_** contains a blunt discussion amongst the department leadership about plaintiff's complaint of discrimination. See Ex. A. Former Program Director Dr. Patrick Lento labels Dr. Varughese's e-mail complaining of discrimination as "ugly." He questions her motivations by stating that she is using the claim of gender discrimination "as a way of getting around the disciplinary issues." He calls her complaint that fellow residents were drinking on the job as "an attempt to distract us from her own issues." He then questions why he is the subject of a claim of discrimination. He concludes by alleging that plaintiff wanted "to escalate things from a gender bias standpoint" to "strong-arm" her way through the Academic Advisement. Dr. Cordon-Cardo then advises caution on how to deal with plaintiff and suggests a meeting.

"Discrimination" was one of plaintiff's very first search terms on her ESI request. It is inexplicable why Document No. 26,142 was not part of the original 19,000 documents produced on hard-drive and why it has taken until November 25, 2013 and a very significant battle before the Court for it to be produced.

Neither Dr. Lento nor Dr. Cordon-Cardo testified to a meeting discussing the discrimination and whistleblowing issues when they were deposed. In fact, at his deposition, Dr. Lento testified that he was advised in April or May 2011 that plaintiff had made an allegation of gender discrimination. See Ex. B, T197:4-14. He denied viewing plaintiff's complaint of discrimination as being inappropriate or unprofessional. See id. at T211:23 to T212:8. He did not recall being made aware that plaintiff had reiterated her complaint of discrimination to Dr. Cordon-Cardo. See id. at T212:9-14.

The surprises in today's document production do not stop there. Defendants withheld an e-mail reflecting that Dr. Firpo had recommended plaintiff's termination by August 15, 2011, over a month before she was actually terminated. Defendants inappropriately redacted nearly this entire e-mail chain. See Ex. C. Dr. Firpo apparently recommended this action after Dr. Lento advised him, in another withheld e-mail, that there was no precedent for such action. See Ex. D.

The list of withheld e-mails and their relevancy goes on and on. Mr. Larkin advised me that defendants were not trying to hide relevant materials but simply did not want to produce completely non-responsive volumes like phone bills. Apparently, the Edwards Wildman "confidentiality" reviewers did not just cull out non-responsive documents but

2

Hon. James C. Francis, U.S.M.J.
November 25, 2013

culled out some of the most pivotal documents in the case.

    Plaintiff made repeated claims of discrimination. It stands to reason that there would be more e-mails amongst the department leadership discussing the issue. Likewise, even though it was routine for "dementia rounds" to take place at the Hospital where residents would drink alcohol, the 19,000 documents produced and supplemental documents today contain not even a single e-mail on dementia rounds. Plaintiff has produced numerous e-mails on the topic of dementia rounds that she retained. Those e-mails do not appear anywhere in defendants' ESI.

    In light of the fact that there is a high probability of scrubbing of relevant materials, plaintiff requests that the full 5,000 documents withheld based on supposed "confidentiality" be produced on hard-drive.

    We thank the Court for its consideration of this matter.

Respectfully submitted,

Ronald J. Wronko

cc:    Rory J. McEvoy, Esq. (via overnight mail and ecf)