# EXHIBIT A

Ronald J. Wronko, Esq. (RW 1859)
RONALD J. WRONKO, LLC
134 Columbia Turnpike
Florham Park, New Jersey 07932
(973) 360-1001
Attorneys for Plaintiff
Leena Varughese, M.D.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| LEENA VARUGHESE, M.D., | Civil Action No.: 12 CIV 8812 |
|---|---|
| Plaintiff, | CIVIL ACTION |
| v. | FIRST REQUEST FOR ADMISSIONS |
| MOUNT SINAI MEDICAL CENTER, PATRICK LENTO, M.D., CARLOS CORDON-CARDO, M.D., ADOLFO FIRPO, M.D., IRA J. BLEIWESS, M.D., and ABC Corp. 1-10, and JOHN DOES 1-10, | |
| Defendants. | |

TO:   Rory J. McEvoy, Esq.
      Edwards Wildman Palmer LLP
      750 Lexington Avenue
      New York, New York 10022

COUNSEL:

PLEASE TAKE NOTICE that plaintiff Leena Varughese, M.D. hereby demands that the defendants provide answers to the following First Requests for Admissions in accordance

Federal Rule of Civil Procedure 36. These Requests shall be deemed continuing so as to require supplemental answers if you obtain further information.

RONALD J. WRONKO, LLC<br>
Attorneys for plaintiff Leena Varughese, M.D.<br>
BY: _____<br>
Ronald J. Wronko

Dated: October 10, 2013

## REQUESTS FOR ADMISSIONS

1. The document produced at D2543-2544, annexed as Exhibit A, is a true and correct copy of an e-mail exchange between Samuel McCash, M.D., and plaintiff.

    ___ Admit or ___ Deny

2. Adrienne Jordan, M.D. was moonlighting on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

    ___ Admit or ___ Deny

3. Adrienne Jordan, M.D., left before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

    ___ Admit or ___ Deny

4. Adrienne Jordan, M.D. received no discipline for leaving before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

    ___ Admit or ___ Deny

5. There were no e-mails sent to Adrienne Jordan, M.D. from Samuel McCash, M.D., advising Adrienne Jordan, M.D. that she should not have left before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

    ___ Admit or ___ Deny

6. Paul Azar, M.D., was moonlighting on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

    ___ Admit or ___ Deny

7.  Paul Azar, M.D., left before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

   ___ Admit or ___ Deny

8.  Paul Azar, M.D., received no discipline for leaving before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

   ___ Admit or ___ Deny

9.  There were no e-mails sent to Paul Azar, M.D., from Samuel McCash, M.D., advising Adrienne Jordan, M.D. that she should not have left before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

   ___ Admit or ___ Deny

10. The document produced at D2548-2549, annexed as Exhibit B, is a true and correct copy of an e-mail sent by Kruti Maniar, M.D., to Adrienne Jordan, M.D.

   ___ Admit or ___ Deny

11. Jessica French, M.D. left early on August 13, 2010, before completing her grossing responsibilities.

   ___ Admit or ___ Deny

12. Jessica French, M.D. failed to communicate with her partner on August 13, 2010, that he needed to stay and help the moonlighter complete any specimens that the Physician Assistant failed to complete.

   ___ Admit or ___ Deny

13. Jessica French, M.D. was not disciplined or placed on Academic Advisement because of the issues that Adrienne Jordan, M.D., raised about her in her August 13, 2010 e-mail.

   ___ Admit or ___ Deny

3

14. Julie Chepovetsky, M.D., left early on August 13, 2010 and had not completed her grossing responsibilities.

___ Admit or ___ Deny

15. Julie Chepovetsky, M.D., was not disciplined or placed on Academic Advisement because of the issues that Adrienne Jordan, M.D., raised about her in her August 13, 2010 e-mail.

___ Admit or ___ Deny

16. The policy for the grossing team in August 2010, as stated by Kruti P. Maniar, M.D., in her e-mail dated August 13, 2010, was that the whole team would be required to stay "until the work is finished."

___ Admit or ___ Deny

17. The document produced at D2547, annexed hereto as Exhibit C, is a true and correct copy of an e-mail sent by Adrienne Jordan, dated August 13, 2010, to Kruti Maniar, M.D., and Samuel McCash, M.D.

___ Admit or ___ Deny

18. Adrienne Jordan, M.D. wrote, in part, about plaintiff, "How does she function!!!!!!! I just wonder how she gets out of bed in the morning and not hurt herself she is so lazy. Ok rant over. Go back to your normal lives."

___ Admit or ___ Deny

19. Adrienne Jordan, M.D., was not advised by anyone that her writing of the following was unprofessional or inappropriate: "How does she function!!!!!!! I just wonder how she gets out of bed in the morning and not hurt herself she is so lazy. Ok rant over. Go back to your normal lives."

___ Admit or ___ Deny

20. Adrienne Jordan, M.D., wrote, in part, in the e-mail dated August 13, 2010, annexed as Exhibit B, "[I] also like sleep and getting home in time to puke my guts out so I can go to bed and get up tomorrow and do it all over again."

___ Admit or ___ Deny

4

21. Adrienne Jordan, M.D., was not advised by anyone that her writing of the following was unprofessional or inappropriate: "[I] also like sleep and getting home in time to puke my guts out so I can go to bed and get up tomorrow and do it all over again."

___ Admit or ___ Deny

22. Adrienne Jordan, M.D., had an issue with Physician Assistant Roma Rosario because Roma Rosario was not "dictating as she goes."

___ Admit or ___ Deny

23. The document produced at D2567, annexed hereto as Exhibit D, is a true and correct copy of Jonathan Truong's e-mail dated December 9, 2010 e-mail to Eileen Hauptman, Freda Burstyn, and Melissa Pessin-Minsley.

___ Admit or ___ Deny

24. Dr. Truong expressed his belief that, "Knowing Sam[uel McCash] and Leena [Varughese] for two months now, this to me is a personality conflict."

___ Admit or ___ Deny

25. The document produced at D2573-2574, annexed hereto as Exhibit E, is a true and correct copy of Samuel McCash's e-mail to seven (7) members of the Hospital staff dated December 9, 2010 at 1:09:57 PM and his forwarding of that e-mail to Adrienne Jordan, M.D. on December 9, 2010 at 2:12 P.M.

___ Admit or ___ Deny

26. Samuel McCash, M.D., was not given any written instruction by Melissa Pessin-Minsely, M.D., in writing to cease communicating with various members of the staff, including Drs. Jordan, Truong, Jaffer, Hauptman, Schiller, and Burstyn, about his incident with plaintiff.

___ Admit or ___ Deny

5

27. Samuel McCash, M.D., was not threatened with termination by Melissa Pessin-Minsely, M.D., if he did not cease communicating with various members of the staff, including Drs. Jordan, Truong, Jaffer, Hauptman, Schiller, and Burstyn, about his incident with plaintiff.

___ Admit or ___ Deny

28. The document produced at D2575, annexed hereto as Exhibit F, is a true and correct copy of Adrienne Jordan's e-mail dated December 9, 2010 to Samuel McCash, Patrick Lento, Melissa Pessin-Minsely, Alan Schiller, Ira Bleiweiss, Shabnam Jaffer, Freda Burstyn, Eileen Hauptman, Jonathan Truong.

___ Admit or ___ Deny

29. Dr. Alan Schiller instructed Adrienne Jordan, M.D. to send her e-mail dated December 9, 2010, annexed hereto as Exhibit F.

___ Admit or ___ Deny

30. Melissa Pessin-Minsely, M.D., did not instruct Dr. Alan Schiller or Dr. Adrienne Jordan to cease dissemination of information about the subject matter of the December 9, 2010, under threat of termination.

___ Admit or ___ Deny

31. On December 9, 2010, Adrienne Jordan, M.D., was a PGY3 Resident, while Leena Varughese, M.D., was a PGY4 Resident.

___ Admit or ___ Deny

32. The document produced at D2578, annexed hereto as Exhibit G, is a true and correct copy of Adrienne Jordan's e-mail dated December 10, 2010, to Melissa Pessin-Minsley, Samuel McCash, and Patrick Lento.

___ Admit or ___ Deny

33. PGY3 Resident Adrienne Jordan told plaintiff "that there was an investigation going on into what happened and she would be able to tell her side of the story."

___ Admit or ___ Deny

6

34. PGY3 Resident Adrienne Jordan was told that there was an investigation before any member of the Hospital administration advised plaintiff that there was an investigation.

___ Admit or ___ Deny

35. The document produced at D2579-2580, annexed hereto as Exhibit H, is a true and correct copy of Melissa Pessin-Minsely's response to Adrienne Jordan's e-mail annexed at Exhibit G.

___ Admit or ___ Deny

36. Dr. Pessin-Minsely thanked PGY3 Resident Adrienne Jordan and complimented her in response to her e-mail in which she reported that she was the person who advised plaintiff that there was an investigation.

___ Admit or ___ Deny

37. The document produced at D2588-2590, annexed hereto as Exhibit I, is a true and correct copy of Samuel McCash's e-mail dated March 2, 2011 to Caryn Tiger-Paillex.

___ Admit or ___ Deny

38. Samuel McCash, M.D., admits that he "would actually reconsider how [he] dealt with the two situations [with plaintiff]."

___ Admit or ___ Deny

39. Samuel McCash, M.D., admits that "maybe [he] should have tried a more diplomatic method."

___ Admit or ___ Deny

40. Samuel McCash, M.D., was not placed on Academic Advisement because of his two situations with plaintiff.

___ Admit or ___ Deny

41.     Samuel McCash, M.D., was not referred to the Physician Wellness Committee because of how he dealt with the two situations with plaintiff.

___ Admit   or   ___ Deny

42.     Samuel McCash, M.D., was not disciplined because of the way he dealt with the two situations with plaintiff.

___ Admit   or   ___ Deny

43.     The document produced at D2595-D2597, annexed hereto as Exhibit J, reflects that Dr. McCash forwarded in two separate e-mails to Arthur Figur and Paul Johnson of the Physician Wellness Committee and to Caryn Tiger-Paillex an e-mail chain between plaintiff and Michael P. Mikulasovich, D.O.

___ Admit   or   ___ Deny

44.     Plaintiff was not disciplined as a result of the subject-matter contained in the e-mail of Michael Mikulasovich, M.D., dated April 28, 2010 at 2:58 p.m.

___ Admit   or   ___ Deny

45.     The document produced at D2603-2604, annexed hereto as Exhibit K, is a true and correct copy of an e-mail from Yvelisse Suarez, M.D., dated May 17, 2010, followed by a true and correct e-mail by Kruti P. Maniar dated May 17, 2010, which were both forwarded by Samuel McCash, M.D. on January 13, 20111 to Arthur Figur and Paul Johnson of the Physician Wellness Committee and on March 30, 2011 to Caryn Tiger-Paillex.

___ Admit   or   ___ Deny

46.     Plaintiff's situation with the missing container that was the subject of the e-mail exchange on Exhibit K was fully resolved.

___ Admit   or   ___ Deny

47.     There were other residents who had issues with taking responsibility, other than plaintiff, when cases have to be tracked down.

___ Admit   or   ___ Deny

8

48. The residents, other than plaintiff, to whom Dr. Suarez and Dr. Maniar referred in their e-mails dated May 17, 2010, were not the subject of an Academic Advisement, referral to the Physician Wellness Committee, or any form of discipline.

___ Admit or ___ Deny

49. The document produced at D2664-2665, annexed hereto as Exhibit L, is a true and correct copy of an e-mail sent from Adrienne Jordan, M.D., dated August 12, 2011, an e-mail from Vesna Najfeld dated August 12, 2011, and an e-mail from Adrienne Jordan dated August 12, 2011.

___ Admit or ___ Deny

50. Resident Sarah, referred to in D2664-2665, was not required to provide a doctor's note for her absence on August 12, 2011.

___ Admit or ___ Deny

51. Resident Sarah, referred to in D2664-2665, was absent on more than one occasion in the month of August 2011 and was not required to provide doctor's notes for her absences.

___ Admit or ___ Deny

52. Resident Sarah left a "significant amount of cases" to be signed out by other Residents because of her absences in August 2011.

___ Admit or ___ Deny

53. Resident Sarah was not placed on Academic Advisement, referred to the Physician Wellness Committee, or disciplined either because of her absences or because she left a "significant number of cases" for other Residents to sign out.

___ Admit or ___ Deny

54. During the month of August 2011, Paul Azar attended only three (3) of the fifteen (15) required 8 a.m. lectures.

___ Admit or ___ Deny

9

55.	During the month of August 2011, Taisha Roman attended only three (3) of the fifteen (15) required 8 a.m. lectures in August 2011.

___ Admit  or  ___ Deny

56.	Taisha Roman was not required to give a presentation for attending only three (3) of the fifteen (15) required 8 a.m. lectures in August 2011.

___ Admit  or  ___ Deny

57.	During the month of August 2011, Alicia Martinez attended only seven (7) of the fifteen (15) required 8 a.m. lectures.

___ Admit  or  ___ Deny

58.	Alicia Martinez was not required to give a presentation for attending only seven (7) of the fifteen (15) required 8 a.m. lectures in August 2011.

___ Admit  or  ___ Deny

59.	As reflected on D2517-2518, on August 29, 2011, plaintiff was given twelve (12) fewer days to prepare a lecture on the topic of her choice per the new conference attendance policy than Paul Azar was given based on the same violation.

___ Admit  or  ___ Deny

60.	No resident other than plaintiff was asked to produce a doctor's note for an inability to provide coverage under the new attendance policy from July 6, 2011 through December 6, 2011.

___ Admit  or  ___ Deny

61.	The document produced at D2540, which is marked as Exhibit M, is a true and correct copy of the Policy for Absence/Service Coverage.

___ Admit  or  ___ Deny

10

62. The Policy for Absence/Service Coverage does not contain any requirement that a sick or injured resident must provide a doctor's note to substantiate illness or injury to avoid coming into work or for providing coverage.

___ Admit  or  ___ Deny

63. The document produced at P518, annexed hereto as Exhibit N, is a true and correct copy of an e-mail dated December 29, 2010 from Kruti Maniar sent to all pathology residents.

___ Admit  or  ___ Deny

64. There were multiple instances in 2010 where specimens for flow cytometry were misplaced in the frozen and gross room fridges by residents, as reported by Kruti Maniar in her e-mail marked as P518.

___ Admit  or  ___ Deny

65. The document produced at P876, annexed hereto as Exhibit O, contains a true and correct copy of an e-mail from Michael Mikulasovich to all pathology dated September 8, 2009 at 9:01 p.m., residents entitled "Dementia rounds?"

___ Admit  or  ___ Deny

66. The document produced at P876, annexed hereto as Exhibit O, also contains a true and correct copy of an e-mail from Samuel McCash to Michael Mikulasovich dated September 9, 2009 at 8:10 p.m. in response to Dr. Mikulasovich's e-mail dated September 8, 2009.

___ Admit  or  ___ Deny

67. In his e-mail on P876, Dr. McCash stated that he would take a short break from grossing to attend Dementia rounds.

___ Admit  or  ___ Deny

68. No resident was disciplined because of the consumption of alcohol on Hospital grounds at "Dementia Rounds."

___ Admit  or  ___ Deny

69.     Dr. McCash and Dr. Jordan were not disciplined for consuming alcohol on Hospital grounds.

___ Admit   or   ___ Deny

70.     Excluding plaintiff, no resident who requested a leave of absence under the Family Medical Leave Act was prohibited from coming to work prior to an FMLA application being submitted.

___ Admit   or   ___ Deny