# EXHIBIT B

EDWARDS WILDMAN PALMER LLP
Rory J. McEvoy
Julie L. Sauer
Attorneys for Defendants
750 Lexington Avenue
New York, New York 10022
212.308.4411
rmcevoy@edwardswildman.com
jsauer@edwardswildman.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEENA VARUGHESE, M.D.,

               Plaintiff,

       v.

MOUNT SINAI MEDICAL CENTER, PATRICK
LENTO, M.D., CARLOS CORDON-CARDO,
M.D., ADOLFO FIRPO, M.D., IRA J. BLEIWEISS,
M.D., and ABC Corp. 1-10, and JOHN DOES 1-10,

              Defendants.

Civil Action No.: 12 Civ 8812 (CM) (JCF)

**DEFENDANTS' RESPONSE
TO PLAINTIFF'S FIRST
REQUEST FOR ADMISSIONS**

---

      Defendants The Mount Sinai Hospital ("Mount Sinai" or the "Hospital"), Patrick Lento,

M.D., Carlos Cordon-Cardo, M.D., Adolfo Firpo, M.D., and Ira J. Bleiweiss, M.D. (collectively,

the "Defendants") by their attorneys, Edwards Wildman Palmer LLP, hereby respond to

Plaintiff's Request for Admissions pursuant to Rules 26 and 36 of the Federal Rules of Civil

Procedure and Local Civil Rules 26.2 and 26.3 of this Court.

## GENERAL OBJECTIONS

      A.      These General Objections are incorporated by reference into the response to each

Request, to the extent applicable, whether or not stated in any individual response.

      B.      Defendants object to the First Request For Admissions and each and every

individual Request therein to the extent that they purport to seek information not related to the

facts or issues in this case or are not reasonably calculated to lead to the discovery of admissible evidence.

 C. Defendants object to the First Request For Admissions and each and every individual Request therein to the extent that they purport to seek confidential information to which the Plaintiff has no arguable right or need.

 D. Defendants object to the First Request For Admissions and each and every individual Request therein to the extent that they purport to seek information protected from disclosure by the attorney-client privilege, attorney work product or other applicable privileges. The inadvertent production of any information or documents that are protected from disclosure shall not constitute a waiver of any applicable privilege, and Defendants reserve their right to withdraw or recall any information inadvertently produced.

 E. Defendants object to the First Request For Admissions and each and every individual Request therein to the extent that they are overly broad, duplicative, unreasonably cumulative, vague, ambiguous, harassing, not properly limited in time and/or scope, and to the extent that they impose an unjust burden upon Defendants in that responding to such Requests would require an excessive expenditure of time and money.

 F. Defendants object to the First Request For Admissions and each and every individual Request therein to the extent that they purport to seek information that is not in the possession, custody or control of Defendants.

 G. Defendants object to the First Request For Admissions and each and every individual Request therein to the extent that they purport to seek information and/or documents which are equally or more readily available to the Plaintiff than Defendants.

H.     In responding to any of these Requests, Defendants do not waive or intend to waive any of these General Objections in response to any specific Request propounded, but rather preserves and intends to preserve:

    (i)    all objections as to competency, relevance, materiality and admissibility of any information provided;

    (ii)    all objections as to vagueness, ambiguity or other infirmity in the First Request For Admissions;

    (iii)    all objections, on any ground, to the use of any identified information or documents in any other proceeding; and

    (iv)    all objections to any further discovery requests.

I.     Any specific objection to these Requests made by Defendants in no way limits or modifies the General Objections stated herein.

## SPECIFIC RESPONSES TO REQUEST FOR ADMISSIONS

### Request No. 1

The document produced at D2543-2544, annexed as Exhibit A, is a true and correct copy of an e-mail exchange between Samuel McCash, M.D., and plaintiff.

### Response to Request No. 1

Defendants admit this Request.

### Request No. 2

Adrienne Jordan, M.D. was moonlighting on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

### Response to Request No. 2

Defendants neither admit nor deny this Request because it is outside the scope of discovery because the Court ruled that Defendants "need not produce . . . documents relating to the utilization of moonlighters." See Court Order, dated July 11, 2013.

### Request No. 3

Adrienne Jordan, M.D., left before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

### Response to Request No. 3

Defendants deny knowledge or information sufficient to admit or deny this Request because it is based on an allegation made by Plaintiff. To the extent that this Request seeks the admission or denial of the statement, Defendants deny the statement.

### Request No. 4

Adrienne Jordan, M.D. received no discipline for leaving before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

### Response to Request No. 4

Defendants object to the form of this Request because it assumes that Dr. Adrienne Jordan left before 8 p.m. and, accordingly, deny the Request.

**Request No. 5**

There were no e-mails sent to Adrienne Jordan, M.D. from Samuel McCash, M.D., advising Adrienne Jordan, M.D. that she should not have left before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

**Response to Request No. 5**

Defendants object to the form of this Request because it assumes that Dr. Adrienne Jordan left before 8 p.m. and, accordingly, deny the Request.

**Request No. 6**

Paul Azar, M.D., was moonlighting on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544

**Response to Request No. 6**

Defendants neither admit nor deny this Request because it is outside the scope of discovery because the Court ruled that Defendants "need not produce . . . documents relating to the utilization of moonlighters." See Court Order, dated July 11, 2013.

**Request No. 7**

Paul Azar, M.D., left before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

**Response to Request No. 7**

Defendants deny knowledge or information sufficient to admit or deny this Request because it is based on an allegation made by Plaintiff. To the extent that this Request seeks the admission or denial of the statement, Defendants deny the statement.

**Request No. 8**

Paul Azar, M.D., received no discipline for leaving before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

**Response to Request No. 8**

Defendants object to the form of this Request as it assumes that Dr. Paul Azar left before 8 p.m. and, accordingly, deny the Request.

**Request No. 9**

There were no e-mails sent to Paul Azar, M.D., from Samuel McCash, M.D., advising [Paul Azar], M.D. that []he should not have left before 8 p.m. on the block that was the subject of the e-mail exchange between Samuel McCash, M.D., and plaintiff at D2543-2544.

**Response to Request No. 9**

Defendants object to the form of this Request as it assumes that Dr. Paul Azar left before 8 p.m. and, accordingly, deny the Request.

**Request No. 10**

The document produced at D2548-2549, annexed as Exhibit B, is a true and correct copy of an e-mail sent by Kruti Maniar, M.D., to Adrienne Jordan, M.D.

**Response to Request No. 10**

Defendants admit that the email from Dr. Kruti Maniar to Dr. Adrienne Jordan, dated August 13, 2010, Bates Nos. D02548 to D02549, is a true and correct copy.

**Request No. 11**

Jessica French, M.D. left early on August 13, 2010, before completing her grossing responsibilities.

**Response to Request No. 11**

Defendants admit that Dr. Adrienne Jordan said in an email to Dr. Kruthi Maniar, dated August 13, 2010, Bates No. D02549, that "Jess left early" and deny the remainder of the Request because it calls for Defendants to draw a conclusion about what Dr. Jordan meant in her email.

**Request No. 12**

Jessica French, M.D. failed to communicate with her partner on August 13, 2010, that he needed to stay and help the moonlighter complete any specimens that the Physician Assistant failed to complete.

**Response to Request No. 12**

Defendants admit that Dr. Adrienne Jordan said in an email to Dr. Kruthi Maniar, dated August 13, 2010, Bates No. D02549, that "Jess did not communicate with her partner that because she was leaving early, Justin had to stay and help [her] finish everything in the event that the PA did not finish his specimens."

**Request No. 13**

Jessica French, M.D. was not disciplined or placed on Academic Advisement because of the issues that Adrienne Jordan, M.D., raised about her in her August 13, 2010 e-mail.

**Response to Request No. 13**

Defendants admit that Dr. Jessica French was not disciplined or placed on Academic Advisement because of anything contained in the email written by Dr. Adrienne Jordan, dated August 13, 2010, Bates Nos. D02549 to D02551.

**Request No. 14**

Julie Chepovetsky, M.D., left early on August 13, 2010 and had not completed her grossing responsibilities.

**Response to Request No. 14**

Defendants admit that Dr. Adrienne Jordan said in an email to Dr. Kruthi Maniar, dated August 13, 2010, Bates No. D02549, that "Julie left early today."

**Request No. 15**

Julie Chepovetsky, M.D., was not disciplined or placed on Academic Advisement because of the issues that Adrienne Jordan, M.D. raised about her in her August 13, 2010 e-mail.

**Response to Request No. 15**

Defendants admit that Dr. Julie Chepovetsky was not disciplined or placed on Academic Advisement because of anything contained in the email written by Dr. Adrienne Jordan, dated August 13, 2010, Bates Nos. D02549 to D02551.

**Request No. 16**

The policy for the grossing team in August 2010, as stated by Kruti P. Maniar, M.D., in her email dated August 13, 2010, was that the whole team would be required to stay "until the work is finished."

**Response to Request No. 16**

Defendants deny this Request.

**Request No. 17**

The document produced at D2547, annexed hereto as Exhibit C, is a true and correct copy of an e-mail sent by Adrienne Jordan, dated August 13, 2010, to Kruti Maniar, M.D., and Samuel McCash, M.D.

**Response to Request No. 17**

Defendants admit this Request.

**Request No. 18**

Adrienne Jordan, M.D. wrote, in part, about plaintiff, "How does she function!!!!!!! I just wonder how she gets out of bed in the morning and not hurt herself she is so lazy. Ok rant over. Go back to your normal lives."

**Response to Request No. 18**

See Response to Request No. 17.

**Request No. 19**

Adrienne Jordan, M.D., was not advised by anyone that her writing of the following was unprofessional or inappropriate: "How does she function!!!!!!! I just wonder how she gets out of bed in the morning and not hurt herself she is so lazy. Ok rant over. Go back to your normal lives."

**Response to Request No. 19**

Defendants deny knowledge or information regarding whether Dr. Kruthi Maniar or Dr. Samuel McCash ever advised Dr. Adrienne Jordan that the August 13, 2010 email, Bates No. D02547, was "unprofessional or inappropriate."

**Request No. 20**

Adrienne Jordan, M.D., wrote, in part, in the e-mail dated August 13, 2010, annexed as Exhibit B, "[I] also like sleep and getting home in time to puke my guts out so I can go to bed and get up tomorrow and do it all over again."

**Response to Request No. 20**

See Response to Request No. 17.

**Request No. 21**

Adrienne Jordan, M.D., was not advised by anyone that her writing of the following was unprofessional or inappropriate: "[I] also like sleep and getting home in time to puke my guts out so I can go to bed and get up tomorrow and do it all over again."

**Response to Request No. 21**

Defendants deny knowledge or information regarding whether Dr. Kruthi Maniar or Dr. Samuel McCash ever advised Dr. Adrienne Jordan that the August 13, 2010 email, Bates No. D02547, was "unprofessional or inappropriate."

**Request No. 22**

Adrienne Jordan, M.D., had an issue with Physician Assistant Roma Rosario because Roma Rosario was not "dictating as she goes."

**Response to Request No. 22**

Defendants admit that Dr. Adrienne Jordan wrote in an email, dated August 13, 2010, Bates Nos. D02549-D02551, "Issue with Roma.  It has become an[] issue several nights over the last 2 weeks that Roma is not dictating as she goes."

**Request No. 23**

The document produced at D2567, annexed hereto as Exhibit D, is a true and correct copy of Jonathan Truong's e-mail dated December 9, 2010 e-mail to Eileen Hauptman, Freda Burstyn, and Melissa Pessin-Minsley.

**Response to Request No. 23**

Defendants admit that the email from Jonathan Truong to Eileen Hauptman, Freda Burstyn and Melissa Pessin-Minsley, dated December 9, 2010, Bates No. D02567, is a true and correct copy.

**Request No. 24**

Dr. Truong expressed his belief that, "Knowing Sam[uel McCash] and Leena [Varughese] for two months now, this to me is a personality conflict."

**Response to Request No. 24**

See Response to Request No. 23.

**Request No. 25**

The document produced at D2573-2574, annexed hereto as Exhibit E, is a true and correct copy of Samuel McCash's e-mail to seven (7) members of the Hospital staff dated December 9, 2010 at 1:09:57 PM and his forwarding of that e-mail to Adrienne Jordan, M.D. on December 9, 2010 at 2:12 P.M.

**Response to Request No. 25**

Defendants admit this Request.

**Request No. 26**

Samuel McCash, M.D., was not given any written instruction by Melissa Pessin-Mins[le]y, M.D., in writing to cease communicating with various members of the staff, including Drs. Jordan, Truong, Jaffer, Hauptman, Schiller, and Burstyn, about his incident with plaintiff.

**Response to Request No. 26**

Defendants are unaware of any written instruction by Dr. Melissa Pessin-Minsley to Dr. Samuel McCash, which told him to "cease communicating with various members of the staff, including Drs. Jordan, Truong, Jaffer, Hauptman, Schiller, and Burstyn, about his incident with [P]laintiff" and based on this, admit this Request.

**Request No. 27**

Samuel McCash, M.D., was not threatened with termination by Melissa Pessin-Mins[le]y, M.D., if he did not cease communicating with various members of the staff, including Drs. Jordan, Truong, Jaffer, Hauptman, Schiller, and Burstyn, about his incident with plaintiff.

**Response to Request No. 27**

Defendants object to this Request because it implies that Dr. Samuel McCash engaged in inappropriate conduct, except Defendants admit that Dr. Samuel McCash was not threatened with termination by Dr. Melissa Pessin-Minsley if he "did not cease communicating with various members of the staff, including Drs. Jordan, Truong, Jaffer, Hauptman, Schiller, and Burstyn, about his incident with [P]laintiff."

**Request No. 28**

The document produced at D2575, annexed hereto as Exhibit F, is a true and correct copy of Adrienne Jordan's e-mail dated December 9, 2010 to Samuel McCash, Patrick Lento, Melissa Pessin-Mins[le]y, Alan Schiller, Ira Bleiweiss, Shabnam Jaffer, Freda Burstyn, Eileen Hauptman, Jonathan Truong.

**Response to Request No. 28**

Defendants admit this Request.

**Request No. 29**

Dr. Alan Schiller instructed Adrienne Jordan, M.D. to send her e-mail dated December 9, 2010, annexed hereto as Exhibit F.

10

**Response to Request No. 29**

Defendants admit that Dr. Adrienne Jordan said in an email, dated December 9, 2010, Bates No. D02575, "I was asked by Dr. Schiller to send out an additional e-mail about my encounter with Leena over the past 24 hours . . . ."

**Request No. 30**

Melissa Pessin-Mins[le]y, M.D. did not instruct Dr. Alan Schiller or Dr. Adrienne Jordan to cease dissemination of information about the subject matter of the December 9, 2010, under threat of termination.

**Response to Request No. 30**

Defendants object to this Request because it implies that Dr. Alan Schiller and Dr. Adrienne Jordan engaged in inappropriate conduct, except admit that Dr. Alan Schiller and Dr. Adrienne Jordan were not instructed by Dr. Melissa Pessin-Minsely to "cease dissemination of information about the subject matter of the December 9, 2010 [email], under threat of termination."

**Request No. 31**

On December 9, 2010, Adrienne Jordan, M.D., was a PGY3 Resident, while Leena Varughese, M.D., was a PGY4 Resident.

**Response to Request No. 31**

Defendants deny this Request.

**Request No. 32**

The document produced at D2578, annexed hereto as Exhibit G, is a true and correct copy of Adrienne Jordan's e-mail dated December 10, 2010, to Melissa Pessin-Minsley, Samuel McCash, and Patrick Lento.

**Response to Request No. 32**

Defendants admit this Request.

**Request No. 33**

PGY3 Resident Adrienne Jordan told plaintiff "that there was an investigation going on into what happened and she would be able to tell her side of the story."

**Response to Request No. 33**

See Response to Request No. 32.

11

**Request No. 34**

PGY3 Resident Adrienne Jordan was told that there was an investigation before any member of the Hospital administration advised plaintiff that there was an investigation.

**Response to Request No. 34**

Defendants deny this Request.

**Request No. 35**

The document produced at D2579-2580, annexed hereto as Exhibit H, is a true and correct copy of Melissa Pessin-Mins[le]y's response to Adrienne Jordan's e-mail annexed at Exhibit G.

**Response to Request No. 35**

Defendants admit this Request.

**Request No. 36**

Dr. Pessin-Mins[le]y thanked PGY3 Resident Adrienne Jordan and complimented her in response to her e-mail in which she reported that she was the person who advised plaintiff that there was an investigation.

**Response to Request No. 36**

Defendants object to the form of this Request because it calls for Defendants to draw a conclusion about Dr. Pessin-Minsley's intentions rather than admit or deny a statement. To the extent that this Request seeks the admission or denial of a statement, Defendants deny the statement.

**Request No. 37**

The document produced at D2588-2590, annexed hereto as Exhibit I, is a true and correct copy of Samuel McCash's e-mail dated March 2, 2011 to Caryn Tiger-Paillex.

**Response to Request No. 37**

Defendants admit that the email from Dr. Samuel McCash to Caryn Tiger-Paillex, dated March 2, 2011, Bates No. D02588, is a true and correct copy.

**Request No. 38**

Samuel McCash, M.D., admits that he "would actually reconsider how [he] dealt with the two situations [with plaintiff]."

**Response to Request No. 38**

See Response to Request No. 37..

**Request No. 39**

Samuel McCash, M.D., admits that "maybe [he] should have tried a more diplomatic method."

**Response to Request No. 39**

See Response to Request No. 37.

**Request No. 40**

Samuel McCash, M.D., was not placed on Academic Advisement because of his two situations with plaintiff.

**Response to Request No. 40**

Defendants object to this Request on the grounds that the phrase "his two situations with [P]laintiff" is vague. Subject to this objection, Defendants admit that Dr. Samuel McCash was not placed on Academic Advisement because of his interactions with Plaintiff on September 14, 2010 and December 8, 2010.

**Request No. 41**

Samuel McCash, M.D., was not referred to the Physician Wellness Committee because of how he dealt with the two situations with plaintiff.

**Response to Request No. 41**

Defendants object to this Request on the grounds that the phrase "the two situations with [P]laintiff" is vague. Subject to this objection, Defendants admit that Dr. Samuel McCash was not referred to the Physician Wellness Committee because of his interactions with Plaintiff on September 14, 2010 and December 8, 2010.

**Request No. 42**

Samuel McCash, M.D., was not disciplined because of the way he dealt with the two situations with plaintiff.

**Response to Request No. 42**

Defendants object to this Request on the grounds that the phrase "the two situations with [P]laintiff" is vague. Subject to this objection, Defendants admit that Dr. Samuel McCash was

not given a final warning or terminated because of his interactions with Plaintiff on September 14, 2010 and December 8, 2010.

### Request No. 43

The document produced at D2595-D2597, annexed hereto as Exhibit J, reflects that Dr. McCash forwarded in two separate e-mails to Arthur Figur and Paul Johnson of the Physician Wellness Committee and to Caryn Tiger-Paillex an e-mail chain between plaintiff and Michael P. Mikulasovich, D.O.

### Response to Request No. 43

Defendants admit that Dr. Samuel McCash forwarded an email to Dr. Arthur Figur and Paul Johnson twice on January 13, 2011 and to Caryn Tiger-Paillex on March 30, 2011 and deny that Paul Johnson is affiliated with the Physician Wellness Committee.

### Request No. 44

Plaintiff was not disciplined as a result of the subject-matter contained in the e-mail of Michael Mikulasovich, M.D., dated April 28, 2010 at 2:58 p.m.

### Response to Request No. 44

Defendants admit that Plaintiff was not disciplined as a result of anything contained in the email from Michael Mikulasovich, dated April 28, 2010, Bates No. D02596.

### Request No. 45

The document produced at D2603-D2604, annexed hereto as Exhibit K, is a true and correct copy of an e-mail from Yvelisse Suarez, M.D., dated May 17, 2010, followed by a true and correct e-mail by Kruti P. Maniar dated May 17, 2010, which were both forwarded by Samuel McCash, M.D. on January 13, 20[11] to Arthur Figur and Paul Johnson of the Physician Wellness Committee and on March 30, 2011 to Caryn Tiger-Paillex.

### Response to Request No. 45

Defendants admit that the email from Dr. Yvelisse Suarez, dated May 17, 2010, Bates No. D02604, and the email from Dr. Kruti Maniar, dated May 17, 2010, Bates Nos. D02603-D02604, are true and correct copies of emails and that these emails were forwarded by Dr. Samuel McCash to Dr. Arthur Figur and Paul Johnson on January 13, 2011 and to Caryn Tiger-Paillex on March 30, 2011, and deny that Paul Johnson is affiliated with the Physician Wellness Committee.

**Request No. 46**

Plaintiff's situation with the missing container that was the subject of the e-mail exchange on Exhibit K was fully resolved.

**Response to Request No. 46**

Defendants admit that Dr. Kruthi Maniar said in an email, dated May 17, 2010, Bates Nos. D02603-D02604, that "[t]he issue with this particular case seems to have been resolved . . . ."

**Request No. 47**

There were other residents who had issues with taking responsibility, other than plaintiff, when cases have to be tracked down.

**Response to Request No. 47**

Defendants admit that Dr. Yvelisse Suarez said in an email to Dr. Kruthi Maniar, dated May 17, 2010, Bates No. D02604, that "Mike and I spent a lot of time tracking down these cases and residents so you might want to discuss how you want to deal with the cases that are way overdue and where . . . to place the accountability of the case . . . ." and that Dr. Kruthi Maniar said in an email to Dr. Yvelisse Suarez, dated May 17, 2010, Bates Nos. D02603-D02604, that she "watched Yvelisse and Michael struggle this year to make certain residents take responsibility, only to have no formal consequences when responsibility isn't taken."

**Request No. 48**

The residents, other than plaintiff, to whom Dr. Suarez and Dr. Maniar referred in their e-mails dated May 17, 2010, were not the subject of an Academic Advisement, referral to the Physician Wellness Committee, or any form of discipline.

**Response to Request No. 48**

Defendants object to this Request on the grounds that the term "[t]he residents" is vague and, accordingly, Defendants are unable to admit or deny this Request without knowing the names of the residents.

**Request No. 49**

The document produced at D2664-2665, annexed hereto as Exhibit L, is a true and correct copy of an e-mail sent from Adrienne Jordan, M.D., dated August 12, 2011, an e-mail from Vesna Najfeld dated August 12, 2011, and an e-mail from Adrienne Jordan dated August 12, 2011.

**Response to Request No. 49**

     Defendants admit this Request.

**Request No. 50**

     Resident Sarah, referred to in D2664-2665, was not required to provide a doctor's note for her absence on August 12, 2011.

**Response to Request No. 50**

     Defendants neither admit nor deny this Request because it is outside the scope of discovery.  See Court Order, dated July 11, 2013.

**Request No. 51**

     Resident Sarah, referred to in D2664-2665, was absent on more than one occasion in the month of August 2011 and was not required to provide doctor's notes for her absences.

**Response to Request No. 51**

     Defendants neither admit nor deny this Request because it is outside the scope of discovery.  See Court Order, dated July 11, 2013.

**Request No. 52**

     Resident Sarah left a "significant amount of cases" to be signed out by other Residents because of her absences in August 2011.

**Response to Request No. 52**

     Defendants neither admit nor deny this Request because it is outside the scope of discovery.  See Court Order, dated July 11, 2013.

**Request No. 53**

     Resident Sarah was not placed on Academic Advisement, referred to the Physician Wellness Committee, or disciplined either because of her absences or because she left a "significant number of cases" for other Residents to sign out.

**Response to Request No. 53**

     Defendants neither admit nor deny this Request because it is outside the scope of discovery.  See Court Order, dated July 11, 2013.

**Request No. 54**

During the month of August 2011, Paul Azar attended only three (3) of the fifteen (15) required 8 a.m. lectures.

**Response to Request No. 54**

Defendants deny knowledge or information sufficient to admit or deny the Request, except admit that Dr. Paul Azar signed the 8 am lecture attendance sheet on three dates in August 2011.

**Request No. 55**

During the month of August 2011, Taisha Roman attended only three (3) of the fifteen (15) required 8 a.m. lectures in August 2011.

**Response to Request No. 55**

Defendants deny knowledge or information sufficient to admit or deny the Request, except admit that Dr. Taisha Roman signed the 8 am lecture attendance sheet on three dates in August 2011.

**Request No. 56**

Taisha Roman was not required to give a presentation for attending only three (3) of the fifteen (15) required 8 a.m. lectures in August 2011.

**Response to Request No. 56**

Defendants object to the form of this Request because it calls for an answer which is neither an admission nor denial of a statement, except admit that Dr. Taisha Roman was not required to give a presentation because she signed the 8 am lecture attendance sheet on three dates in August 2011.

**Request No. 57**

During the month of August 2011, Alicia Martinez attended only seven (7) of the fifteen (15) required 8 a.m. lectures.

**Response to Request No. 57**

Defendants deny knowledge or information sufficient to admit or deny the Request, except admit that Dr. Alicia Martinez signed the 8 am lecture attendance sheet on seven dates in August 2011.

**Request No. 58**

Alicia Martinez was not required to give a presentation for attending only seven (7) of the fifteen (15) required 8 a.m. lectures in August 2011.

**Response to Request No. 58**

Defendants object to the form of this Request because it calls for an answer which is neither an admission nor denial of a statement, except admit that Dr. Alicia Martinez was not required to give a presentation because she signed the 8 am lecture attendance sheet on seven dates in August 2011.

**Request No. 59**

As reflected on D2517-2518, on August 29, 2011, plaintiff was given twelve (12) fewer days to prepare a lecture on the topic of her choice per the new conference attendance policy than Paul Azar was given based on the same violation.

**Response to Request No. 59**

Defendants object to the form of this Request because it calls for Defendants to draw a conclusion rather than admit or deny a statement, except admit that Dr. Elizabeth Morency sent two emails on August 29, 2011 and directed Plaintiff to give a presentation on September 14, 2011 and Dr. Paul Azar to give a presentation on September 26, 2011.

**Request No. 60**

No resident other than plaintiff was asked to produce a doctor's note for an inability to provide coverage under the new attendance policy from July 6, 2011 through December 6, 2011.

**Response to Request No. 60**

Defendants neither admit nor deny this Request because it is outside the scope of discovery. See Court Order, dated July 11, 2013.

**Request No. 61**

The document produced at D2540, which is marked as Exhibit M, is a true and correct copy of the Policy for Absence/Service Coverage.

**Response to Request No. 61**

Defendants admit this Request.

**Request No. 62**

The Policy for Absence/Service Coverage does not contain any requirement that a sick or injured resident must provide a doctor's note to substantiate illness or injury to avoid coming into work or for providing coverage.

**Response to Request No. 62**

See Response to Request No. 61.

**Request No. 63**

The document produced at P518, annexed hereto as Exhibit N, is a true and correct copy of an e-mail dated December 29, 2010 from Kruti Maniar sent to all pathology residents.

**Response to Request No. 63**

Defendants admit this Request.

**Request No. 64**

There were multiple instances in 2010 where specimens for flow cytometry were misplaced in the frozen and gross room fridges by residents, as reported by Kruti Maniar in her e-mail marked as P518.

**Response to Request No. 64**

Defendants admit that Dr. Kruti Maniar, said "[t]here have unfortunately been multiple instances in the recent past with specimens for flow cytometry being misplaced in the frozen and gross room fridges" in an email, dated December 29, 2010, Bates No. P518.

**Request No. 65**

The document produced at P876, annexed hereto as Exhibit O, contains a true and correct copy of an email from Michael Mikulasovich to all pathology dated September 8, 2009 at 9:01 p.m., residents entitled "Dementia rounds?"

**Response to Request No. 65**

Defendants admit this Request.

**Request No. 66**

The document produced at P876, annexed hereto as Exhibit O, also contains a true and correct copy of an email from Samuel McCash to Michael Mikulasovich dated September 9, 2009 at 8:10 p.m. in response to Dr. Mikulasovich's e-mail dated September 8, 2009.

**Response to Request No. 66**

     Defendants admit this Request.

**Request No. 67**

     In his e-mail on P876, Dr. McCash stated that he would take a short break from grossing to attend Dementia rounds.

**Response to Request No. 67**

     See Response to Request No. 66.

**Request No. 68**

     No resident was disciplined because of the consumption of alcohol on Hospital grounds at "Dementia Rounds."

**Response to Request No. 68**

     Defendants admit this Request.

**Request No. 69**

     Dr. McCash and Dr. Jordan were not disciplined for consuming alcohol on Hospital grounds.

**Response to Request No. 69**

     See Response to Request No. 68.

**Request No. 70**

     Excluding plaintiff, no resident who requested a leave of absence under the Family Medical Leave Act was prohibited from coming to work prior to an FMLA application being submitted.

**Response to Request No. 70**

     Defendants neither admit nor deny this Request because it is outside the scope of discovery because the Court ruled that "Defendants need not produce . . . documents relating to FMLA leave requests by residents other than plaintiff, but plaintiff may propound a notice to admit seeking an admission that, aside from the allegations about her own treatment, no resident

was denied the opportunity to submit an application for FMLA leave." See Court Order, dated July 11, 2013. Accordingly, Defendants state that had Plaintiff propounded that admission, Defendants would admit the statement.

Date:   New York, New York
        November 12, 2013

                                        EDWARDS WILDMAN PALMER LLP

                                        By:
                                                Rory J. McEvoy
                                                Julie L. Sauer
                                        Attorneys for Defendants
                                        750 Lexington Avenue
                                        New York, New York 10022
                                        212.308.4411
                                        rmcevoy@edwardswildman.com
                                        jsauer@edwardswildman.com

To:     Ronald J. Wronko, Esq.
        RONALD J. WRONKO, LLC
        Attorneys for Plaintiff
        134 Columbia Turnpike
        Florham Park, New Jersey 07931
        (973) 360-1001

EDWARDS WILDMAN PALMER LLP
Rory J. McEvoy
Julie L. Sauer
Attorneys for Defendants
750 Lexington Avenue
New York, New York 10022
212.308.4411
rmcevoy@edwardswildman.com
jsauer@edwardswildman.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEENA VARUGHESE, M.D.,

                    Plaintiff,

    - against -

MOUNT SINAI MEDICAL CENTER, PATRICK
LENTO, M.D., CARLOS CORDON-CARDO, M.D.,
ADOLFO FIRPO, M.D., IRA J. BLEIWEISS, M.D. and
ABC Corp. 1-10, and JOHN DOES 1-10,

                    Defendants.

12 Civ. 8812 (CM) (JCF)

**AFFIDAVIT OF SERVICE**

| | |
|---|---|
| STATE OF NEW YORK )<br>                            )  ss.:<br>COUNTY OF NEW YORK ) | |

Julie L. Sauer, being duly sworn, deposes and says that she is over the age of eighteen; is not a
party to this action; and that on the 12th day of November 2013, she caused a true and correct
copy of the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND REQUEST
FOR PRODUCTION OF DOCUMENT with documents and DEFENDANTS' RESPONSE TO
PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS to be served upon:

Ronald J. Wronko, Esq.
Law Offices of Ronald J. Wronko, LLC
Attorneys for Plaintiff
134 Columbia Turnpike
Florham Park, New Jersey 07932
973.360.1001

by federal express.

Sworn to before me this
12th day of November 2013

Notary Public

JEAN W. McLOUGHLIN
Notary Public, State of New York
No. 01MC6184463
Qualified in Queens County
Commission Expires April 7, 20 16

Julie L. Sauer