

EDWARDS WILDMAN PALMER LLP
750 LEXINGTON AVENUE
NEW YORK, NY 10022
+1 212 308 4411 main  +1 212 308 4844 fax
edwardswildman.com

Rory J. McEvoy
Partner
+1 212 912 2787
fax +1 212 308 4844
rmcevoy@edwardswildman.com

January 9, 2014

**VIA ECF**

The Honorable James C. Francis
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    Varughese v. Mount Sinai Medical Center, et al.
             Docket No.: 12 Civ. 8812 (CM) (JCF)

Dear Judge Francis:

On behalf of our clients, Mount Sinai Medical Center and the Individual Defendants ("Defendants"), I write in response to counsel for Plaintiff's letter, dated January 6, 2014, in which Plaintiff requests (i) another extension of the discovery cutoff until February 14, 2014: (ii) the Court to compel Defendants to amend their responses to certain of Plaintiff's requests to admit and (iii) modification of the confidentiality stipulation and order to permit her to submit certain documents governed by the stipulation to the Office of Professional Medical Conduct ("OPMC") in connection with its investigation of Dr. Varughese.

Defendants oppose any further extension of the discovery cutoff. As detailed below, all of the discovery that Plaintiff mentions in Mr. Wronko's letter should and could have been completed by the January 15, 2014 deadline. Any failure to do so is attributable solely to Plaintiff and her counsel's inactivity and dilatory conduct. With regard to the responses to the requests to admit, Defendants have answered those requests and no further response is required. Indeed, Plaintiff and her counsel's conduct in making this request to the Court appears to ignore the Court's warning to counsel, in the December 3, 2013 Order to keep in mind the sanctions available under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying proceedings. Finally, Defendants strenuously object to Plaintiff's request to submit documents regarding other residents at Mount Sinai to the OPMC because (i) the OPMC only investigates the alleged professional misconduct of the reported physician, in this case Dr. Varughese; (ii) the submission of documents regarding other physicians may impact their licensure; and (iii) the request is nothing more than a continuation of Plaintiff's pattern of vindictive behavior against Mount Sinai and many of the individuals involved in this lawsuit.



The Honorable James C. Francis
January 9, 2014
Page 2

## Plaintiff's Request For An Extension Of The Discovery Cutoff Should Be Denied

In his January 6 letter, Mr. Wronko advances several excuses that seek to justify Plaintiff's request for a further extension of the discovery cutoff. I address each of those excuses in turn.

### The Depositions Of Robert Wood Johnson and Dr. Morency

Mr. Wronko represents to the Court that these depositions cannot be taken before January 21, 2014 because Robert Wood Johnson "dragged its feet" and only offered dates for deposition after Mr. Wronko "threatened motion practice" and that he could not take these depositions on January 10 and move Dr. Jordan's deposition (which is scheduled for January 10, 2014) to January 13, 2014 because he is scheduled to begin a trial on that date. Ominously, Mr. Wronko also raises the possibility that Dr. Morency's deposition which is scheduled for January 14, 2014 may need to be adjourned "[i]f I am assigned out for trial."

What Plaintiff and her counsel failed to disclose to the Court is that Mr. Wronko subpoenaed the Robert Wood Johnson witnesses on October 7, 2013 – more than three months ago. (Copies of the subpoenas are Exhibit 1 hereto). There simply is no legitimate reason why Plaintiff and her counsel could not have taken the necessary steps long ago to secure these depositions. In addition, Plaintiff's claim that Robert Wood Johnson initially did not cooperate and only did so in response to the threat of a motion to compel appears to be untrue. In-house counsel for Robert Wood Johnson told me that he has simply acted as a scheduler, that Robert Wood Johnson has no interest in the outcome of this litigation and takes no sides. Even if Mr. Wronko's representation is correct, he should have moved far sooner to secure these depositions.

The situation with Dr. Morency is much the same. As I reported to the Court in my November 12, 2013 letter, Plaintiff noticed Dr. Morency's deposition on June 6, 2013 and then made absolutely no effort to take that deposition for more than five months. It was only in connection with Defendants' motion to quash that Plaintiff decided that Dr. Morency's deposition was important. Thus, Plaintiff finds herself once again and solely as the result of her own delay in seeking to extend the discovery cutoff because she waited until the eleventh hour to take Dr. Morency's deposition. The Court should also give due consideration to the fact that Dr. Morency no longer works for Mount Sinai and is a practicing physician in Chicago. She agreed to appear for her deposition voluntarily and rearranged her work schedule to be available on January 14, 2014 to be deposed. Dr. Morency should not be further inconvenienced because of Plaintiff's conduct. It is Defendants' position that Plaintiff should be ordered to take Dr. Morency's deposition on January 14, 2014 or else forego it.



The Honorable James C. Francis
January 9, 2014
Page 3

### The Additional Documents Produced By Defendants

Plaintiff's next excuse is that, if Defendants do not produce the documents that they recently agreed to produce until January 15, 2014, "it will afford plaintiff no opportunity to review the documents within the discovery period." To put Plaintiff and her counsel's mind at ease, the documents were sent to Mr. Wronko by e-mail yesterday. As a result, this reason can no longer justify (if it ever did) an extension of the discovery period.

### The Meeting Regarding ESI Discovery

Yesterday, Mr. Wronko, Mr. Larkin and I met to discuss the e-discovery issue that Mr. Wronko raised in his November 25, 2013 letter to the Court. The day before the meeting, I sent Mr. Wronko a letter that explained the basis for his confusion regarding the supplemental ESI production. (A copy of my January 7, 2014 letter is Exhibit 2 hereto). At the in-person meeting, Mr. Larkin further explained that the concerns raised by Mr. Wronko in his letter to the Court were unfounded and that in Defendants' view all ESI responsive to Plaintiff's original and revised search terms has been produced, and that it is Defendants' position that ESI discovery is complete. Mr. Wronko said that he would consider the matter further and advise us whether he still intended to pursue the matter. In any event, there is no basis for prolonging discovery for still more ESI discovery because Defendants have fully-complied with their obligations to provide this material and have produced nearly 20,000 electronically stored documents.

### The Need for Follow-Up Discovery

The catch-all excuse for extending the discovery deadline is the possibility, in Plaintiff's view, that there may still be the need for follow-up discovery. Specifically, Plaintiff expresses concern that there will not be adequate time, after the depositions of Dr. McCash and Dr. Figur (taken on January 8, 2014), Dr. Jordan (scheduled for January 10, 2014) and Dr. Morency (scheduled for January 14, 2014), to "follow up for any miscellaneous documents that may be discovered during these remaining depositions." There is nothing to prevent Plaintiff from requesting (as she has done after a number of the earlier depositions) documents, if any, identified at these depositions by the January 15, 2014 deadline. Mr. Wronko's practice so far has been to send me a brief letter identifying the documents that Plaintiff is requesting. The discovery cutoff does not need to be extended in order to permit this simple "follow-up" discovery. The better approach is for Defendants to respond to any such letter and, if there is an objection to the production of any requested documents to seek the Court's intervention in the event that Plaintiff chooses to challenge that objection. This "follow-up" discovery can all be completed within a week of January 15, 2014, provided that Plaintiff is ordered to make any such requests by that date.



The Honorable James C. Francis
January 9, 2014
Page 4

**The Request To Compel Defendants To Specifically Admit**
**Or Deny Certain Requests To Admit Should Be Denied**

Plaintiff's request that the Court compel Defendants to specifically admit or deny certain requests to admit highlights Dr. Varughese's dilatory conduct and abuse of the discovery process. At the July 11, 2013 pretrial conference, the parties argued a number of discovery disputes to the Court, including disputes over Plaintiff's demands for documents related to FMLA leave requests by residents other than Plaintiff and comparator information regarding other residents, including documents regarding attendance at morning conferences.

The Court ordered that "Defendants need not produce the requested documents relating to FMLA leave requests by residents other than plaintiff, but plaintiff may propound a notice to admit seeking an admission that, aside from the allegations about her own treatment, no resident was denied the opportunity to submit an application for FMLA leave. With regard to discovery regarding coverage, the Court limited Plaintiff's discovery demands to ordering Defendants to produce "[t]he coverage list and all documents relating to requests for coverage, including the acceptance or refusal of such requests, for the period August 2011 through September 2011. *See* July 11, 2013 Order, ¶¶ 4 and 2 c. This was the extent of discovery that the Court permitted regarding comparator information.

On October 10, 2013, three months after the conference, Plaintiff served Defendants with 70 requests to admit. *See* Exhibit A to Mr. Wronko's January 6, 2014 letter to the Court. Rather than comply with the Court's order regarding the FMLA, which specified the permitted request to admit, Plaintiff propounded a different request:

Request No. 70

"Excluding plaintiff, no resident who requested a leave of absence under the Family Medical Leave Act was prohibited from coming to work prior to an FMLA application being submitted."

On its face, this request to admit is not limited to the Court-approved request to admit that no resident was denied the opportunity to submit an application for FMLA leave. Instead, Plaintiff seeks an admission that no resident, other than Plaintiff, was prohibited from coming to work before an FMLA application was filed.

On November 12, 2013, Defendants served their Responses to Plaintiff's First Request for Admissions. In their responses, Defendants properly refused to either admit or deny Request No. 70 because it is outside the scope of discovery permitted by the Court at the July 2013 conference. Rather than merely object, Defendants stated "that had Plaintiff propounded [the



The Honorable James C. Francis
January 9, 2014
Page 5

admission authorized by the Court], Defendants would admit the statement." *See* Exhibit B to
Mr. Wronko's January 6, 2014 letter to the Court, pp. 20-21.

After Defendants served their responses, nothing was heard from Plaintiff or her counsel for five
weeks. On December 19, 2013 (the Thursday before Christmas), I received a letter from Mr.
Wronko which, among other things, demanded that Defendants admit or deny Request No. 70.
(A copy of Mr. Wronko's December 19, 2013 letter is Exhibit 3 hereto). On December 30, 2013,
I sent Mr. Wronko a letter responding to his December 19 letter. *See* Exhibit C to Mr. Wronko's
January 6, 2014 letter to the Court. In that letter, I reminded Mr. Wronko that Request No. 70
was different both in language and content than the one authorized by the Court and that
Defendants admitted the request permitted by the Court. I also reminded Mr. Wronko that
Plaintiff's continued attempts to relitigate discovery issues that were resolved by the Court may
run afoul of the Court's warning regarding the availability of sanctions under 28 U.S.C. § 1927.

Against this background, Plaintiff makes an application to the Court to compel a response to
Request No 70. It seems clear that Plaintiff has simply chosen to ignore the Court's warning
about unreasonably and vexatiously multiplying proceedings.

Plaintiff's application seeking to compel a response to Request to Admit No 60 suffers from the
same infirmities. In this request, Plaintiff asks Defendants to admit that "[n]o resident other than
plaintiff was asked to produce a doctor's note for an inability to cover under the new attendance
policy from July 6, 2011 through December 6, 2011." *See* Exhibit A. Again, Defendants
properly objected to this request because it sought discovery regarding coverage beyond the
discovery on this issue that was carefully prescribed by the Court. The request is objectionable
for the additional reason that it does not comply with the time period specified by the Court.

As with Request No. 70, in his December 19, 2013 letter, Mr. Wronko demanded that
Defendants admit or deny this request. In his letter, Mr. Wronko took the misguided position
that this request was authorized by the Court when, in fact, the only request to admit permitted
by the Court was the one regarding the FMLA. *See* Exhibit 3. In my December 30, 2013 letter, I
pointed out that this request was beyond the scope of the July 11 Order and that continuing to try
and relitigate this issue could subject Plaintiff to sanctions. Nevertheless, Plaintiff makes an
application to compel a response to this request. This is yet another example of Plaintiff's
unwillingness to accept the rulings of the Court and to unreasonably multiply proceedings.

Plaintiff also seeks to have the Court compel Defendants to admit or deny that several residents
attended only a certain number of morning conferences during the month of August 2011. *See*
Exhibit A, Request Nos. 54-58. Defendants responded to these request by stating that they could
neither admit nor deny these request because they lacked sufficient knowledge to do so. For
example, these residents may have attended without signing the attendance sheet, arrived late



The Honorable James C. Francis
January 9, 2014
Page 6

and did not sign the attendance sheet or were excused and that excuse was not noted on the attendance sheet. Defendants did admit the number of times that each of these residents signed the attendance sheet during the month of August 2011 and further admitted that these residents were not required to make a presentation because of the number of times that they signed the attendance sheets. *See* Exhibit B, Responses to Request Nos. 54-58. Thus, Defendants responded to these requests to the maximum extent possible.

In his December 19 letter, Mr. Wronko demanded that Defendants admit or deny these request knowing that Defendants had done so to the limits of their knowledge. *See* Exhibit 3. In my December 30 letter, I explained to Mr. Wronko that the only record of attendance at morning conferences is the attendance sheets for those conferences and that there was no other information available that would permit Defendants to respond further to these requests. *See* Exhibit C. Not surprisingly, Plaintiff nevertheless seeks to have the Court compel the Defendants to admit or deny these requests. Once again, Plaintiff seeks to unreasonably multiple proceedings in this case.

There are several other issues that need to be addressed regarding Plaintiff's application to compel answers to these requests for admissions. In his January 6, 2014 letter to the Court, Mr. Wronko accuses Defendants of acting in bad faith by asserting that Plaintiff's extraordinary delay in seeking to resolve discovery disputes should be held against her and falsely states that Defendants refused to respond to the substance of his letter because of Plaintiff's delay in challenging Defendants responses to Plaintiff's requests to admit. Plaintiff has long exhibited the disturbing pattern of hurling the accusation of bad faith whenever she is called to account for her own conduct in this litigation. In fact, it is hard to imagine a clearer example of bad faith than Plaintiff waiting five weeks to raise any objection to Defendants responses, sending a letter challenging a number of those responses the Thursday before Christmas and demanding a response by December 30 – the Monday after Christmas. Second, it is simply untrue, as Mr. Wronko claims, that Defendants rejected his attempt to meet and confer because his letter came five weeks after the responses were served. An even cursory review of my December 30, 2013 letter shows that, after asserting an objection based on Plaintiff's delay, I responded to the substance of Mr. Wronko's letter regarding Defendants' responses. His claim to the contrary is patently and obviously false. Third, Mr. Wronko offers no explanation for any of the many delays caused by Plaintiff, except to say that all should be forgiven because he is a solo practitioner. Regardless of this fact, Plaintiff and her counsel have an obligation to move the case along, including resolving discovery disputes in a reasonably prompt manner.



The Honorable James C. Francis
January 9, 2014
Page 7

**Plaintiff's Request To Modify The Confidentiality Stipulation
And Order To Permit Her To Submit Documents Regarding
Other Residents To The OPMC Should Be Denied**

Plaintiff asks the Court to modify the confidentiality stipulation and order to submit materials to
the OPMC regarding other residents that "include but are not limited to written confirmation of
verbal warnings, a Notice of Academic Advisement, Final Written Warnings, and attendance
records at required conferences." Plaintiff also appears to seek permission to submit "testimony"
from Defendants' witnesses "regarding unprofessional behavior of and the administering of
discipline to similarly situated co-workers of plaintiff." This request should be denied because
the purpose of the OPMC investigation is to determine whether Plaintiff engaged in professional
misconduct as that term is defined by the Education Law of New York. Thus, the sole inquiry of
the OPMC is whether Dr. Varughese engaged in professional misconduct which does not include
an inquiry into the alleged conduct of other residents. In addition, if the Court were to permit
Plaintiff to submit documents and testimony regarding other residents to the OPMC it would
unfairly place their conduct before the OPMC, even though they are not the subject of an OPMC
investigation and have no opportunity to defend themselves.

Pursuant to N.Y. Pub. Health Law § 2803-e, Hospitals shall make a report, or cause a report to
be made, within thirty (30) days of the occurrence of any of the following: a suspension,
restriction, termination or curtailment of the training, employment, association or professional
privileges, or the denial of a certification of completion of training of a medical resident with
such facility for reasons related, in any way, to the alleged mental or physical impairment,
incompetence, malpractice, misconduct, and/or impairment of patient safety or welfare. The
Hospital shall make the report, or cause the report to be made, within thirty (30) days of
obtaining knowledge of any information which reasonably appears to show that a physician is
guilty of professional misconduct. Professional misconduct is defined under on N.Y. Educ. Law
§ 6530. Pursuant to its obligations under the Public Health Law, Mount Sinai reported to the
OPMC that Plaintiff's training had been terminated as the result of her summary suspension and
termination from the Pathology Department Residency Program.

Pursuant to N.Y. Pub. Health Law § 230, the OPMC is required to conduct a disciplinary
proceeding regarding the reported medical resident. The steps that the OPMC takes in
conducting that proceeding are as follows: (i) an investigation into the suspected professional
misconduct; (ii) a determination by the director of whether the matter shall be submitted to an
investigation committee; (iii) giving the licensee the opportunity for an interview;(iv) providing
the licensee with a copy of the report of the interviewer; (v) if the director decides a hearing is
warranted, the director shall direct counsel to prepare the charges against the licensee; (vi) the
OPMC sets the time and place of the hearing, which is served on the licensee along with the
charges; (vii) the hearing is conducted by a committee on professional conduct, who makes (a)



The Honorable James C. Francis
January 9, 2014
Page 8

findings of fact, (b) conclusions concerning the charges sustained or dismissed and (c) a
determination regarding charges sustained or dismissed, and in the event the charges a sustained,
the appropriate penalty or action to be taken; and (viii) the findings, conclusions, determinations
and reasons for the determination of the committee are served on the licensee, the department
and any hospital involved.

Thus, the express terms of the applicable statute make clear that the OPMC's inquiry is solely
into the alleged professional misconduct of the individual who is the subject of the investigation.
The purpose of the investigation is not to determine whether Dr. Varughese was discriminated or
retaliated against but to determine whether she engaged in professional misconduct as measured
against the definition of misconduct contained in the Education Law.  Dr. Varughese is free to
argue to the OPMC that she did not engage in professional misconduct and submit whatever
evidence she has to support that position.  She cannot submit evidence regarding the conduct and
behavior of other residents as a basis to excuse her own misconduct.  Put simply, Dr. Varughese
either did or did not engage in misconduct in violation of New York State Law and that
determination will be made by the OPMC based on its findings regarding her own conduct and
not the alleged conduct of others.

For all the foregoing reasons, Plaintiff's requests to extend the discovery cutoff, to compel
Defendants to specifically admit or deny certain requests to admit and to modify the
confidentiality stipulation and order to permit Plaintiff to submit documents and testimony
regarding other residents to the OPMC should be denied.

Respectfully submitted,

Rory J. McEvoy

cc:     Ronald J. Wronko, Esq. (via ECF)

Exhibit 1

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | | |
|---|---|---|
| LEENA VARUGHESE, M.D. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   12 CIV 8812 |
| MOUNT SINAI MEDICAL CENTER, PATRICK | ) | |
| LENTO, M.D., CARLOS CORDON-CARDO, M.D. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Evan Cadoff, M.D., Robert Wood Johnson Medical School
One Robert Wood  Johnson Place,  MEB 212, New Brunswick, NJ 08901

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Law Offices of Ronald J. Wronko, LLC<br>134 Columbia Turnpike, Florham Park, NJ 07932 | Date and Time:<br><br>10/28/2013 11:00 am |
|---|---|

The deposition will be recorded by this method:   <u>Certified Court Reporter</u>

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

1. Any and all documents referring or relating to the application of Leena Varughese for admission to the 4th year residency training position at Robert Wood Johnson Medical School in or around January to February 2012;

2. Any and all documents reflecting any and all communications between Robert Wood Johnson Medical School and any of its representatives and/or faculty and Mount Sinai Medical School and any of its representatives and/or faculty.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _10/7/13_

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's Signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   <u>Leena Varughese, M.D.</u>
, who issues or requests this subpoena, are:
Ronald J. Wronko, Esq., 134 Columbia Turnpike, Florham Park, NJ 07932
973-360-1001
ron@ronwronkolaw.com

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| LEENA VARUGHESE, M.D. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   12 CIV 8812 |
| MOUNT SINAI MEDICAL CENTER, PATRICK | ) | |
| LENTO, M.D., CARLOS CORDON-CARDO, M.D. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Billie Fyfe-Kirschner, M.D., Robert Wood Johnson Medical School, 125 Paterson Street
     MEB 212, New Brunswick, NJ 08901

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  Law Offices of Ronald J. Wronko, LLC<br>         134 Columbia Turnpike, Florham Park, NJ 07932 | Date and Time:<br><br>         10/28/2013 10:00 am |
|---|---|

The deposition will be recorded by this method:   Certified Court Reporter

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

1. Any and all documents referring or relating to the application of Leena Varughese for admission to the 4th year residency training position at Robert Wood Johnson Medical School in or around January to February 2012;

2. Any and all documents reflecting any and all communications between Robert Wood Johnson Medical School and any of its representatives and/or faculty and Mount Sinai Medical School and any of its representatives and/or faculty.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  *10/7/13*

|                                                         CLERK OF COURT | |
|---|---|
| | OR _____ |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Leena Varughese, M.D.
_____ , who issues or requests this subpoena, are:

Ronald J. Wronko, Esq., 134 Columbia Turnpike, Florham Park, NJ 07932
973-360-1001
ron@ronwronkolaw.com

Exhibit 2



EDWARDS WILDMAN PALMER LLP
750 LEXINGTON AVENUE
NEW YORK, NY 10022
+1 212 308 4411 main  +1 212 308 4844 fax
edwardswildman.com


Rory J. McEvoy

Partner
+1 212 912 2787
fax +1 212 308 4844
rmcevoy@edwardswildman.com

January 7, 2014

**VIA EMAIL**

Ronald J. Wronko, Esq.
Law Offices of Ronald J. Wronko, LLC
134 Columbia Turnpike
Florham Park, NJ 07932

   Re: Varughese v. Mount Sinai Medical Center, et al.
     12 Civ. 8812 (CM) (JCF)

Dear Mr. Wronko:

On behalf of our clients, The Mount Sinai Hospital ("Mount Sinai" or the "Hospital") and the individual defendants (collectively "Defendants"), and in anticipation of our meeting scheduled for January 8, 2014, I write in response to your letter to Magistrate Judge Francis, dated November 25, 2013, which states that you "received today approximately 275 pages of ESI documents" that were "part of the 5,000 documents that have been withheld on the grounds that they were non-responsive pursuant to an extensive 'confidentiality' review" and asks the Court to order Defendants to produce all of the 5,000 ESI documents "[i]n light of the fact that there is a high probability of scrubbing of relevant materials." Despite your misapprehension, the ESI documents that were produced on November 22, 2013 were not all part of the 5,034 documents that were withheld because they contained private and/or sensitive information.

Rather than wait until we completed our comprehensive review of all ESI documents, on October 15, 2013, we provided you with a hard drive that contained approximately 18,000 documents. As Ed Larkin explained in his letter that was enclosed with this hard drive, "[a]dditional ESI is currently being reviewed and will be produced on a rolling basis as soon as possible." As part of that rolling production, additional documents (in addition to those that were produced on October 15, 2013) were produced on November 22, 2013.

In addition to this group of documents, during our review, we identified a large set of documents (5,034) that contained private and/or sensitive information. To reduce both the costs and time it would take to review and properly redact this information, you agreed to provide us with supplemental search terms to be run against this set of documents. Following that revised search, documents from the group of 5,034 were also produced on November 22, 2013. Thus, the documents produced on November 22 were comprised of two categories – documents from the original group of ESI documents and documents from the 5,034 documents that were



Ronald J. Wronko, Esq.
January 7, 2014
Page 2

identified as containing private and/or sensitive information.  Mr. Larkin explained this to you in his letter, dated November 22, 2013, by stating that the CD-ROM, which was produced that day "contains ESI, which is responsive to Plaintiff's supplemental search terms provided in your letter, dated October 29, 2013, and supplemental ESI to Defendants' production on October 15, 2013."

The documents that you refer to in your letter to the Court, Exhibits A and D, were part of our rolling production, and are not part of the 5,034 documents that were originally withheld because they contained private and/or sensitive information.  Accordingly, there is no basis for Plaintiff's demand that Defendants produce the remainder of the 5,034 documents that were withheld for legitimate reasons.

Very truly yours,

Rory J. McEvoy

Exhibit 3

Ronald J. Wronko •O

**LAW OFFICES OF**
**RONALD J. WRONKO, LLC**
*134 COLUMBIA TURNPIKE*
*FLORHAM PARK, NJ 07932*
(973) 360-1001
FAX (973) 360-1881

315 Madison Avenue,
Suite 901
New York, New York
10165
(212) 886-9057
(212) 957-1912

Member of New Jersey Bar •
Member of New York Bar O

**Reply to New Jersey**

ron@ronwronkolaw.com
www.ronwronkolaw.com

December 19, 2013

**VIA E-MAIL PDF AND REGULAR MAIL**

Rory McEvoy, Esq.
Edwards Wildman Palmer LLP
750 Lexington Avenue
New York, New York 10022

      Re:    Leena Varughese, M.D. v Mount Sinai Medical Center, et al.
      Civil Action No.: 12 Civ. 8812

Dear Mr. McEvoy:

      Please accept this letter to address pending discovery issues.

      With regard to deposition scheduling, you have proposed Dr. Jordan's deposition for January 10, 2014. RWJ's counsel has proposed January 10 or January 21 for the depositions of Dr. Feif and Dr. Cadoff. I am amenable to taking Dr. Jordan on January 10 but need to know whether you will consent to an extension of discovery for the limited purpose of taking the RWJ depositions. Please advise.

      I am disappointed that we were unable to meet and confer on the 5,000 ESI documents that have been withheld based on confidentiality. Please advise of your and Mr. Larkin's schedule to arrange this meet and confer.

      Please further accept this letter as a request for documents requested on the record of the following depositions. In light of the January 15 cut-off of discovery, please advise of any objections that you have to any of the documents by December 30, 2013.

Rory M. McEvoy, Esq.
December 19, 2013

### Day 2 of Dr. Firpo's Deposition

1.  Please produce the documents reflecting implementation of Dr. Paul Azar's final warning, including any self reflection he drafted, his post-warning presentation, and any attendance sheets signed by his attending.
2.  Dr. Firpo appeared to indicate that there might have been self-reflections prepared by Dr. Yao separate and apart from the letter of apology. If there were any documents of self-reflection prepared by Dr. Yao, please produce them.

### Deposition of Ms. Caryn Tiger Paillex

1.  Please confirm that all notes of Ms. Diaz from the May 11, 2011 meeting have been produced.

### Deposition of Paul Johnson

1.  Please produce the Notice of Academic Advisement for Arta Lahiji, M.D. T39.
2.  Any documentation reflecting Dr. Blowe's problems with receiving feedback. T54-55.
3.  Please produce Dr. Blowe's final written warning. T55-56;
4.  Please produce any documentation reflecting that Dr. Blowe was not permitted to return to the workplace absent physician clearance. T57

Please further accept this letter as an attempt to meet and confer on defendants' deficient responses to Plaintiff's First Request for Admissions and Second Request for Production.

### Defendants' Response to Request for Admissions

Request Nos. 54-58: Defendants have produced records reflecting partial attendance at morning conferences. These requests seek admissions or denials as to specific attendance of individuals at required conferences. Defendants seek to evade giving direct answers to these very simple requests confirming the number of absences of each resident from mandatory morning conference attendance. Please admit or deny these requests.

Request No. 60: This request for admission seeks an admission or a denial as to whether any other resident was required to provide a doctor's note for inability to provide coverage. At the July Conference, it was Judge Francis himself who suggested using a Request for Admission to avoid requesting documents containing

Rory M. McEvoy, Esq.
December 19, 2013

health information about employees. To suggest that Judge Francis barred this type of Request for Admissions is simply incorrect and a distortion of the Judge's rulings at the conference. This Request must be answered with an admission or a denial.

Request No. 70: This request seeks an admission or denial of whether any resident was prohibited from coming to work prior to an FMLA application being submitted. The Court's Order does not bar plaintiff from exploring the FMLA issue through Request for Admissions. The Court suggested this vehicle to prevent defendants from having to produce confidential documentation. To now object to the use of this vehicle runs counter to the spirit of Judge Francis' ruling. This Request must be answered with an admission or denial.

**Response to Second Request for Production**

Request No. 30: This Request seeks any disciplinary action taken as to any other Pathology resident on account of issues of insubordination, lack of professionalism, and/or patient care lapses. The Court has recently ruled that plaintiff is entitled to such records through the present. Please provide responsive documents that have not yet been produced in that regard.

Request No. 33: This Request seeks the summative evaluations of all residents in the Department of Pathology in plaintiff's class year as well as for Dr. Jordan. Plaintiff's summative evaluation is at issue in this case. At a minimum, Dr. Azar's summative evaluation should be produced in light of the fact that he was on final warning.

**Privilege Log Issues**

Please further accept this letter as an attempt to meet and confer on privilege log issues relating to defendants' original privilege log and the ESI privilege log.

Defendants previously consented to production of documents that had been withheld and logged based on alleged privilege. A review of those documents reflected that Ms. Lowy, the Associate General Counsel, was merely copied and not directly engaged in the communications. Defendants have stubbornly refused to provide a revised privilege log to provide complete clarity on all communications where Ms. Lowy was merely cc'd. On the privilege log, the entries for documents that have now been produced reflect that those documents were improperly logged as seeking legal advice and that Ms. Lowy's middle to low placement on the "to" designation was really a reflection that she had been "cc'd." It is believed that numerous other documents have still been withheld based on a "cc" to Ms. Lowy. All such documents should be produced immediately.

3

Rory M. McEvoy, Esq.
December 19, 2013

Simply "cc'ing" an in-house counsel does not create any privilege. See In re Grand Jury Proceedings, 2001 WL 1167497 (S.D.N.Y. 2001) (a "cc" is not a communication between an attorney and client); United States Postal Serv. V. Phelps Dodge Refining Corp., 852 F. Supp. 156, 163-164 (E.D.N.Y. 1994) ("a corporation cannot be permitted to insulate its files from discovery simply by sending a "cc" to in-house counsel.").

This practice of wrongfully withholding documents has extended to the most recent ESI privilege log. A large number of documents on that log have been withheld solely on the basis that Ms. Lowy was "cc'd." All of these documents must be immediately produced. A review of the cases above would substantiate plaintiff being awarded fees and costs for having to file a motion to obtain documents withheld based on a "cc."

Even when e-mails have been directed to Ms. Lowy, she is one of a number of recipients and, in most cases, does not even respond to the communications that are logged. The communications relate to issues by the Pathology Department leadership in consultation with GME, HR, and Ms. Lowy on non-legal matters of how to manage, control and discipline an employee. Such communications have been sent for predominately other reasons than just to obtain an opinion of law or legal services. As the Court in In re Grand Jury Proceedings explained, the Southern District of New York applies the attorney-client privilege narrowly to communications between attorney and client sent *predominately* for purposes of legal advice. The entries specifically outlined below likely would have been exchanged between the program leadership, human resources, and GME with or without the involvement of in-house counsel.

The following documents should be produced without question if Ms. Lowy is merely "cc'd." Even if she is included on the actual e-mails, they should be produced where the communications were not predominately for legal advice but for purposes of deciding how to respond to plaintiff's alleged behavior and to decide whether plaintiff should be disciplined and/or terminated from her employment in light of MSMC's policies.

1.   Entries 1-4, 6, 8-9: These entries are pivotal entries discussing the decision to place plaintiff on Academic Advisement. As has been established through deposition testimony, a decision was made by the Pathology Department leadership to place Dr. Varughese on Academic Advisement with input provided by GME and the legal department. According to the defense witnesses, these communications were not solely or even predominately to obtain legal advice but to make a decision as to how to address Dr. Varughese's alleged behavior so that she could improve as a Resident. It is very likely that these e-mails contain

4

Rory M. McEvoy, Esq.
December 19, 2013

predominately, non-privileged information. If defendants are unwilling to produce these documents, plaintiff will file a motion for their production.

2.      Entries 33 and 34: These are documents drafted by Dr. Lento and Paul Johnson. Dr. Lento's communication is directed to Human Resources and GME as well as legal. It is very likely that these e-mails contain predominately, non-privileged information. If defendants are unwilling to produce these documents, plaintiff will file a motion for their production.

3.      Entries 44-47: These entries pertain to the resident duty hours issue where the department leadership was contemplating terminating and/or disciplining Dr. Varughese because she did not enter her duty hours. None of these documents are drafted by legal counsel. It is likely, just as with the other supposedly privileged documents already produced, that Ms. Lowy was simply copied on the exchanges about Dr. Varughese. These documents should be produced.

4.      Entry 50: This entry is an e-mail from Dr. Lento to GME, the department administrator, the Chair of the Department, and Ms. Lowy. This is an e-mail on the very day that Dr. Lento met for a second time on the Academic Advisement. This e-mail likely contains the contemporaneous thoughts of Dr. Lento coming out of the May 24 meeting. It certainly was not generated predominately to obtain legal advice. If anything, as with the majority of these communications, Ms. Lowy was an obligatory "cc." This e-mail regarding the thoughts of the head of the Residency Program should not be clouded in a bogus claim of privilege. Please produce this document.

5.      Entries 99-108: These are entries written by numerous individuals, including Adrienne Jordan, who was purportedly not a decision-maker, regarding plaintiff's Leave of Absence and her presence at work. Again, these documents should be produced.

6.      Entries 111, 114, 115: These three entries are pivotal entries near the time of plaintiff's termination in which the decision to terminate plaintiff is undoubtedly discussed. These are entries that were drafted by Dr. Lento, Ms. Paillex, and Mr. Johnson, not legal counsel. As has been established through deposition testimony, a decision was made by the Pathology Department leadership to terminate Dr. Varughese with input provided by Human Resources, GME, and the legal department. Defendants' privilege log attempts to make it appear that these e-mails were circulated solely or predominately for legal advice when that is simply not the case, as established from the testimony of numerous witnesses. By including the legal department, defendants are attempting

5

Rory M. McEvoy, Esq.
December 19, 2013

       to shroud in secrecy their decision-making process as to why plaintiff was terminated. It is very likely that these e-mails contain predominately, non-privileged information.  If defendants are unwilling to produce these documents, plaintiff will file a motion for their production.

7.     Document marked D_ESI025943 was almost entirely redacted for privilege. However, D02829 through D2830 contains part of the e-mail chain, which clearly is not privileged. It appears from the content that the e-mail chain commenced with Dr. Morency's non-privileged e-mail. All e-mails in this chain, except from any e-mail sent by Ms. Lowy, should be produced.

This will be plaintiff's final effort to meet and confer before filing a motion on the privilege log. Based on the previous "privileged" documents that were produced, it is very apparent that defendants have abused usage of a privilege log to wrongly withhold documents where counsel was merely a "cc" and not an active participant. As Judge Francis previously indicated, he will award fees and costs if he finds wrongful invocation of privilege. Please advise by no later than December 30, 2013 whether defendants will be producing the wrongfully withheld documents. In light of the short time remaining before close of discovery, this deadline cannot be extended.

Very truly yours,

Ronald J. Wronko