Ronald J. Wronko •○

**LAW OFFICES OF**
**RONALD J. WRONKO, LLC**
*134 COLUMBIA TURNPIKE*
*FLORHAM PARK, NJ 07932*
(973) 360-1001
FAX (973) 360-1881

315 Madison Avenue,
Suite 901
New York, New York
10165
(212) 886-9057
(212) 957-1912

Member of New Jersey Bar •
Member of New York Bar ○

**Reply to New Jersey**

ron@ronwronkolaw.com
www.ronwronkolaw.com

January 10, 2014

**VIA ECF FILING**

Hon. James C. Francis, U.S.M.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

> Re:   Leena Varughese, M.D. v. Mount Sinai Medical Center, et al.
>        Civil Action No. 12 Civ. 8812 (CM)

Dear Judge Francis:

I represent Leena Varughese, M.D., in the above-referenced matter. Please accept this letter in reply to defendants' opposition to plaintiff's request for a 30 day extension of discovery, modification of the Confidentiality Stipulation and Order, and to compel specific answers to Request for Admissions.

> A.   **Defendants' Opposition to the Discovery Extension Omits A Month and a Half Of Motion Practice Caused By Defendants and Strategic Scheduling Decisions of Depositions**

Defendants' Opposition to a final, modest 30 day extension of discovery to take the depositions of Dr. Jordan, Dr. Morency, and two witnesses from Robert Wood Johnson is as astounding as it is disingenuous. As is detailed below, defendants' strategic and scheduling decisions have resulted in the need for a modest discovery extension. Plaintiff is not "solely" or even primarily responsible for the need for the extension. Moreover, plaintiff will suffer substantial prejudice if there is a denial of a modest extension of discovery, while defendants will suffer no appreciable prejudice.

The disingenuous nature of defendants' opposition commences with Mr. McEvoy's

Hon. James C. Francis, U.S.M.J.
January 10, 2014

attempt to use the June 6, 2013 notice of deposition for Dr. Morency as a benchmark date to try to establish that the undersigned has been dilatory in taking defense depositions. Mr. McEvoy is simply not being candid with the Court with this argument. Mr. McEvoy was in the midst of his luxurious five (5) day, slow-moving deposition of plaintiff. Under no set of circumstances was this defense counsel going to produce any defense witness until plaintiff's deposition was completed.

Defense counsel discourteously assails the undersigned for having a trial date in another case. Mr. McEvoy seems to have forgotten that he adjourned a scheduled date of plaintiff's deposition because he had a Court appearance, not a trial. However, he expects the Court to ignore his scheduling conflicts that have prolonged discovery in this case. In retrospect, he should have requested an adjournment, but he had no sense of urgency as long as he was subjecting plaintiff to days and days of questioning. The undersigned did not object to that adjournment because I try to cooperate with my adversaries whenever I can. That is the fundamental difference between myself and Mr. McEvoy.

On June 6, 2013, defendants had not yet even responded to the ESI demand, which they dragged their feet on until several days before the commencement of defense depositions in October, 2013. Mr. McEvoy refused to provide dates for defense depositions until after the undersigned's application to be relieved as counsel was decided. After my application to be relieved as counsel was denied, the earliest date he proposed to commence defense depositions was October 18, which the undersigned accepted. At that point during the week of October 18, 2013, Mr. McEvoy even suggested that the start of defense depositions be pushed off in light of the production of tens of thousands of ESI documents on the eve of the first defense depositions. The undersigned, being mindful that depositions needed to get done, rejected this proposal and commenced depositions on October 18.

Since October 18, the undersigned, who is a solo practitioner with a full practice of other cases to also attend to, has undertaken a rigorous schedule of depositions in an effort to get them done. Eleven (11) depositions have been taken in their entirety and completed since October 18.

As has been detailed in previous motions on the docket, defendants initially agreed that they would produce Drs. McCash, Jordan and Morency for deposition. However, when the time came for them to provide dates for their depositions, defendants refused on the grounds that such depositions would be "cumulative" and should be barred. This forced motion practice on November 8 and November 12, 2013, resulting in an Order on December 3, 2013 stating that these witnesses had to be produced. A full month of time was lost because of defendants' posturing.

Plaintiff had attempted to schedule the completion of Dr. Firpo's deposition and that of HR representative Caryn Tiger for December 3, 2013, which was at the beginning of the month. Mr. McEvoy rejected this date and instead had them scheduled almost at the end of

Hon. James C. Francis, U.S.M.J.
January 10, 2014

the short month on December 17, 2013. Plaintiff proceeded and took those depositions on that date. It is unclear whether Mr. McEvoy is now suggesting that he had availability to schedule depositions earlier than December 17 despite wasting another two weeks to get those two depositions completed.

By letter dated December 10, 2013, I timely requested dates from Mr. McEvoy for the McCash and Figur depositions. See Ex. A. I advised of my intent to take Dr. Jordan's deposition in person. I also advised of my intent to take Dr. Morency via teleconference. Mr. McEvoy's response was not to promptly schedule the depositions. In contrast, he proposed January 8 or 9, 2014 for the McCash and Figur depositions, which was days before the close of discovery. See Ex. B. Obviously, Mr. McEvoy was in no great hurry to schedule these depositions. It is again unclear whether Mr. McEvoy is now suggesting that he had availability to schedule these depositions earlier than January 8 or 9.

On December 13, 2013, Mr. McEvoy wrote that he would make application for fees regarding Dr. Jordan's deposition. See Ex. C. Even though Dr. Morency's deposition was not the subject of his application, Mr. McEvoy did not provide a proposed date for that deposition. See id. Mr. McEvoy did not promptly file his application. Instead, he discourteously waited to Christmas Eve to file the application as reflected on the docket for costs associated with the Jordan deposition and to compel it to take place remotely. Mr. McEvoy has offered no explanation for why it took him over ten (10) days to make the simple application. That motion was denied on December 30, 2013. Another month was lost by defendants' strategic actions.

After all of this time was taken off of the calendar when these depositions could have been promptly scheduled and completed, defendants then back-loaded the depositions into the final week before the discovery cut-off. The undersigned proceeded on January 8, 2014 and completed Dr. McCash and Dr. Figur. Dr. Jordan was scheduled for today, but as detailed in supplemental correspondence filed yesterday, the undersigned fell ill and could not take the deposition because I am bed-ridden today. My supplemental correspondence contains a doctor's note and the results of my positive influenza test, because I cannot know whether defense counsel will question my illness in light of the discourteous tone of their opposition. Incidentally, I was plainly sick right in front of Mr. McEvoy at the Figur deposition on January 8. Dr. Jordan's personal counsel has curiously stated that her trial schedule will result in the deposition having to be rescheduled thirty (30) days out. While plaintiff questions the legitimacy of this assertion, it provides grounds for the modest discovery extension.

Even though the undersigned has attempted to schedule the deposition of Dr. Morency for Tuesday, January 14, 2014, defendants' counsel failed to confirm the deposition for that date until his filing with the Court, even though I explicitly told him that I was waiting to hear back from him. Now, Mr. McEvoy demands that the deposition be Court-ordered, even though he never gave the undersigned the courtesy of even confirming the

Hon. James C. Francis, U.S.M.J.
January 10, 2014

date. I expect to be physically well by next Tuesday. Mr. McEvoy does not disclose that because of his reticence about the date, we have not yet conferred about the logistics of the deposition (i.e., whether his Chicago office has video-conference capabilities; if not, such will need to be arranged including an appropriate site for the deposition). By copy to Mr. McEvoy, I make immediate demand that he answer such reasonable inquiry.

As to the Robert Wood Johnson depositions, Mr. McEvoy presents an entirely incomplete picture. Initially, I interfaced with Barbara McManus, Senior Legal Assistant, not with the in-house counsel. She produced responsive documents to plaintiff's subpoena on November 1, 2013. She was hopeful that depositions would not need to take place of any witnesses upon production of documents. This is a typical response of third parties who do not wish to be dragged into a litigation. By e-mails dated November 12, 2013, Ms. McManus followed-up on my request for proposed deposition dates. See Ex. D. She did not provide proposed dates but inquired as to further information about the depositions. Ms. McManus became non-responsive and only after I left her a voice-mail threatening motion practice did she then involve in-house counsel Geoffrey Gibson, Esq., who Mr. McEvoy has only recently communicated. Like Mr. McEvoy, Mr. Gibson did not propose any dates around the Holiday break in December but proposed January 10 (which was the date proposed for Dr. Jordan) or January 21, 2013. The depositions have been confirmed for January 21. Naturally, Mr. McEvoy argues that it is plaintiff's fault that two doctors would not be produced for deposition during the Holiday break, even though Mr. McEvoy himself also avoided proposing dates during the break as well.

As to the ESI discovery, the undersigned met and conferred in person with Mr. Larkin and Mr. McEvoy and received a convoluted explanation regarding the 5,000 documents that were withheld. According to defendants, they withheld 5,000 documents that contained "confidential" information, such as phone records. The supplemental search terms that I had defendants run against the 5,000 documents surprisingly produced very relevant documents directly discussing plaintiff. There was no basis for such documents to have been withheld in the first place, much less pursuant to any supposed "confidentiality" review protocol.

Neither counsel was able to explain how such relevant documents had supposedly slipped through the cracks of the "confidentiality" review protocol to wind up in the 5,000 documents. Instead, they claimed that the supplemental production was not just from the new keyword searches against the 5,000 withheld documents but were documents from other, yet to be produced ESI. No such distinction was drawn when the documents were initially produced and there is no way for plaintiff to draw the distinction for reviewing the documents. Regardless, the conclusion is that defendants have withheld relevant and responsive documents under the guise of "confidentiality" and there are likely more such documents that have been wrongfully withheld. The only point on which defense counsel were entirely clear was in their threat that they would seek costs if I requested that supplemental search terms be run against the withheld 5,000 documents in light of the fact

Hon. James C. Francis, U.S.M.J.
January 10, 2014

that their review protocols captured very relevant documents.

With this back-drop, defendants argue that plaintiff is "solely" responsible for the fact that a modest extension of discovery is needed. The reality is that defendants have obviously made strategic and scheduling decisions that wasted very substantial time in the discovery period that prevented the remaining depositions from being completed. Each of defendants' applications were denied by the Court. However, they each resulted in time ticking off of the calendar, for which defendants now disingenuously seek to blame plaintiff and her counsel.

More importantly, there is absolutely no prejudice to defendants by a modest thirty (30) day extension of discovery. Plaintiff is not seeking to take any additional depositions but is seeking only to complete those depositions that have been previously noticed. The two chief resident depositions need to be completed and a single day of Robert Wood Johnson depositions. Any follow-up documentary discovery from those depositions would need to be completed as well as resolution of the above-referenced ESI issue.

In contrast, the prejudice to plaintiff would be considerable if the discovery cut-off is not modestly extended. In particular, plaintiff will be denied the opportunity to take the deposition of chief residents who played significant roles in advocating for plaintiff's termination and appeared to be in communication with the key decision-makers at and around the time of termination. Likewise, plaintiff will be deprived of taking two short third party depositions of Robert Wood Johnson representatives to discover all of their communications with Mount Sinai resulting in plaintiff being denied an opportunity to transfer into another residency program. Plaintiff's claims of tortious interference and defamation rest largely on the depositions of the two representatives. Thus, this is overt prejudice that will result.

For the foregoing reasons, there is substantial good cause for a thirty (30) day extension of discovery. Plaintiff respectfully requests that it be granted.

### B. The Confidentiality Order/Stipulation Should Be Modified

Defendants argue that plaintiff should attempt to defend herself from the OPMC investigation with one hand tied behind her back. Plaintiff contends that she was held to a different standard than similarly-situated co-workers. For instance, plaintiff was assailed for not responding to a single page of the Program Director when she was with an attending physician on a rotation. Plaintiff was also assailed for failing on a single occasion to give a make-up conference. In contrast, resident Paul Azar *habitually* failed to respond to pages. He failed to attend a rotation to the point that an attending physician inquired whether he was still a resident in the program. He *habitually* failed to give make-up conferences. Dr. Azar was graduated from the residency program and is now a practicing physician. Dr. Varughese is the subject of investigation by the OPMC and cannot move forward with her career.

Hon. James C. Francis, U.S.M.J.
January 10, 2014

What is or is not "misconduct" is ultimately in the eyes of the beholder. It is entirely relevant to the OPMC's inquiry whether the "misconduct" alleged of plaintiff was not viewed by Mount Sinai as "misconduct" when done by other residents who, unlike plaintiff, had made no complaints of discrimination or threats to sue the institution under Title VII of the Civil Rights Act. In that context, for instance, the OPMC will be able to make an informed decision whether the cancellation of a single morning conference is "misconduct" or just something that Mount Sinai blew out of proportion in an effort to wrongfully terminate plaintiff.

Defendants' argue that if a resident's name, like that of Dr. Azar, is revealed to OPMC, he could become the subject of investigation. This concern can be balanced with plaintiff's concern of being able to present a full defense to the OPMC to preserve her medical license. The names of comparators can remain entirely confidential and be redacted pursuant to Court Order. At the deposition of Dr. Figur, the Court permitted plaintiff to discover sufficient details about referrals to the Physician Wellness Committee to conduct a comparative analysis but without discovering the name of the subject physician. The outcome of this issue should be no different. Plaintiff should not be handicapped in her fight to preserve her medical license and overtly prevented from presenting evidence of the retaliatory and discriminatory intent of the hierarchy at Mount Sinai.

Moreover, virtually every ESI document, whether it pertains to plaintiff or to anyone else has been marked "confidential." This is an overt abuse of the Confidentiality Stipulation and Order. The e-mail correspondence pertaining solely to and referencing only plaintiff should not be restricted from use before the OPMC regardless of the Court's ruling as to documents referencing similarly-situated co-workers. Defendants' stamping of such documents relating to plaintiff is absolutely wrong. The Court should indicate in its ruling that plaintiff is not restricted from utilizing discovery materials pertaining exclusively to her before the OPMC.

### C. Defendants Should Be Compelled To Respond To The Request For Admissions Specifically Identified

Requests for Admissions are a tool that can be utilized beyond the discovery period to authenticate documents, or, as the Court suggested, to avoid the necessity of depositions or the production of HIPAA protected material. Defendants produced documents dating back to April 2010, a year and a half before plaintiff's termination, to support an allegation that plaintiff had a history of problems in the Residency program. To expedite discovery rather than prolong it, plaintiff served a Request for Admissions, which predominately focused on this supplemental production, which incidentally and inexplicably defendants served not with their initial discovery responses but on the cusp of defense depositions.

The Court's July Order never barred plaintiff from serving Requests for Admissions

Hon. James C. Francis, U.S.M.J.
January 10, 2014

on any topic of plaintiff's choosing. The Court suggested a specific Request for Admission to avoid defendants from having to produce HIPAA protected material. The undersigned agreed with the Court's suggestion and believed it an efficient way to address issues that might infringe upon residents' HIPAA rights. Now, defendants take this good suggestion and contort it to argue that plaintiff is now barred from serving reasonable Requests for Admissions on topics of plaintiff's choosing. Even though the Court ruled once already that the time period relating to conference attendance was not limited by plaintiff's date of termination, defendants show no hesitation to make the now overruled argument again.

Then, defendants argue that a failure to meet and confer within less than 30 days during a period of frenetic deposition activity should act as a bar to defendants responding to reasonable requests for admission. Defendants further argue that plaintiff is vexatiously increasing litigation, even though the Request for Admissions arise directly from a late document production by the defense attempting to introduce an entirely new set of issues into the case. If plaintiff had opted to instead take the depositions of Chief Residents and other witnesses from in or around April 2010 in lieu of a simple Request for Admissions, defendants would have been screaming about costs. In essence, defendants argue that discovery should be a dead-end street where defendants can produce documents and make allegations yet not have to respond to reasonable inquiries about them.

On the meet and confer, the undersigned focused on only a few of the most important request for admissions. A review of the other responses of defendants demonstrates an overt effort to provide direct admissions or denials. The reason is clear. The admissions that they will likely elicit if defendants are compelled to answer them will be very harmful to their defense. However, the mere fact that an honest answer may hurt Mr. McEvoy's client's defense is not a basis for him to avoid providing explicit admissions or denials.

Defendants offer an excuse that they cannot admit or deny the requests relating to attendance because there may be absences not reflected on the records or there may be excuses not reflected on the records. If this is the case, then defendants should provide a certified statement reflecting such deficiencies in their record keeping, especially in light of the fact that attendance at morning conferences was supposedly mandatory, or at least for plaintiff was mandatory, under threat of discipline. It is simply incredible that plaintiff would have her career as a pathologist foreclosed, in part, based on attendance at morning conferences, yet the attendance of other residents was not being precisely tracked.

Finally, as to defendants off-hand attack on plaintiff that she is "retaliating" against Mount Sinai, defendants are not pleased that plaintiff has unearthed situations like Dr. Azar's because it exposes the double-standard to which she was subjected. Plaintiff's pursuit of full discovery of a Title VII claim is protected activity under that statute. Mount Sinai's argument that they are being "retaliated" against by plaintiff's pursuit of that claim is in itself a violation of Title VII, which bars retaliation arising from the exercise of protected activity. However, plaintiff does not expect Mount Sinai to suddenly develop sensitivity to

Hon. James C. Francis, U.S.M.J.
January 10, 2014

Title VII concerns, especially in light of the hierarchy's past behavior.

    We thank the Court for its consideration of this matter.

                                        Respectfully submitted,

                                        /s/*Ronald J. Wronko*
                                        Ronald J. Wronko

Encl.
cc:    Rory McEvoy, Esq. (via ecf filing)