# EXHIBIT 2



Locke Lord Edwards
750 Lexington Avenue
New York, NY 10022
Telephone: 212-308-4411
Fax: 212-308-4844
www.lockelord.com

Rory J. McEvoy
Partner
Direct Telephone: 212-912-2787
Direct Fax: 212-308-4844
rory.mcevoy@lockelord.com

January 29, 2015

**VIA FACSIMILE**

Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street, Room 1640
New York, New York 10007

      Re:    Varughese v. Mount Sinai Medical Center, et al.
             Docket No.: 12 Civ. 8812 (CM) (JCF)

Dear Judge McMahon:

On behalf of our clients, The Mount Sinai Hospital and the individual defendants (collectively "Defendants"), I write to inform the Court that during a review of Plaintiff's recent filings, we identified several documents that contain private, confidential information that are now publically available on the Court's electronic court filing system. Defendants respectfully request that the Court order that these documents be filed under seal. Below is a list of the documents along with a short description of their contents and the reason for this request. Copies of these documents are also attached for the Court's review.

(1)    Letter from the Accreditation Council for Graduate Medical Education to Dr. Patrick Lento proposing that the Department of Pathology (the "Department") be placed on probation and listing unconfirmed citations found by the Residency Review Committee for Pathology. This document is not available to the public. If made publically available, this document would be detrimental to Mount Sinai's recruitment of prospective residents for the Department's residency program. This document is also misleading because it (i) does not list the individual responses proffered by the Department to the citations; (ii) does not provide information regarding the current status of the Department's residency program; and (iii) does not provide the conclusion, namely, that the Department was never actually placed on probation. This document is also not relevant to this litigation. [Dk. Entry No. 205, Ex. 1 at pages 1-6]

(2)    Email correspondence between Dr. Carlos Cordon-Cardo, Vito Pansadoro and others, dated September 10 to September 20, 2011, which discloses private, confidential information regarding Dr. Cordon-Cardo's personal relationships, which is not relevant to this litigation. Filing this document on a public forum would be an invasion of his privacy. [Dk. Entry No. 205, Ex. 1 at pages 18-21]

Honorable Colleen McMahon
January 29, 2015
Page 2

(3)     Email correspondence from Dr. Adrienne Jordan to Dr. Patrick Lento, dated March 23,
        2011, regarding Dr. Jordan's personal medical history, which is not relevant to this
        litigation.  Dr. Jordan is not a party to this litigation and filing this document on a public
        forum would be an invasion of her privacy.  [Dk. Entry No. 205, Ex. 15 at page 6]

(4)     Email correspondence between Dr. Adrienne Jordan, Allene Carter and others, dated
        August 9, 2011, regarding the murder of Dr. Jordan's uncle, which are not relevant to this
        litigation.  Dr. Jordan is not a party to this litigation and filing this document on a public
        forum would be an invasion of her privacy.  [Dk. Entry No. 205, Ex. 15 at pages 12-13]

(5)     Final warning issued to Dr. Paul Azar, dated April 27, 2012.  This is the same document
        that the Court already ruled should be filed under seal on July 28, 2014.  As described in
        my letter to the Court, dated July 25, 2014, this document contains information regarding
        the discipline issued to a physician who is not a party to this litigation.  Filing this
        document on a public forum would be an invasion of this physician's privacy.  [Dk. Entry
        No. 205, Ex. 16 at pages 32-34]

(6)     Email correspondence between Dr. Jaclyn Hechtman, Dr. Adrienne Jordan and others,
        dated May 15 to May 17, 2011, regarding the suicide of Dr. Hechtman's best friend,
        which are not relevant to this litigation.  Dr. Hechtman is not a party to this litigation and
        filing this document on a public forum would be an invasion of her privacy.  [Dk. Entry
        No. 205, Ex. 18 at pages 2-7]

(7)     Academic Advisement issued to Dr. Jonathan Yao, dated January 25, 2012.  This is the
        same document that the Court already ruled should be filed under seal on July 28, 2014.
        As described in my letter to the Court, dated July 25, 2014, this document contains
        information regarding an academic advisement issued to a physician who is not a party to
        this litigation.  Filing this document on a public forum would be an invasion of this
        physician's privacy.  [Dk. Entry No. 205, Ex. 30 at pages 142-144]

(8)     Documents regarding the terms of the Academic Advisement issued to Dr. Jonathan Yao,
        which the Court ruled should be filed under seal on July 28, 2014.  [Dk. Entry No. 205,
        Ex. 30 at pages 145-151]

(9)     Final warning issued to Dr. Sarah Blowe, dated June 11, 2012.  This document should be
        filed under seal for the same reasons the Court ordered that the final warning issued to
        Dr. Paul Azar be filed under seal, namely, that this document contains information
        regarding the discipline issued to a physician who is not a party to this litigation and

Honorable Colleen McMahon
January 29, 2015
Page 3

filing this document on a public forum would be an invasion of her privacy.  [Dk. Entry No. 205, Ex. 30 at pages 177-180]

Respectfully submitted,

Rory J. McEvoy

cc:     Leena Varughese, M.D. (via email)
        *Pro se* Plaintiff

## **1**



May 24, 2011

Accreditation Council for
Graduate Medical
Education

515 North State Street
Suite 2000
Chicago, IL 60654

Phone 312.755.5000
Fax 312.755.7498
www.acgme.org

Patrick Lento, MD
Associate Professor of Pathology
Mount Sinai Hospital
Department of Pathology
One Gustave L Levy Place
New York, New York  10029

Dear Dr. Lento,

The Residency Review Committee for Pathology, functioning in accordance with the policies and procedures of the Accreditation Council for Graduate Medical Education (ACGME), has reviewed the information submitted regarding the following program:

Pathology-anatomic and clinical

Mount Sinai School of Medicine Program
    Mount Sinai School of Medicine
New York, NY

Program 3003521251

Based on all of the information available to it at the time of its recent meeting, the Review Committee accredited the program as follows:

Status: Proposed Probation
Response Due: 07/15/2011

The proposal to take an adverse action is based on failure of the program to be in substantial compliance with the ACGME's Requirements for Graduate Medical Education.

Before final action is taken, you have the opportunity to respond to the following citations by submitting written information for review by the Review Committee. You may provide information revising, correcting or expanding factual information previously submitted; challenging the report of the site visitor (if applicable); rebutting the interpretation and the conclusions of the Review Committee; demonstrating that areas cited as not in substantial compliance with the requirements did not exist when the Review Committee initially reviewed the program and proposed the adverse action (i e., the date of Review Committee meeting); and contending that the program is in substantial compliance with the requirements that were in effect at the time of the site visit. The Review Committee shall determine whether the information that is submitted may be considered without verification by a site visitor.

The response must be reviewed and approved by the sponsoring institution's Graduate Medical Education Committee and co-signed by the Designated Institutional Official prior to submission to the ACGME. In order to be considered by the Review Committee, your response must be received, in triplicate, by the date indicated above. If you choose not to respond, the adverse action will be confirmed by the Review Committee.

CONFIDENTIAL

EXHIBIT
Morency
1
3/27/14 ol

D02942

For guidelines on responding to the proposed adverse action, please see the enclosed document entitled "Procedures for Proposed Adverse Actions". If applicable, please also review the program's Site Visit Report, which is available through the ACGME Accreditation Data System (ADS). To access the Site Visit Report, log in to ADS from the ACGME website (www.acgme.org). Using the left hand menu click on 'Site Visit Results', then click 'Notification Letters' and then click on the icon in the column labeled 'View Notification Letters'. In the column labeled 'Site Visit Reports', click on the icon to view the report. A copy of the site visit report may be printed from this screen.

AREAS NOT IN SUBSTANTIAL COMPLIANCE (CITATIONS)

The Review Committee cited the following areas as not in substantial compliance with the requirements as the basis for the proposed adverse action.

Citation #1:

10-hour Rest Period [CPR VI.D.3.]
Adequate time for rest and personal activities must be provided. This should consist of a 10-hour time period provided between all daily duty periods and after in-house call. Citation code: 4.K.3

The information provided did not demonstrate compliance with the requirement.  The site visitor confirmed that the residents do not always have a 10-hour time period between duty periods on surgical pathology rotations.  There are confirmed frequent sessions of 'late arrival of slides for previewing' during these assignments which preclude residents from a 10-hour time period between daily duty periods.

Site Visitor Report, pp. 29, 38, 2007, 2009, 2010 Resident Surveys

Citation #2:

Resident Service Obligations [CPR VI.A.2.]
The learning objectives of the program must not be compromised by excessive reliance on residents to fulfill service obligations. Citation code: 4.H

The information provided did not demonstrate compliance with the requirement.  At the time of the site visit, residents confirmed that there is not a balance of service and education in several areas of the program.  Clinical educational experiences have been compromised by excessive service obligations on rotations in Surgical Pathology at MSMC, Cyopathology at MSMC, and Anatomic Pathology (AP) at Englewood Hospital and Medical Center.  For example, 1) heavy service loads, delay in production of slides, and clerical duties in Surgical Pathology rotations frequently have prevented the residents from previewing slides and participating in read-out of the specimens on which they had performed gross examination and cutting; 2) demands for resident participation in FNAs and monitoring of adequacy of biopsy have prevented some residents from examining 1500 cytopathology specimens during the program; 3) required participation of residents in all autopsies, (most with minimal educational benefit) on the anatomical pathology rotation at Elmhurst Hospital Center; 4) a 2-day read-out cycle has kept residents from consistently previewing slides and participating in read-outs for Surgical Pathology cases; 5)  secretarial responsibilities required of Chief Residents limited their time on rotations; 6) functioning of the Anatomic Pathology division at MSMC that is dependent on having a specific number of residents on the Surgical Pathology rotation at any given time; and 7) no designated elective time.

Site Visitor Report, pp. 5, 27-28, 32-33, 36; 2007, 2009, 2010 Resident Surveys

Citation #3:

CONFIDENTIAL

D02943

Patrick Lento, MD
Page 4

Pathology rotations. Residents stated in addition that International GI fellows have had educational opportunities in read-out that the residents did not have.

Site Visitor Report, 16, 37; 2007, 2010 Resident Surveys

Citation #7:

The Curriculum/Annual Distribution and Review at Each Rotation [CPR IV.A.2.]
The curriculum must contain competency-based goals and objectives for each assignment at each educational level, which the program must distribute to residents and faculty annually, in either written or electronic form. These should be reviewed by the resident at the start of each rotation. Citation code: 4.A

The information provided did not demonstrate compliance with the requirement.
The goals and objectives for the residents' rotations were incomplete in that they were not consistently written in the general competency terminology for each educational level.

Site Visitor Report, 16, 36

Citation #8:

Medical Knowledge/Anatomic Pathology Topics [PR IV.A.5.b).(1)]
Residents will have education in anatomic pathology that must include instruction in autopsy and surgical pathology, cytopathology, pediatric pathology, dermatopathology, forensic pathology, immunopathology, histochemistry, neuropathology, ultrastructural pathology, cytogenetics, molecular biology, aspiration techniques, and other advanced diagnostic techniques as they become available. Citation code: 4.E

The information provided did not demonstrate compliance with the requirement. At the time of the site visit, it was reported that the educational content of the neuropathology curriculum component is inadequate. The neuropathology rotation is divided between neuropathology and dermatopathology; more time is spent on dermatopathology than on neuro, and the residents frequently miss more than half of brain cutting sessions conducted during the one-month rotation.

Site Visitor Report pp. 19, 37

Citation #9:

Patient Care/1,500 Cytologic Specimens [PR IV.A.5.a).(6)]
Residents will examine at least 1,500 cytologic specimens during the program. This material must include a variety of both exfoliative and aspiration specimens. Citation code: 4.F

The information provided did not demonstrate compliance with the requirement. Because of the demands on the residents' time for Fine Needle Aspirations and 'adequacy' readings, the site visitor confirmed that residents did not have time for routine cytopathology read-out. As noted on page 67 of the Program Information Form, some of the graduating residents had not participated in the examination of the minimum required  1500 cytopathology specimens.

Site Visitor Report, pp. 19, 22, 28, Program Information Forms, pg. 67

Citation #10:

Medical Knowledge/Clinical Pathology Topics [PR IV.A.5.b).(2)]

CONFIDENTIAL

D02945

Residents will have education in clinical pathology that must include instruction in microbiology (including bacteriology, mycology, parasitology, and virology), immunopathology, blood banking/transfusion medicine, chemical pathology, cytogenetics, hematology, coagulation, toxicology, medical microscopy (including urinalysis), molecular biologic techniques, aspiration techniques, and other advanced diagnostic techniques as they become available. Citation code: 4.E

The information provided did not demonstrate compliance with the requirement. At the time of the site visit, educational experiences in Laboratory Management and Informatics were considered by the residents interviewed to be 'fair to poor'. Although a new rotation was recently developed, the site visitor confirmed that none of the residents had completed this rotation.

Site Visitor Report, pp. 20, 37

Citation #11:

Definition/18 Months Clinical Pathology for APCP-4 Programs [PR Intro.B.4.]
APCP 4 programs must include 18 months of formal education in anatomic pathology and 18 months of formal education in clinical pathology. Citation code: 4.B

The information provided did not demonstrate compliance with the requirement. Based on the information provided, not all residents complete 18 months of educational experiences in clinical pathology. Two residents reported only 17 months, a third resident reported only 16 and a half months. While elective rotations were noted on the block diagram there was no description as to whether these were anatomical pathology or clinical pathology experiences.

Program Information Forms, pp. 114, 119

Citation #12:

Interpersonal and Communication Skills/Consultative Activity with Faculty PR [IV.A.5.d).(6)]
Residents are expected, along with faculty, to be regularly involved in consultative activity. Citation code: 4.F

Intra- and Interdepartmental Patient-care Consultations [PR IV.A.5.d).(7)]
Residents are expected to provide patient-care consultations which should be both intra- and interdepartmental. Citation code: 4.F

The information provided did not demonstrate compliance with the requirement. At the time of the site visit, residents confirmed their role as consultants on Clinical Pathology rotations, but do not function as consultants on Anatomic Pathology rotations.

Site Visitor Report pp. 21, 37

Citation #13:

Medical Knowledge/Regular Formal Clinical and Teaching Rounds for Each Service [IV.A.5.a).(5)]
Residents will participate in the regular formal clinical and teaching rounds corresponding to the laboratory services to which they are assigned. For example, residents should attend infectious disease service rounds while on assignment in microbiology. Citation code: 4.E

The information provided did not demonstrate compliance with the requirement. Formal clinical and teaching rounds with related clinical services were limited to 'plate rounds' during their microbiology rotation, and 'coagulation rounds' during their blood bank and transfusion

medicine rotations.

Site Visitor Report, pp. 20, 37

Citation #14:

Print or Electronic Reference Materials [CPR II.E.]
Residents must have ready access to specialty-specific and other appropriate reference
material in print or electronic format. Citation code: 3.F

The information provided did not demonstrate compliance with the requirement.  The site
visitor confirmed that there are not sufficient histology reference texts for their use during
assignments at Englewood Hospital and Medical Center, Elmhurst Hospital Center or the
James J. Peters Veterans Affairs Medical Center.

Site Visitor Report, pg. 15

Citation #15:

Evaluation/Resident Formative/Document After Each Assignment [CPR V.A.1.a)]
The faculty must evaluate resident performance in a timely manner during each rotation or
similar educational assignment, and document this evaluation at completion of the
assignment. Citation code: 5.A

The information provided did not demonstrate compliance with the requirement. The site
visitor verified that a number of faculty members have not completed end-of-rotation
evaluations of the residents in a timely manner.  Further, it was reported that the program
administration directed residents to contact the faculty members to request completion of the
missing evaluation forms.

Site Visitor Report, pp. 23, 37, Program Information Forms, pg. 111

Citation #16:

Multiple Evaluators [CPR V.A.1.b).(2)]
The program must use multiple evaluators (e.g., faculty, peers, patients, self, and other
professional staff). Citation code: 5.A

The information provided did not demonstrate compliance with the requirement.  The site
visitor reported that other professional staff only began to evaluation residents one month
prior to the site visit.  Residents confirmed that they had not received any feedback from the
evaluators at the time of the site visit.  In addition, resident peers, patients, and self-
assessments do not participate in the resident evaluation process.

Site Visitor Report, pg. 24

Citation #17:

Annual Performance Evaluation [CPR V.B.1.]
At least annually, the program must evaluate faculty performance as it relates to the
educational program. Citation code: 5.B

The information provided did not demonstrate compliance with the requirement.  At the time of
the site visit, faculty members had not received any feedback from the department concerning
their performance.  Until July of 2010, residents had completed written evaluations of each

CONFIDENTIAL

D02947

Patrick Lento, MD
Page 7

faculty member after each rotation. The site visitor confirmed that those evaluations had never been reviewed, and no action had been taken as a result of these assessments.

Site Visitor Report, pp. 25, 38

Citation #18:

Use of Evaluation Data [CPR V.C.1.d).(2)]
The program must use the results of residents' assessments of the program together with other program evaluation results to improve the program. Citation code: 5.C

The information provided did not demonstrate compliance with the requirement. The site visitor was unable to confirm that evaluations of the program by the residents had been reviewed or were utilized to improve the program.

Site Visitor Report, pp. 26, 38

Citation #19:

Evaluation/Program/Written Plan of Action (CPR V.C.2.)
If deficiencies are found, the program should prepare a written plan of action to document initiatives to improve performance in the areas listed in section V.C.1. The action plan should be reviewed and approved by the teaching faculty and documented in meeting minutes.
Citation code: 5.C

The information provided did not demonstrate compliance with the requirement. In the minutes of the 2010 Annual Program Review, the only improvement steps indicated were those to reduce non-educational service on the surgical pathology service.

Site Visitor Report, pg. 27

This office must be notified of any major changes in the organization of the program. When corresponding with this office, please identify the program by name and number as indicated above. Changes in participating sites and changes in leadership must be reported to the Review Committee using the ACGME Accreditation Data System.

CONFIDENTIAL

D02948

**2**

| | |
|---|---|
| **From:** | Cordon-cardo, Carlos |
| **Sent:** | Tuesday, September 20, 2011 3:21 PM |
| **To:** | 'Vito Pansadoro' |
| **Cc:** | cora.sternberg@pansadoro.it |
| **Subject:** | RE: Dinner in Rome |

Thank you, Vito! I also look forward being with you and friends in this wonderful academic meeting,

Is the meeting taking place in the hotel where I will be staying? You mentioned that the hotel is some 10 minutes from the airport, meaning probably away from the core of Rome. I have a surprise for Cora and you: I will be traveling with a "very special friend"! I believe it would be more convenient to be if possible in the city, so she can visit while I am at the congress!

Please, if you have a moment maybe we can talk over the phone!

Carlos

P.S.: Cora – I am keeping this special friendship quite privately. Carolina is not aware that we are travelling together, but knows we have been seeing each other! I will tell you over the phone!

Carlos Cordon-Cardo, M.D., Ph.D.
Professor and Chairman,
Department of Pathology,
Professor, Department of Genetics and Genomic Sciences,
The Mount Sinai School of Medicine.
Professor and Director,
Department of Pathology,
The Mount Sinai Hospital.
Phone: 212-241-8014
Fax: 212-426-5129
E-mail: carlos.cordon-cardo@mssm.edu

*Office Address:*
Annenberg 15th Floor, Office 15-62
1468 Madison Avenue
New York, New York 10029-6574

*Mailing address:*
One Gustave L. Levy Place, Box 1194
New York, New York 10029-6574

--------------------------------------------------------------
IMPORTANT WARNING: This email (and any attachments) is only intended for the use of the person or entity to which it is addressed, and may contain information that is privileged and confidential. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Unauthorized redisclosure or failure to maintain confidentiality may subject you to federal and state penalties. If you are not the intended recipient, please immediately notify us by return email, and delete this message from your computer.
--------------------------------------------------------------

**From:** Vito Pansadoro [mailto:vito@pansadoro.it]
**Sent:** Sunday, September 18, 2011 9:09 AM
**To:** Cordon-cardo, Carlos
**Cc:** CORA
**Subject:** Dinner in Rome

1

CONFIDENTIAL                                                                 D_ESI003404

Dear Carlos

I have been told that you have already the ticket in your hands. Good!!

You will speak twice on the 23rd.

First during the superficial bladder cancer:

14.15 - 14.30 Lettura - Novel insights into urothelial development and bladder cancer
C. Cordon Cardo (New York, USA)
Presenta V. Pansadoro (Roma)

and later on during the inauguration ceremony.

Since I will introduce you can you send me some material?

I would like to inform you about the social side of the meeting.

The Hotel is 10' from the airport. Therefore not in the center of the city.

We will have a dinner at our home the 22nd in the evening.

The Presidential dinner at Palazzo Colonna will be on the evening of the 23rd.

If you will stay longer we will have the pleasure to have you for the social dinner
in the evening at Villa Miani with a breathtaking view of Rome.

We are very happy to have you with us for this very important step of my life.

All the best

Vito

2

CONFIDENTIAL

D_ESI003405

**From:** Cordon-cardo, Carlos
**Sent:** Monday, September 12, 2011 9:08 AM
**To:** jt165@columbia.edu
**Subject:** FW: October 23rd

Good morning, my dear. These are the dates of the meeting in Rome! Let's plan to have a wonderful time!

Carlos Cordon-Cardo, M.D., Ph.D.
Professor and Chairman,
Department of Pathology,
Professor, Department of Genetics and Genomic Sciences,
The Mount Sinai School of Medicine.
Professor and Director,
Department of Pathology,
The Mount Sinai Hospital.
Phone: 212-241-8014
Fax: 212-426-5129
E-mail: carlos.cordon-cardo@mssm.edu

*Office Address:*
Annenberg 15th Floor, Office 15-62
1468 Madison Avenue
New York, New York 10029-6574

*Mailing address:*
One Gustave L. Levy Place, Box 1194
New York, New York 10029-6574

-------------------------------------------------------------

IMPORTANT WARNING: This email (and any attachments) is only intended for the use of the person or entity to which it is addressed, and may contain information that is privileged and confidential. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Unauthorized redisclosure or failure to maintain confidentiality may subject you to federal and state penalties. If you are not the intended recipient, please immediately notify us by return email, and delete this message from your computer.

-------------------------------------------------------------

**From:** Vito Pansadoro [mailto:vito@pansadoro.it]
**Sent:** Saturday, September 10, 2011 7:10 PM
**To:** Cordon-cardo, Carlos
**Cc:** CORA
**Subject:** October 23rd

Dear Carlos

I would like to know if you have received the contacts from the travel agent about your trip to Rome for our National meeting.

Just to remind, you will give your first lecture at

October 23rd
14.15 - Lettura
Novel insights into
Urothelial development and

CONFIDENTIAL

D_ESI003937

bladder

And, on the same day, at 6.00pm you will give another lecture on tumor Oncogenesis, during the inauguration ceremony.

There will not be any waste of time with politicians or administrator.

I will speak 20', you will speak another 20' and then we will have a beautiful concert of 30' with a master pianoforte and a singer who happens to be the daughter of a well-known urologist.

After this we will have a very nice dinner at the Galleria Colonna. One of the very special places in Rome.

Carlos, I have had a crash of my PC and at the same time a malfunction of my back up.

Therefore I lost the exact title of your lecture during the inauguration. Could you send it to me again?

Thank you. Looking forward to see you soon again and spending some quality time together.
Vito

2

CONFIDENTIAL

D_ESI003938

**3**

**From:** Jordan, Adrienne
**Sent:** Wednesday, March 23, 2011 2:50 PM
**To:** Lento, Patrick
**Subject:** RE: Affiliates

Sure, I know Liz is swamped the rest of this week with Surgicals but I should be feeling better tomorrow and will be back at work. I can meet you either tomorrow or Friday after I return from Englewood. Whenever is best for you is fine with me.

Yes, I am fine thank you for asking. During my second year of medical school I was very sick. I had to go on chemotherapy and it was just a bad time. Three weeks ago they found a spot on my CT. This has happened before but this time they were worried enough that my doctors here felt it was important I go back to the Cleveland Clinic doctors who treated me the first time. They worked me up over the past few weekends and we found out yesterday that this too was a false alarm, thank goodness. So now I am back to full speed. If I could just shake this stupid GI bug!!! Take my advice, stay away from the resident room. Its going around. Even those of us rotating in New Jersey are not safe!

Adrienne Jordan, M.D.
Pathology Resident, PGY2
The Mount Sinai Medical Center
Department of Pathology- Box 1194
One Gustave L. Levy Place
New York, NY 10029
Pager: 917-534-7491
Cell: 330-327-7339

**From:** Lento, Patrick
**Sent:** Tue 3/22/2011 5:04 PM
**To:** Jordan, Adrienne
**Subject:** RE: Affiliates

Can we meet this week sometime to discuss the schedule? I would like to review residents needs and compare to department needs, etc.
Pat

-----Original Message-----
**From:** Jordan, Adrienne
**Sent:** Monday, March 21, 2011 12:48 PM
**To:** Lento, Patrick
**Subject:** Re: Affiliates

Dr. Lento,

How would you recommend Liz and I proceed at this point? Should we staff both residents at the VA all year or wait to hear back from you? I'd feel badly not sending a resident to elmhurst and englewood for one month but staffing the VA the whole year. But, of course, it's entirely up to you. Also, Liz and I have superficially looked at the schedule and there is no way to put 5 people on surgicals if seniors don't

1

D_ESI012252

**4**

| | |
|---|---|
| **From:** | Jordan, Adrienne [adrienne.jordan@mountsinai.org] |
| **Sent:** | Tuesday, August 09, 2011 11:34 PM |
| **To:** | Carter, Allene (MSH); Lento, Patrick (MSH); Firpo, Adolfo; Morency, Elizabeth (MSSM-Imail) |
| **Subject:** | Out |

My uncle was murdered today. I am taking a grievance day tomorrow. I will not be responding to emails unless absolutely urgent. The directors of my rotation here in Hershey are aware.

Adrienne

Sent from my iPhone

1

CONFIDENTIAL

D_ESI005479

| | |
|---|---|
| **From:** | Khachaturov, Vadim |
| **Sent:** | Wednesday, August 10, 2011 6:32 PM |
| **To:** | Jordan, Adrienne |
| **Subject:** | RE: USMLE Step 3 |

I am sorry to hear about your uncle.  My condolences to you and your family.  It was difficult for me when my uncle passed away, so I can relate to how you must feel.  All I can say is that as time passes by it gets a little easier.

Thanks for the advice.  Don't worry about the Saturday coverage.  I will talk to the morgue attendants and keep them up to date.

```
> > Resident, Department of Pathology
> > The Mount Sinai Hospital
> > One Gustave L. Levy Place
> > New York, NY  10029
> >
> > Pager 917-632-7843
> >
> > Cell 917-656-3056
> >
>
> >
> >
> >
> >
> >
> >
>
>
>
```

1

CONFIDENTIAL

D_ESI015490

**5**



Disciplinary Action Notice

**27 April 2012**

To:   Paul Azar, M.D.

It has been brought to the attention of the Department of Pathology that you are not meeting expectations for your performance as a senior Pathology resident. In order to address the deficiencies outlined below, we have developed a remediation plan that delineates our expectations for your performance.

1.   **Type of Disciplinary Action:**

This disciplinary action notice represents a **Final Warning.**

2.   **Observed Deficiencies:**

A.   Professionalism
Your behavior and performance raise questions about your professional development and growth during your final year of residency training. You have repeatedly failed to meet standards of professionalism as evidenced by, but not limited to, the following examples:

- Failure to report to the blood bank rotation. During a Blood Bank rotation ((November 18 to December 15, 2011) you were assigned to the service responsible for the transfusion reaction workups and you were expected to attend blood bank rounds, but you neglected to do so for one week. In your absence, the blood bank attending provided coverage for your clinical responsibilities and repeatedly attempted to contact you via pager and e-mail. You did not respond to any of the attempts to contact you. When you were confronted, you claimed to have been "in the library" and that your pager "did not work" in the library.

- General failure to respond to pages and emails. Residents are expected to carry their pagers on their person during work hours and to respond to pages and emails in a timely fashion. You have habitually failed to adhere to this requirement. You have been unresponsive to pages so frequently that attendings trying to reach you have opted to page one of the chief residents to inquire as to your whereabouts. Your lack of responsiveness is inexcusable and creates an unnecessary burden on faculty, staff, the chief residents, and your peers.

- Habitual absenteeism and tardiness. On Clinical Pathology rotations, you have been frequently absent or tardy. Your pattern of absence from the Clinical Pathology laboratories has been so extreme that attending physicians have actually called chief residents and me to inquire whether you were still a resident in our program.

- Defiant attitude in response to remediation efforts. On several occasions when you were scheduled to give make-up presentations (as a consequence of your persistent poor attendance of mandatory conferences), you exhibited an insubordinate and unprofessional attitude toward the chief residents; made

**CONFIDENTIAL**

D02927

excuses for your failures to make the presentations; and simply failed to give the presentations altogether.

B.   Systems-Based Practice

There are multiple documented instances of your purposeful disregard for established policies and procedures, including the following:

- Absenteeism from required morning didactic activities, including conferences, and disregarding reminders from chief residents, me, and Dr. Scott Barnett, the Associate Dean for Graduate Medical Education.
- Refusal to cover for absent residents on the Surgical Pathology service in violation of the established policy.
- Poorly prepared didactic presentations and lack of regard for your peers' education. Although some of your presentations at recent CP case presentation conferences have been very good and praised by faculty, you have not devoted sufficient time or thought to your didactic presentations to your peers, which have been of poor quality. Your presentations on average have been only 10-15 minutes long (when residents are given a 25-minute time slot), consistently lack depth, and appear to have been prepared at the last minute.

3.   **Actions Necessary to Improve on These Deficiencies:**

A.   Professionalism

- Daily check-ins and check-outs with rotation supervisors to ensure that you satisfactorily fulfill all of your assigned tasks and duties. You will come to work every day and remain productively engaged until the end of the work day. You will sign in and out each work day, and the attendance sheets must be submitted to me for review and signature.
- You are required to respond no later than 10 minutes after any page. You will respond to all work related e-mails on the same day you receive them with a copy to me. You are required to provide your cell phone number to your rotation supervisors, so that you may be reached directly at all times without involving the chief residents.
- You are required to write a 10-page, double-spaced self-reflection on the anticipated demands and challenges of Pathology practice. This self-reflection must also describe what you have learned from this final warning and the impact of this warning on your readiness to enter independent Pathology practice upon graduation from the program. The self-reflection must be submitted to me no later than May 15, 2012.

B.   Systems-Based Practice

- You are required to review your presentations with your rotation supervisors well in advance so that you will have sufficient time to prepare at least one acceptable presentation of educational value to your peers before May 15, 2012.
- You must attend all future resident meetings and may no longer claim ignorance about departmental and program policies and procedures. Your attendance at resident meetings will reinforce your understanding of these policies and will eliminate any potential confusion regarding performance expectations.

CONFIDENTIAL

D02928

4. **How Progress Will Be Assessed:**

    A.   Multisource feedback. Weekly reports from your rotation supervisors, sign-in and out sheets, and other feedback obtained by the program.

    B.   A review of the self-reflection exercise due May 15, 2012.

    C.   An assessment by your advisors and peers of the quality of your oral presentations.

5. **Deadline for Demonstration of Improvement:**

You must improve your performance immediately.

6. **Consequences of Failure to Show Improvement:**

If you are unable to improve your performance, you will be subject to further disciplinary action, up to and including termination from the program. Your performance during this final period will also be factored into your summative performance evaluation, which may in turn impact the determination of your eligibility for board-certifying examinations.

You have a right to appeal this disciplinary action by requesting, in writing, a hearing before the House Staff Affairs Committee of the Medical Board within ten days of receiving this notice. Requests should be directed to David Reich, MD, President of the Medical Board, in care of the Medical Staff Office at Box 1116. If you do not appeal this action, it will become final at the end of the appeal period.

Sincerely,

Adolfo Firpo-Betancourt, M.D., M.P.A., F.C.A.P.

Please sign below to attest that you have read and understood the above content and consequences.

Resident Signature:_____

D02929

**<u>6</u>**

**From:**      Hechtman, Jaclyn
**Sent:**      Tuesday, May 17, 2011 9:24 AM
**To:**        Jordan, Adrienne
**Subject:**   Fwd: Personal Day

Why is she asking if she already knew???

Jaclyn F Hechtman, MD
Resident | Department of Pathology
The Mount Sinai Medical Center & School of Medicine
One Gustave L Levy Place Box 1194 | New York NY 10029
786.525.5689 | 917.649.9684 | jaclyn.hechtman@mountsinai.org

Begin forwarded message:

> **From:** "Carter, Allene" <Allene.Carter@mountsinai.org>
> **Date:** May 17, 2011 9:07:21 AM EDT
> **To:** "Hechtman, Jaclyn" <jaclyn.hechtman@mountsinai.org>
> **Subject: RE: Personal Day**
>
> I spoke to Adrienne, she informed me. Very sorry to hear that. Are you
> alright?   You are not speaking of the young lady I when you both were
> coming here, to get a room together? Let me know what I can do, if you
> need help, so we can have you reassigned here.
>
> Allene
>
> -----Original Message-----
> From: Hechtman, Jaclyn
> Sent: Tuesday, May 17, 2011 8:57 AM
> To: Carter, Allene; Lento, Patrick; Jordan, Adrienne
> Subject: Re: Personal Day
>
>
> My best friend committed suicide on Sunday. Adrienne was helping.
>
> Jaclyn F Hechtman, MD
> Resident | Department of Pathology
> The Mount Sinai Medical Center & School of Medicine
> One Gustave L Levy Place Box 1194 | New York NY 10029 786.525.5689 |
> 917.649.9684 | jaclyn.hechtman@mountsinai.org
>
> On May 17, 2011, at 8:45 AM, "Carter, Allene"
> <Allene.Carter@mountsinai.org> wrote:
>
>
> Why is Jackie taking days, and why are you sending e-mail on her
>> behalf?

1

CONFIDENTIAL

D_ESI016518

-----Original Message-----
From: Jordan, Adrienne
Sent: Sunday, May 15, 2011 11:35 PM
To: rosalyn.stahl@ehmc.com; Carter, Allene; Lento, Patrick; Maniar,
Kruti (MSSM-Imail); McCash, Samuel (MSSM-Imail); Morency, Elizabeth
(MSSM-Imail); Ramanathan, Lakshmi
Subject: Personal Day


Due to a personal situation Jackie and I will both be taking a
personal day tomorrow (Monday). I will return to work Tuesday. Jackie
may be taking more days. I will let everyone know how many days she
will be taking as soon as I know. Sorry for the trouble.

Adrienne

Sent from my iPhone

2

CONFIDENTIAL                                              D_ESI016519

**From:**      Lento, Patrick
**Sent:**      Tuesday, May 17, 2011 9:57 AM
**To:**        Hechtman, Jaclyn; Carter, Allene; Jordan, Adrienne
**Subject:**   RE: Personal Day

Jackie,

That is heartbreaking news. I am sorry to hear that. I hope you are doing ok. Please let me
know if there is anything we can do to try to help you during this difficult time. I do think
it would be beneficial for you to seek some professional counseling here at Sinai as a way of
helping you cope with everything.

Pat

-----Original Message-----
From: Hechtman, Jaclyn
Sent: Tuesday, May 17, 2011 8:57 AM
To: Carter, Allene; Lento, Patrick; Jordan, Adrienne
Subject: Re: Personal Day

My best friend committed suicide on Sunday. Adrienne was helping.

Jaclyn F Hechtman, MD
Resident | Department of Pathology
The Mount Sinai Medical Center & School of Medicine One Gustave L Levy Place Box 1194 | New
York NY 10029
786.525.5689 | 917.649.9684 | jaclyn.hechtman@mountsinai.org

On May 17, 2011, at 8:45 AM, "Carter, Allene" <Allene.Carter@mountsinai.org> wrote:

> Why is Jackie taking days, and why are you sending e-mail on her behalf?
>
>
>
> -----Original Message-----
> From: Jordan, Adrienne
> Sent: Sunday, May 15, 2011 11:35 PM
> To: rosalyn.stahl@ehmc.com; Carter, Allene; Lento, Patrick; Maniar,
> Kruti (MSSM-Imail); McCash, Samuel (MSSM-Imail); Morency, Elizabeth
> (MSSM-Imail); Ramanathan, Lakshmi
> Subject: Personal Day
>
>
> Due to a personal situation Jackie and I will both be taking a
> personal day tomorrow (Monday). I will return to work Tuesday. Jackie
> may be taking more days. I will let everyone know how many days she
> will be taking as soon as I know. Sorry for the trouble.
>
> Adrienne
>
> Sent from my iPhone

1

CONFIDENTIAL

D_ESI016371

**From:**  Castaldi, Andrew [andrew.castaldi@mssm.edu]
**Sent:**  Tuesday, May 17, 2011 10:35 AM
**To:**  Lento, Patrick; Cordon-cardo, Carlos (MSSM)
**Cc:**  Carter, Allene
**Subject:**  RE: Resident-Jaclyn Hechtman

That is terrible, I am sorry to hear that. Do you have the contact information for the people at Employee Assistance here at Mount Sinai? Let me know if there is anything else I can do to help. Thanks.

**From:** Lento, Patrick [mailto:Patrick.Lento@mountsinai.org]
**Sent:** Tuesday, May 17, 2011 10:34 AM
**To:** Cordon-cardo, Carlos; Castaldi, Andrew
**Cc:** Carter, Allene (MSH)
**Subject:** Resident-Jaclyn Hechtman

Carlos and Andrew,

In case you are not aware yet, one of our second year residents (Jackie Hechtman) found the body of her best friend on Sunday night after the friend had committed suicide. They were friends from Florida and had come to New York together for residencies at different hospitals. Jackie was out yesterday but has apparently returned to work today (she is at our Englewood affiliate). Adrienne Jordan (one of the chiefs for next year) was with Jackie Sunday night and yesterday. I spoke with Adrienne yesterday and told her to have Jackie seek out professional counseling here at Sinai. I tried to reach Jackie myself but I have been unable to reach her so I sent her an email to let her know we will try to support her at best as we can during this difficult time.

Pat

**Patrick Lento, M.D.**
Associate Professor, Departments of Pathology,
Internal Medicine, Division of General Internal Medicine
and Medical Education
Residency Program Director. Pathology
Mount Sinai Medical Center and School of Medicine
Box 1194
One Gustave Levy Place
New York, NY 10029
Tel: 212-241-9157
Fax: 212-876-4036
email:patrick.lento@mountsinai.org

**This email and any attachments may contain confidential information which are intended for use solely by the addressee(s). If you are not the intended recipient of this email, please be aware that any dissemination, distribution, copying or other use of the email in whole or in part is strictly prohibited. If you have received this email in error, please notify the sender and permanently delete the original and all copies of the email, attachments and any printouts. Thank you.**

1

CONFIDENTIAL

D_ESI010806

Exhibit 126

**From:**       Hechtman, Jaclyn
**Sent:**       Tuesday, May 17, 2011 8:57 AM
**To:**         Carter, Allene; Lento, Patrick; Jordan, Adrienne
**Subject:**    Re: Personal Day

My best friend committed suicide on Sunday. Adrienne was helping.

Jaclyn F Hechtman, MD
Resident | Department of Pathology
The Mount Sinai Medical Center & School of Medicine One Gustave L Levy Place Box 1194 | New
York NY 10029
786.525.5689 | 917.649.9684 | jaclyn.hechtman@mountsinai.org

On May 17, 2011, at 8:45 AM, "Carter, Allene" <Allene.Carter@mountsinai.org> wrote:

> Why is Jackie taking days, and why are you sending e-mail on her behalf?
>
>
>
> -----Original Message-----
> From: Jordan, Adrienne
> Sent: Sunday, May 15, 2011 11:35 PM
> To: rosalyn.stahl@ehmc.com; Carter, Allene; Lento, Patrick; Maniar,
> Kruti (MSSM-Imail); McCash, Samuel (MSSM-Imail); Morency, Elizabeth
> (MSSM-Imail); Ramanathan, Lakshmi
> Subject: Personal Day
>
>
> Due to a personal situation Jackie and I will both be taking a
> personal day tomorrow (Monday). I will return to work Tuesday. Jackie
> may be taking more days. I will let everyone know how many days she
> will be taking as soon as I know. Sorry for the trouble.
>
> Adrienne
>
> Sent from my iPhone

1

CONFIDENTIAL                                                                D_ESI010695

<u>7</u>



MOUNT SINAI
SCHOOL OF
MEDICINE

**The Lillian and Henry M. Stratton-Hans Popper**
Department of Pathology

One Gustave L. Levy Place
Box 1194
New York, NY 10029-6574

Phone:   (212) 241-8014
Facsimile: (212) 289-2899

25 January 2012

Dr. Jonathan Yao, MD
PGY-2 Resident
Department of Pathology

**RE: Notice of Academic Advisement**

Dear Dr. Yao,

I am writing as Director of the Pathology Residency Program (the "Program") of the Department of Pathology ("the Department") at The Mount Sinai Hospital to inform you that that you are being placed on academic advisement. On several recent occasions, your performance has not met departmental standards for Professionalism, Interpersonal and Communication Skills, Practice-Based Learning and Improvement, and Patient Care.

**Summary of Unsatisfactory Performance:**

On October 7, 2011, a temporal artery biopsy was performed by Dr. Harry Schanzer, Clinical Professor of Vascular Surgery. As a Resident on a Surgical Pathology rotation, you were assigned to handle this specimen, and your dictation stated that you submitted the specimen after cross-sectioning in a single cassette. However, you did not submit the cassette, and the specimen was missing for ten days. On October 13, 2011, Dr. Susan Morgello, Professor of Pathology and Neuroscience, wrote to you to express her concern over the missing specimen and asked you to participate in the search. On October 17, 2011, Ms. Liuba Correa, Senior Laboratory Aide, found the missing specimen in a plastic container where you had grossed it. The specimen was desiccated when it was found, but staff were able to process it despite the significant delay. The discovery of the specimen in the area where you had worked on it indicates that you did not respond adequately to Dr. Morgello's request, did not take any responsibility for the specimen, and did not communicate with others regarding its possible whereabouts. Your actions jeopardized Patient Care. Moreover, your failure to participate in the search for the specimen, to acknowledge your role, and to identify and address your own errors demonstrates serious deficiencies in Professionalism, Interpersonal and Communication Skills, and Practice-Based Learning and Improvement.

On December 21, 2011, you were assigned to a rotation in Surgical Pathology. Ms. Ida Ross-White, Records Processing Supervisor, was assisting you with the Voicebrook dictation device when you became agitated, cursing in a loud voice and slamming down

CONFIDENTIAL

D02930

the device, which caused the battery pack to break off. On December 22, 2011, I met with you to discuss this incident in the presence of Ms. Shema Patel, Department Administrator, at which time you acknowledged having difficulty with the dictation software, but denied raising your voice or throwing or slamming the device. I asked you to write a detailed account of the incident. That afternoon you sent me an email simply stating, "My conduct in the gross room is always professional. Nothing was thrown. Nothing was broken. I expressed frustration at situation *[sic]*." I responded with an email informing you that your account was insufficient in detail, and asked you to send me a more substantial statement by December 27, 2011. You never submitted this statement to me. Residents are expected to demonstrate compassion, integrity, and respect for others, and to communicate effectively with their colleagues. Your outburst in the gross room displayed a lack of Professionalism and poor Interpersonal and Communication Skills. Your subsequent denial of your actions and failure to follow my instructions also demonstrate serious deficiency in these competency areas.

On December 30, 2011, you and Dr. Alice Li, a Pathology PGY-1 Resident, were assigned in Surgical Pathology to gross surgical specimens as partners. One of the specimens to be grossed was a Whipple specimen to rule out duodenal carcinoma. Because this was a GI specimen that was too complex for a PGY-1 Resident to dissect independently, you were responsible for grossing it. (Dr. Li had never grossed such a specimen before, with or without direct supervision.) However, you reassigned the case to Dr. Li and left the grossing area. When Dr. Adrienne Jordan, a Chief Resident in the Program, came to the area and found Dr. Li working alone on this specimen, she paged you to ask you to return to your assigned tasks. You did not respond to the page. Dr. Jordan was finally able to reach you by calling the Division of Dermatopathology office. When she reminded you of the need to complete your assigned tasks in Surgical Pathology, you responded that "it wasn't [Dr. Jordan's] business" and that she "needed to stay out of it." Dr. Jordan then reminded you that you were responsible for grossing the Whipple specimen, and you told her that you understood. Despite these explicit instructions, Dr. Jordan returned to the gross room approximately two hours later to find Dr. Li completing the gross dissection of the same Whipple specimen by herself. (Before Dr. Jordan returned, Dr. Hongfa Zhu, Assistant Professor of Pathology and Attending Pathologist, had voluntarily intervened to provide Dr. Li with guidance during the case.) Your absence from the grossing room and failure to fulfill your responsibilities on the Surgical Pathology service constitute a serious lapse in Patient Care and Professionalism. In refusing to accept the instructions of Dr. Jordan, you exhibited an unacceptable lack of Professionalism and poor Interpersonal and Communication Skills. Of greatest concern to the Program, you essentially forced a more junior Resident to assume tasks that had been assigned to you, even though the junior Resident lacked sufficient experience and supervision to safely complete these tasks. Your poor judgment is especially concerning given the ACGME requirement that mandates direct supervision of PGY-1 Residents when they perform their first three procedures of any kind.

Each of these incidents is serious. Taken together, they form a pattern of unprofessional and irresponsible behavior, and indicate that your professional growth in the Program is below departmental standards. Because of these deficiencies, you will be required to take action in order to meet expectations for your performance.

2

CONFIDENTIAL

D02931

**Remediation Plan:**

I have designed the following plan to help you in achieving acceptable performance in Patient Care, Medical Knowledge, Practice-based Learning and Improvement, Interpersonal and Communication Skills, and Professionalism.

1. You must follow all departmental policies and procedures, and you must ensure that all of your clinical activities meet the standard of care.
2. You must respond in a timely and professional fashion to instructions from your supervisors, and must be present to complete tasks associated with your assigned rotations.
3. You must provide appropriate supervision of more junior learners.
4. Your conduct must be professional and respectful at all times.
5. You must write a self-reflection statement (of at least four double-spaced pages in length) concerning your actions in each of the three incidents described above. You are expected to detail how you could have approached each situation in a better fashion, to comment on Professionalism and its role in these circumstances, and to identify areas for your future professional growth. You must submit this self-reflection to me (with a copy to Dr. Tamara Kalir, Associate Professor of Pathology and Director, Division of Gynecologic Pathology) by March 1, 2012.
6. You must write a letter of apology to Ms. Ross-White acknowledging the inappropriateness of your behavior on December 21, 2011. This letter must be delivered to Ms. Ross-White by February 17, 2012, with a copy sent to me and Dr. Kalir.
7. You must meet monthly with Dr. Kalir to review your progress with respect to the ACGME competencies.

During the advisement period, your performance will be closely monitored in each of the areas outlined above. In three months, I will meet with you to review your performance while under academic advisement. This review will include but will not be limited to written evaluations of your performance. The Department is committed to providing as much direction and support as possible to help you meet our expectations.

You have many strengths, and we are hopeful that this remediation plan will allow you to overcome these difficulties and to realize your full potential as a pathologist. We must make it clear, however, that if you are unable to improve your performance you will be subject to disciplinary action, up to and including termination from the Program.

Sincerely,

Adolfo Firpo-Betancourt, MD, MPA, FCAP
Residency Program Director
Department of Pathology

Resident Acknowledgment:

Jonathan Yao, MD

3

CONFIDENTIAL

D02932

**8**

**Firpo, Adolfo**

| | |
|---|---|
| **From:** | Jonathan Yao <jyao.mssm@gmail.com> |
| **Sent:** | Thursday, February 16, 2012 4:09 PM |
| **To:** | Firpo, Adolfo; Kalir, Tamara (MSH) |
| **Subject:** | Letter to Ms. White |
| **Attachments:** | Dear Ms.doc |

Dear Drs. Firpo and Kalir,

Attached is the letter to Ms. White.    Ms White is out today.
Hopefully if she is in tomorrow, I can hand her the letter.

Thank you,

Jonathan


--


Jonathan Yao M.D. (House Staff)
Department of Pathology
One Gustave L Levy Place, Box 1194
New York, NY 10029

tel: (212) 241- 9146
pg: (917)641-0604

1

CONFIDENTIAL

D02933

Dear Ms. White;

I hope this letter finds you in good spirits.

I wanted to offer my sincerest apologies for actions in the gross room over Voicebrook. My actions were unbecoming of a resident and uncalled for.  I am sorry if I had offended you and I appreciate how calm and respectful you were to me during the event.

Please accept my apologies.

Best wishes;

Jonathan

CONFIDENTIAL

D02934

**Firpo, Adolfo**

| | |
|---|---|
| **From:** | Jonathan Yao <jyao.mssm@gmail.com> |
| **Sent:** | Tuesday, February 21, 2012 10:08 AM |
| **To:** | Firpo, Adolfo |
| **Subject:** | Re: Jonathan |

Dear Dr Firpo,

I am really impressed how intuned you are with what the residents are going through- ie surgicals, constructions, etc. The first half of the year was a rough, but I feel I already have new outlook and attidue; I am sure you will you notice the difference too. Thank you for being aware and for your understanding.

I have already sent Dr. Kalir a draft last Friday. I will check with her in person today to see what her opinion is. Please contact me if you have any concerns.

Thank you,

Jonathan

On 2/19/12, Firpo, Adolfo <adolfo.firpo@mssm.edu> wrote:
> Dr. Yao:
>
>
>
> I understand. A few days delay will not hurt, particularly Ms, White
> is not expecting this apology since few paople know about your academic advicement.
> You are ionce again in surgical pathology and this provides a unique
> opportunity to demonstrate a new personality and attitude toward your
> work, coworkers and responsibilities. Even more telling since thsi
> should be a trying period because of the contruction moving into the laboratroy.
>
>
>
> My main objectie is to help you realize your full potential as a
> future pathologist,
>
> Dr. Firpo
> _____
> From: Jonathan Yao [jyao.mssm@gmail.com]
> Sent: Friday, February 17, 2012 8:16 PM
> To: Firpo, Adolfo
> Cc: Kalir, Tamara (MSH)
> Subject: Jonathan
>
> Dear Dr. Firpo,
>
> Sorry about the delayed response. It is hectic and crazy at Sinai
> with all the chances and I have been grossing all day. I agree, the

1

CONFIDENTIAL                                                        D02935

> letter does not address many of the points you mentioned.  Ms White
> will be back - I think - next Tuesday.  Please allow me the long
> weekend to compose a sincere, introspective, and detailed letter to
> Ms. White. I will talk sit down with Dr. Kalir on Tuesday and prepare
> a final draft to present to Ms White on Wednesday.
>
> Thank you for you suggestions and support,
>
> Jonathan
>
> --
>
>
> Jonathan Yao M.D. (House Staff)
> Department of Pathology
> One Gustave L Levy Place, Box 1194
> New York, NY 10029
>
> tel: (212) 241- 9146
> pg: (917)641-0604
>
>


--

Jonathan Yao M.D. (House Staff)
Department of Pathology
One Gustave L Levy Place, Box 1194
New York, NY 10029

tel: (212) 241- 9146
pg: (917)641-0604

2

CONFIDENTIAL

D02936

**Firpo, Adolfo**

| | |
|---|---|
| **From:** | Jonathan Yao <jyao.mssm@gmail.com> |
| **Sent:** | Thursday, February 23, 2012 3:38 PM |
| **To:** | Firpo, Adolfo |
| **Subject:** | Jonathan |

Dear Dr. Firpo,

I hope you are well. I have made the corrections you suggested for Ms White. Dr Kalir gave it a final read and it was signed in her presence. I have just delivered to the letter to Ms. White. Just wanted you to know.

Thank you,

JY

--

Jonathan Yao M.D. (House Staff)
Department of Pathology
One Gustave L Levy Place, Box 1194
New York, NY 10029

tel: (212) 241- 9146
pg: (917)641-0604

1

CONFIDENTIAL

D02937

Dear Ms. White;

As time has passed, I have had the chance to deeply reflect on the incidence in the gross room over voice brook. Firstly, I would like to thank you for all the time you have spent helping me and working with me to fix voicebrook over the years. I remember you were so nice as to give me another headset when one feel into a pile of colon contents. During the last year and half we have become fast friends and I have come to value as you a fellow coworker. It is unfortunate that you witnessed me at my lowest point when I let my emotions get the best of me.   With all the chaos, change in schedule, and the disorganization at work, the broken voicebrook machine was the straw that broke the camel's back. I was tired and stressed, felt completely helpless and over-whelmed that morning. I let my guards down and let my emotions get the best of me.   I lost awareness of my surroundings.

As a doctor, co-worker, friend, and a humane being, I see how my out burst can hurt another person such as yourself who was doing their best to help me out during a time of difficulties. I know I swore at the computer. I even went as far as expressed my anger by throwing down my headset. Any person with composer and kind temperament - such as yourself - would be offended, insulted, and even intimidated and frightened by my outburst. As a person who normally behaves congenially and calm, this must have been a frightful. I am disgusted at my out bust.

No physician, who should always consider other individuals, should never act in such a way; as a friend and co-workers, such actions are contemptuous; and as a fellow human being my actions are condemnable. I was uncharacteristically ugly and I am ashamed. With introspection- that was not easily achieved- I have see my fault. I let my emotions, frustrations, and stress over come me. I cannot act this way, regardless of my situations. As I leave the protected walls of Sinai I may not meet such an understanding and generous person as you. If I continue to let my circumstances take hold of me, I could really hurt not only the people I work with but also the institution and the profession that I treasure. I have the responsibility to always keep my emotions in check, consider my fellow workers, my position, and my institution.

Please accept my deepest apologies. I am regrettable and saddened by my actions. I hope you will find it in your hear to forgive me. From this experience, I heave learned to always hold tight to my character, responsibility and actions. I do not ever want to hurt and offend anyone ever again simply because I acted the way I did.

CONFIDENTIAL

D02938

Thank you for taking the time to read this letter.  Please accept my sincerest apologies.

Sincerely,

Jonathan

CONFIDENTIAL

D02939

**9**



MOUNT SINAI
SCHOOL OF
MEDICINE

**June 11, 2012**

**To:**    **Sarah Blowe, MD**

**Re:**    **Final Warning Notice**

We are writing to you as the Chair and the Director of Educational Activities of the Department of Pathology to issue this final warning to you. We are taking this action because your performance and conduct have been unacceptable.

**I.    Unprofessional Conduct in Interactions with Dr. Alexandros Polydorides**

On March 13, 2012, the Program became aware of concerns about your professionalism in interactions with Dr. Alexandros Polydorides, Associate Professor of Pathology. In a report to Dr. Adolfo Firpo-Betancourt (hereafter "Dr. Firpo"), the Program Director, Dr. Polydorides stated that you made frequent, unscheduled visits to his office that were unrelated to your work in the Program. During these visits, you asked Dr. Polydorides numerous questions and made comments on the subject of his private life. This behavior continued even though Dr. Polydorides informed you multiple times that you were acting inappropriately. Dr. Firpo met with you to discuss these incidents on March 13 and counseled you on your behavior. In addition, he forwarded Dr. Polydorides' concern to Dr. Arthur Figur, the Chair of the Physician Wellness Committee, whom you had given permission to communicate with your physician.

On April 12, 2012, you and Dr. Polydorides came to my office to discuss an incident that had occurred that day. Dr. Polydorides wrote his account of the incident and sent it to Dr. Firpo immediately following this meeting. The incident began when you came to Dr. Polydorides' office to ask whether he had "Iranian blood in [him]." When Dr. Polydorides asked you to stop coming to his office repeatedly and to stop asking personal questions, you accused him of "playing games . . . to get in [your] head." In describing this incident, Dr. Polydorides stated that "this behavior betrays . . . serious problems that [he feels he] cannot handle on [his] own anymore."

Dr. Polydorides' account also noted that since his previous report to Dr. Firpo, your visits to his office had continued "almost daily" and sometimes "twice a day" and that your inappropriate comments had become more frequent. These comments included accusations that Dr. Polydorides changed the sign-out schedule to avoid you. On April 13, you sent a brief email of apology to Dr. Polydorides and Dr. Firpo.

CONFIDENTIAL

D03021

Sarah Blowe, MD
June 11, 2012
Page 2

Dr. Firpo immediately sent Dr. Polydorides' account to Dr. Figur, who indicated that he
would contact you and make your physician aware of the incident. (Ultimately, you met
with Dr. Figur and Dr. Deborah Marin of the Committee for Physician Health at the
Program's recommendation.) Dr. Firpo adjusted the Program's schedules so that you would
not be under Dr. Polydorides' supervision. Dr. Firpo also advised you in writing that you
were not to interact with Dr. Polydorides until Dr. Firpo had reviewed the incident.

To complete his review of the incident, Dr. Firpo asked you on April 13 to write your
version of the events of April 12. You quickly responded, "I assure you that I will have
everything written out, as I perceive it, and professional references [sic]." However, you
did not submit this statement in a timely manner. On May 3, Dr. Firpo sent you a reminder
of the need to provide a written statement. You ultimately submitted your statement on
May 9.

The Program recently became aware that you have continued to visit Dr. Polydorides'
office despite repeated counseling regarding your behavior. Despite Dr. Firpo's clear
instructions to you about avoiding any direct contact with Dr. Polydorides, you approached
him to apologize and to express your willingness to continue working with him. More
recently, after further instructions from Dr. Firpo to avoid contact with this faculty
member, you continued to visit his office up to twice a day to inquire about the outcome of
the Program's investigation of your interactions with him. The Program has made efforts to
maintain a healthy work environment and to assist with the remediation of your conduct.
Your inability to act professionally despite our guidance is unacceptable and shows an
unacceptable level of Professionalism.

II.  **Unacceptable Conduct in Interactions with Dr. Tamara Kalir Regarding Specimen
MS-12-59867**

On April 18, 2012, Dr. Tamara Kalir, Associate Professor of Pathology, became aware that
Part C of the Gynecologic Pathology specimen MS-12-59867 was missing. You were
responsible for handling this case. In her efforts to locate the missing tissue, Dr. Kalir
spoke with Paul Macias, Evening Supervisor of the laboratory; Liza Maddara, Day
Supervisor of the laboratory; Raul Rivera, who performs cassette transfers and
photographing; and you.

The three staff members interviewed by Dr. Kalir provided helpful information about the
search for the missing tissue and the handling of the specimen. However, when Dr. Kalir
asked you about the case in the presence of the staff, you raised your voice in responding to
her, and she asked to speak with you privately in her office. In Dr. Kalir's office, you raised
your voice again while insisting that it was impossible that you made a mistake in the
handling of the specimen. You also asked whether the tissue loss was "important" and
whether the patient had cancer, to which Dr. Kalir responded that the patient had
endometrial cancer and the missing tissue was important for staging and determining
treatment. You left Dr. Kalir's office abruptly before Dr. Kalir ended the interview.

CONFIDENTIAL

D03022

Sarah Blowe, MD
June 11, 2012
Page 3

Your inadequate and insubordinate response to Dr. Kalir, your failure to acknowledge your role in handling the specimen, and your refusal to assist the Program in identifying errors that may have led to the loss of the tissue, demonstrate serious deficiencies in Professionalism, Interpersonal and Communication Skills, Practice-Based Learning and Improvement, and Systems-Based Practice.

## III.   Unacceptable Conduct in Interactions with Dr. Tamara Kalir and Dr. Vadim Khachaturov

On May 31, 2012, Mr. Calvin Keys, the Chief Morgue Attendant, informed Dr. Kalir that you refused to perform an autopsy that was assigned to you. You disagreed with Dr. Vadim Khachaturov, a PGY-1 Resident in the Program, about whose turn it was to take an autopsy case. Dr. Khachaturov then received instructions from Dr. Sofia Kazi, a PGY-4 Chief Resident, that it was your turn to perform the autopsy. Dr. Khachaturov informed Dr. Kalir of Dr. Kazi's decision. Dr. Kalir then met with you and Dr. Khachaturov and instructed you to perform the autopsy, and you refused the assignment for a second time. You stated that you "didn't care what [Dr. Kazi] said," and Dr. Kalir reminded you that it was she who was assigning the case to you. You continued to refuse the assignment. When Dr. Kalir informed you that you would be written up for insubordination, you said that would be "fine" and she should "go ahead." Dr. Kalir mentioned that the decedent was Muslim and that the family required the rapid return of the body for religious reasons. Upon learning this, you changed your mind and agreed to perform the case, noting that you had changed your mind because of the family needs and not because the case was assigned to you.

After Dr. Kalir sent you the statement she forwarded to Dr. Firpo, you supplied your own written account of this incident on June 2. This account concurs with the sequence of events described above. In addition to telling Dr. Kalir that it was "completely appropriate" to write you up, you told her that you were not "really concerned with [your] record or [your] ability to get a job," and that you "had no interest in impressing [Dr. Kalir] or anyone else." You also stated that you "may have raised [your] voice, which anyone would have done in that situation."

You refused a work assignment repeatedly, and when supervising faculty informed you that there would be consequences for this refusal, you showed no consideration or insight into your behavior. Your statement about these events (sent two days later) shows an inability to reflect on your actions once removed from the situation. Your inability to recognize this serious lapse indicates your gross lack of Professionalism.

Based on the above incidents, the Program has hereby decided to issue this final warning. The Program expects you to fulfill all of your resident responsibilities and assignments without any further occurrences of unprofessional, disruptive, and/or insubordinate behavior. You must follow instructions from supervisors and must interact with others appropriately and respectfully. If

CONFIDENTIAL

D03023

Sarah Blowe, MD
June 11, 2012
Page 4

there are any additional lapses in your conduct, you will be subject to further disciplinary action, up to and including termination from the Program.

You have a right to appeal your final warning by requesting, in writing, a hearing before the House Staff Affairs Committee of the Medical Board within ten days of receiving this notice. Requests should be directed to David Reich, MD, President of the Medical Board, in care of the Medical Staff Office at Box 1116. If you do not appeal this disciplinary action it will become final at the end of the appeal period. For your convenience, relevant portions of the House Staff Manual are enclosed.

Sincerely,

Carlos Cordón-Cardó, MD, PhD
Chair, Department of Pathology

Adolfo Firpo-Betancourt, MD
Professor and Director of Educational Activities
Department of Pathology

CONFIDENTIAL

D03024



Locke Lord Edwards
750 Lexington Avenue
New York, NY 10022
Telephone: 212-308-4411
Fax: 212-308-4844
www.lockelord.com

## Fax Cover Sheet

**Date:** January 29, 2015

**Pages (including cover): 49**

**Sender:**

| Name | Rory J. McEvoy | **Sender ID #** | 12906 |
|---|---|---|---|
| **Phone** | 212-912-2787 | **Client #** | |
| **Fax** | 212-308-4844 | | |
| **Email** | rory.mcevoy@lockelord.com | | |

**To:**

| Name | Company | Fax # | Phone # |
|---|---|---|---|
| Honorable Colleen McMahon | Southern District of New York | 212.805.6326 | 212.805.6325 |

**If you experience problems receiving this fax, please call 212.308.4411.**

## Message:

This message is intended for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

Atlanta | Austin  | Boston | Chicago | Dallas | Hartford | Hong Kong | Houston | Istanbul | London | Los Angeles | Miami | Morristown | New Orleans
New York | Orange County | Providence | Sacramento | San Francisco | Stamford | Tokyo | Washington DC | West Palm Beach

```
***********************
*** FAX TX REPORT ***
***********************

                      TRANSMISSION OK

          JOB NO.                  2092
          DESTINATION ADDRESS      912128056326
          SUBADDRESS
          DESTINATION ID
          ST. TIME                 01/29 13:47
          TX/RX TIME               04'52
          PGS.                     49
          RESULT                   OK
```



**Locke Lord** LLP

Locke Lord Edwards
750 Lexington Avenue
New York, NY 10022
Telephone: 212-308-4411
Fax: 212-308-4844
www.lockelord.com

## Fax Cover Sheet

**Date:** January 29, 2015

**Pages (including cover): 49**

**Sender:**

| Name | Rory J. McEvoy | Sender ID # | 12906 |
|------|----------------|-------------|-------|
| Phone | 212-912-2787 | Client # | |
| Fax | 212-308-4844 | | |
| Email | rory.mcevoy@lockelord.com | | |

**To:**

| Name | Company | Fax # | Phone # |
|------|---------|-------|---------|
| Honorable Colleen McMahon | Southern District of New York | 212.805.6326 | 212.805.6325 |

**If you experience problems receiving this fax, please call 212.308.4411.**

## Message: